# EXHIBIT I TO DETROIT EDISON'S BRIEF IN SUPPORT OF MOTION TO STRIKE

No. 05-848

In the
# Supreme Court of the United States

ENVIRONMENTAL DEFENSE, ET AL.,
*Petitioners,*

v.

DUKE ENERGY CORPORATION, ET AL.,
*Respondents.*

On Writ of Certiorari to the
United States Court of Appeals
for the Fourth Circuit

## BRIEF OF THE STATES OF ALABAMA, ALASKA, COLORADO, INDIANA, KANSAS, NEBRASKA, SOUTH CAROLINA, SOUTH DAKOTA, VIRGINIA, AND WYOMING, AND THE STATE OF WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, AS AMICI CURIAE IN SUPPORT OF RESPONDENTS

Olivia Rowell
*General Counsel*

ALABAMA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT
1400 Coliseum Blvd.
Montgomery, Alabama 36110
(334) 271-7858

Troy King
*Attorney General*

Kevin C. Newsom
*Solicitor General*
Counsel of Record*

Robert D. Tambling
*Chief, Environmental Division*

STATE OF ALABAMA
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7401

September 15, 2006

(Additional counsel for amici curiae are listed inside the front cover.)

14

\* \* \*

It is worth pausing briefly to take stock of the story that EPA's present enforcement initiative – and the newfound view of the NSR/PSD rules that underlies it – requires the Court to believe. The current batch of enforcement actions alleges rampant, if not near-universal, non-compliance with NSR/PSD rules stretching back some 20 years. How, on EPA's retelling, did we get to this point? *First*, we must assume that nearly every major utility-industry player (and, more particularly, every major player's lawyers) either fundamentally misunderstood or blatantly ignored EPA guidance on the meaning of the term "major modification." *Second*, and worse, we must assume that the state environmental agencies that reviewed and approved the hundreds of building projects now under challenge (ADEM in Alabama Power's case, the North Carolina Department of Environment and Natural Resources in Duke's) likewise either misunderstood or ignored EPA guidance. *Finally*, and most bizarrely, we must assume that the EPA regulators themselves, whose very business it was to look over the States' shoulders, were (at best) asleep at the wheel. EPA's story here is either an elaborate conspiracy theory or a monument to bureaucratic incompetence. Occam's Razor suggests a different explanation: EPA's current litigating position just wasn't the prevailing understanding of NSR/PSD applicability during the two decades that preceded the current enforcement initiative's launch in 1999.

## II. EPA's Litigating Position Undermines the Clean Air Act's Carefully Calibrated State-Federal Enforcement Scheme.

Congress enacted the Clean Air Act with federalism firmly in mind. There are two important federalism-related points worth making here, neither of which the state amici supporting petitioners seem to have come to grips with. First, whereas the Act makes States primarily responsible for regulating air pollution, and carves out NSR/PSD as a narrow exception to that general rule of state control, the