# EXHIBIT L TO DETROIT EDISON'S BRIEF IN SUPPORT OF MOTION TO STRIKE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>ENVIRONMENTAL DEFENSE,<br>NORTH CAROLINA SIERRA CLUB,<br>NORTH CAROLINA PUBLIC INTEREST<br>RESEARCH GROUP,<br><br>Plaintiff-Intervenors<br>v.<br><br>DUKE ENERGY CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:00 CV 1262<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## UNITED STATES' RESPONSE TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff United States hereby responds to Defendant Duke Energy Corporation's ("Defendant") First Request for Admissions. The United States' response to each request for admission is based upon information and documents currently known to it and in its possession. The United States reserves the right to supplement its responses pursuant to Fed.R.Civ.P. 26(e).

## OBJECTIONS

1. The United States objects to Defendant's First Request for Admissions to the extent it calls for production of information that is protected by any privilege, immunity, doctrine or other protection from discovery including, without limitation, the attorney-client privilege, the work product doctrine, and the deliberative process privilege.

2. The United States objects to Defendant's First Request for Admissions to the extent that they impose obligations or burdens beyond those imposed or allowed by the Federal Rules of Civil Procedure.

3. The United States objects to Defendant's First Request for Admissions to the extent that they are being employed as a discovery device. See Charles A. Wright & Arthur R. Miller, Federal

1

unit during a single outage is routine maintenance, repair or replacement.

RESPONSE: The United States objects to this Request because it calls for speculation on a hypothetical set of undefined and unknown facts. USEPA does not have a bright-line rule regarding whether a project will fall into the "routine maintenance" exemption from the Prevention of Significant Deterioration (PSD) permitting and pollution control requirements. Rather, USEPA makes a case-by-case determination of each project, considering its nature, purpose, duration, frequency and cost ("WEPCo factors"). As the number of components that need to be replaced increases, the WEPCo factors are more likely to indicate that the project is non-routine. Such a determination requires that the facility's owner or operator submit the project for review before undertaking the project. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

Request for Admission 130: Admit that the replacement of 100 leaky tubes at an electric utility unit during a single outage is routine maintenance, repair or replacement.

RESPONSE: The United States objects to this Request because it calls for speculation on a hypothetical set of undefined and unknown facts. USEPA does not have a bright-line rule regarding whether a project will fall into the "routine maintenance" exemption from the Prevention of Significant Deterioration (PSD) permitting and pollution control requirements. Rather, USEPA makes a case-by-case determination of each project, considering its nature, purpose, duration, frequency and cost ("WEPCo factors"). As the number of components that need to be replaced increases, the WEPCo factors are more likely to indicate that the project is non-routine. Such a determination requires that the facility's owner or operator submit the project for review before undertaking the project. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

Request for Admission 131: Admit that replacement of sections of waterwall tubes on coal-fired utility units is common in the electric utility industry.

RESPONSE: The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across

47

all units within the source category. The United States knows of no evidence indicating that the replacement of sections of waterwall tubes is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 132:** Admit that replacement of economizers on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of economizers is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 133:** Admit that replacements of superheater sections on coal-fired utility units are common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacements have occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that replacements of superheater sections are of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the

48

information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 134:** Admit that replacement of reheater sections on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of reheater sections is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 135:** Admit that turbine blade replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of turbine blades is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

49

**Request for Admission 136:** Admit that turbine roater replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of turbine roater is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 137:** Admit that rewinding of generator stators on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such rewinding has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether rewinding is "common in the industry" is irrelevant to whether that rewinding is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the rewinding of generator stators is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 138:** Admit that air preheater basket replacement on coal-fired electric utility units is common in the electric utility industry.

50

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of air preheater baskets is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 139:** Admit that retubing of condensers on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such retubing has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether retubing is "common in the industry" is irrelevant to whether that retubing is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the retubing of condensors is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 140:** Admit that replacement of superheater header tubes on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement

51

has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of superheater header tubes is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 141:** Admit that replacement of reheater platens on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of reheater platens is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 142:** Admit the replacement of reheater crossover tubes on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case.

52

Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of reheater crossover tubes is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 143:** Admit that replacement of outlet pendent reheater tubes on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of outlet pendant reheater tubes is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 144:** Admit that feedwater reheater replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some

53

other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of feedwater reheaters is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 145:** Admit that ignition system replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of ignition systems is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 146:** Admit that control system replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the

54

replacement of control systems is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 147:** Admit that replacement of superheater platens on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of superheater platens is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 148:** Admit that replacement of superheater crossover elbows on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of superheater crossover elbows is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to

55

enable it to admit or deny this Request.

**Request for Admission 149:** Admit that replacement of bottom ash hopper tubes on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of bottom ash hopper tubes is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 150:** Admit that precipitator rebuilds on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such rebuilds have occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a rebuild is "common in the industry" is irrelevant to whether that rebuild is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that precipitator rebuilds are of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 151:** Admit that asbestos insulation replacement on coal-fired electric

56

utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of asbestos insulation is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 152:** Admit that horizontal reheater replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of horizontal reheaters is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 153:** Admit that the installation of low Nox burners on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The

57

term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such installation has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether an installation is "common in the industry" is irrelevant to whether that installation is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the installation of low Nox burners is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 154:** Admit that repairing ID fan motors on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such repairs have occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a repair is "common in the industry" is irrelevant to whether that repair is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the repair of ID fan motors is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 155:** Admit that replacement of the main steam drain on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold

58

percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of a main steam drain is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 156:** Admit that replacement of the cold gas duct on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of a cold gas duct is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 157:** Admit that boiler hot air duct replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is

59

routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of a boiler hot air duct is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 158:** Admit that main steam drain piping replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the replacement of main steam drain piping is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 159:** Admit that steampath replacement on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such replacement has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a replacement is "common in the industry" is irrelevant to whether that replacement is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is

60

of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that steampath replacement is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 160:** Admit that boiler feed pump valve repair on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such repairs have occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether a repair is "common in the industry" is irrelevant to whether that repair is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the repair of boiler feed pump valves is of a sort which would be frequently performed at an individual coal-fired electric utility unit. The United States has made reasonable inquiry and the information known or readily available to the United States at this time is insufficient to enable it to admit or deny this Request.

**Request for Admission 161:** Admit that pressure piping inspection on coal-fired electric utility units is common in the electric utility industry.

**RESPONSE:** The United States Objects to this Request because it is vague and ambiguous. The term "common" is not defined in Defendant's First Request for Admission. The United States does not understand by this term whether Defendant seeks an admission that such inspection has occurred (a) more than once in the electric utility industry, (b) above some threshold percentage of electric utility plants, or (c) at a majority of electric utility plants. Furthermore, the United States objects to this Request to the extent it seeks information not relevant to this case. Whether an inspection is "common in the industry" is irrelevant to whether that inspection is routine. The appropriate frame of reference for a "routineness" determination is what is "routine" at a unit of the same "type," i.e., in the particular source category (as opposed to some other source category), and that the inquiry focuses on, among other things, whether the project is of a sort which would frequently be performed at an *individual unit* of that type rather than across all units within the source category. The United States knows of no evidence indicating that the inspection of pressure piping is of a sort which would be frequently performed at an individual

61