UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        Plaintiff,                  )
                                    )
    and                             )
                                    )   Case No. 2:10-cv-13101-BAF-RSW
NATURAL RESOURCES DEFENSE           )
COUNCIL, INC. and SIERRA CLUB       )   Honorable Bernard A. Friedman
                                    )
        Intervenor-Plaintiff,       )
                                    )
v.                                  )   **PROPOSED COMPLAINT IN**
                                    )   **INTERVENTION**
                                    )
DTE ENERGY COMPANY, and             )
DETROIT EDISON COMPANY              )
                                    )
        Defendants.                 )
_____)

# INTRODUCTION

1.      Intervenor-Plaintiffs Natural Resources Defense Council, Inc. ("NRDC") and Sierra Club (collectively "Citizen Plaintiffs") bring this complaint against DTE Energy Co. and Detroit Edison Co. (collectively "Defendants" or "DTE"), pursuant to Section 304(b)(1)(B) of the Clean Air Act ("CAA" or "the Act"), 42 USC §§7604(b)(1)(B), for injunctive relief and the assessment of civil penalties for violations of: 1) the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492; 2) the nonattainment New Source Review ("NNSR") provisions of the Act, 42 U.S.C. §§ 7501-7515; and the State Implementation Plan ("SIP") adopted by the State of Michigan and approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

2. On or about March 13, 2010, Defendants modified, and thereafter operated, an electric generating unit known as Monroe Unit 2 at the Monroe Power Plant in Monroe County, Michigan without obtaining appropriate permit(s) authorizing the modification and subsequent operation of the modification at the unit, and without installing and employing the best available control technology ("BACT") or achieving the lowest achievable emissions rate ("LAER"), as required by the Act, to control emissions of sulfur dioxide ("$SO_2$") and nitrogen oxides ("$NO_x$"), as required by the Act.

3. As a result of Defendant's operation of Monroe Unit 2 following the unlawful modification, large amounts of $SO_2$, $NO_x$, and related pollution are and will be released into the atmosphere. $SO_2$ and $NO_x$ can combine with other elements in the air to form particulate matter known as PM2.5. These pollutants cause harm to human health and the environment once emitted into the air, including premature death, heart attacks, and respiratory problems.

## JURISDICTION, VENUE, AND NOTICE

4. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 7413(b) and 7477, and 28 U.S.C. §§ 1331, 1345, and 1355.

5. This Court has jurisdiction over the Citizen Plaintiffs' claims pursuant to 42 U.S.C. § 7604(b)(1)(B).

6. Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C.§ 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations occurred and are occurring in this District, the facility at issue is operated by Defendants in this District, and Defendants reside in the District.

7.  The Citizen Plaintiffs bring this Complaint pursuant to 42 U.S.C. § 7604(b)(1)(B), which provides Citizen Plaintiffs a right of intervention when the U.S. EPA or a State has commenced a CAA enforcement action for claims that could otherwise be brought under 42 U.S.C. § 7604(a)(1).

8.  The EPA issued Defendant a Notice of Violation ("NOV") on June 4, 2010 and provided a copy of this Notice to the state of Michigan, as required by Section 113(a)(1) and (b)(1) of the Act, 42 U.S.C. §7413(a)(1), (b)(1).

9.  On August 5, 2010, Government Plaintiff brought a civil action against DTE alleging numerous violations of the CAA.  *See generally* Complaint, *United States v. DTE Energy Co.*, Case No. 2:10-cv-13101-BAF-RSW, Dkt. No. 1 (hereafter "Govt. Complaint").

## PARTIES

10. Defendant DTE Energy Co. is a Michigan Corporation with its principal place of business at One Energy Plaza, Detroit, Michigan 48226-1279.  Defendant Detroit Edison Co. is a Michigan corporation with the same place of business as DTE Energy Co. Detroit Edison Co. is a wholly owned subsidiary of DTE Energy Co.

11. Defendant Detroit Edison, Co. owns and operates the Monroe Power Plant, including Monroe Unit 2.  Upon information and belief, DTE Energy Co. is an operator of the Monroe Power Plant, including Monroe Unit 2, because, among other things, DTE Energy Co. employees make decisions involving construction and environmental matters at the plant.  In addition, as Detroit Edison's parent company, DTE Energy Co. must approve major capital expenditures at the Monroe Power Plant, such as the installation of pollution controls or the modification work at issue here.

12. The Government Plaintiff in this action is the United States of America, by authority of the Attorney General of the United States, acting at the request of the U.S. EPA Administrator

13. The Citizen Plaintiffs in this action are the Natural Resources Defense Council ("NRDC") and Sierra Club.

14. NRDC is a national, not-for-profit, environmental organization with more than 447,000 members nationwide, including 12,875 members in Michigan and 92 members in Monroe County. NRDC's headquarters is located at 40 West 20th Street, New York City, New York 10011. NRDC is dedicated to the protection of the environment and public health, and as part of its mission, has actively supported effective enforcement of the CAA and other environmental statutes on behalf of its members for over 30 years.

15. Sierra Club is the nation's oldest and largest grassroots environmental organization. Sierra Club is an incorporated, not-for-profit organization. Its headquarters is located at 85 Second Street, 2nd Floor, San Francisco, CA, 94105 and its Michigan Chapter office is located at 109 E. Grand River Avenue, Lansing, MI 48906. Sierra Club's mission is to preserve, protect, and enhance the natural environment. Sierra Club has 641,000 members, with more than 17,000 members in Michigan and 8,800 members in the seven county non-attainment area in which the DTE Monroe plant is located. Since 1892, the Sierra Club has been working to protect communities, wild places, and the planet itself. Sierra Club is the oldest and largest grassroots environmental organization in the United States. The Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore

the quality of the natural and human environment; and to use all lawful means to carry out these objectives

16. The Citizen Plaintiffs each have members and supporters who live, work, and recreate near DTE's coal-fired Monroe power plant, and consequently breathe, use, and enjoy the ambient air in those areas. Their members' use and enjoyment of the air is impaired by pollution in excess of legal limitations and the impact of that air pollution on public health and visibility. DTE's Monroe plant emits SO2, NOx, PM, and other pollutants that exacerbate air pollution in the areas around and downwind of those plants. This pollution from the Monroe plant harms the health, recreational, and aesthetic interests of the Citizen Plaintiffs' members.

## STATUTORY FRAMEWORK

17. Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

18. Pursuant to Section 109 of the Act, the U.S. EPA Administrator has established primary and secondary National Ambient Air Quality Standards ("NAAQS") for seven "criteria pollutants." *See* 42 U.S.C. § 7409(a) (requiring the Administrator to promulgate NAAQS); 40 C.F.R. Part 50 (listing NAAQS). The primary NAAQS must protect the public health with an adequate margin of safety, and the secondary NAAQS must protect the public welfare from any known or anticipated adverse effects associated with the air pollutant. 42 U.S.C. § 7609(b).

19. Particulate matter with a diameter less than or equal to 10 microns ("PM10"), particulate matter with a diameter less than or equal to 2.5 microns ("PM2.5"), nitrogen oxides

("NO$_x$"), and sulfur dioxide ("SO$_2$") are among the seven criteria pollutants for which NAAQS have been promulgated. *See* 42 U.S.C. § 7409(a); 40 C.F.R. Part 50 (listing NAAQS).

20. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state must designate areas within it based on their compliance with the NAAQS. An area that meets NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable." These designations are subject to U.S. EPA approval.

21. Defendants' Monroe Power Plant is located in Monroe County, Michigan. At all times relevant to this Complaint, Monroe County has been classified as in attainment or unclassifiable for SO$_2$, NO$_x$, and ozone, among other pollutants. At all times relevant to this Complaint, Monroe County has been classified as nonattainment for PM2.5.

22. In order to ensure compliance with the NAAQS, the CAA requires each state to prepare a State Implementation Plan ("SIP") for U.S. EPA approval. 42 U.S.C. § 7410(a). Under Section 110(a)(2) of the CAA, 42 USC § 7410(a)(2), each SIP must include a permit program to regulate the modification and construction of any stationary source of air pollution as necessary to assure that NAAQS are achieved. Upon EPA approval, the provisions of a SIP are federally enforceable. 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

<u>The Prevention of Significant Deterioration Requirements</u>

23. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth the requirements for the Prevention of Significant Deterioration ("PSD") of air quality in those areas designated as either in attainment or unclassifiable for the purpose of maintaining the NAAQS. These requirements are designed to protect the public's health and welfare, assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources,

and provide that any consequences of such a decision occur after public participation in the decision-making process. These provisions are referred to collectively as the "PSD program."

24. Pursuant to Section 110 of the Act, 42 U.S.C. §7410, each state must adopt and submit to the U.S. EPA for approval a State Implementation Plan ("SIP") that includes, among other things, regulations to prevent the significant deterioration of air quality under Section 161-165 of the Act, 42 U.S.C. §§ 7471-7475.

25. Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable implementation plan is the SIP, or most recent revision thereof, which has been approved by the U.S. EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or promulgated by the U.S. EPA pursuant to Section 110(c) of the Act, 42 U.S.C. § 7410(c), and which implements the relevant requirements of the Act.

26. A state may comply with Section 161 of the Act, 42 U.S.C. § 7471, by submitting its PSD regulations to U.S. EPA for approval as part of its SIP. Those regulations must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

27. If a state does not have a PSD program that has been approved by the U.S. EPA and incorporated into the SIP, then the federal PSD regulations set forth at 40 C.F.R. § 52.21 may be incorporated by reference into the SIP. 40 C.F.R.§ 52.21(a).

28. On September 16, 2008, EPA conditionally approved Michigan's PSD SIP provisions. 73 Fed. Reg. 53,366. This approval included approval of provisions relevant to this proceeding. On March 25, 2010, EPA fully approved Michigan's PSD SIP provisions, 75 Fed. 14,352. The Michigan PSD SIP provisions are codified at Michigan Admin. Code R. 336.2801 to 336.2830. The Michigan SIP adopts by reference several sets of EPA regulations, including 40 C.F.R. §52.21. Mich. Admin. Code R. 336.2801(a).

29. Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and operation of a "major emitting facility" in an area designated as attainment unless a permit has been issued that comports with the requirements of Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Similarly, the Michigan SIP prohibits actual construction of a new source or modification of a major stationary source unless that source as obtained a permit and met several requirements, including the application of BACT. Mich. Admin. Code R. 336.2802(3), 336.2810(3) to 336.2818. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric power plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities." Under the PSD program, a "major stationary source" is defined to include fossil fueled steam electric generating plants of more than 250 million BTUs per hour heat input that emit, or have the potential to emit, one hundred tons per year or more of any regulated air pollutant. 40 C.F.R. § 51.166(b)(1)(i)(a); Mich. Admin. Code R. 336.2801(cc)(i)(A).

30. Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in Section 111(a) of the Act). "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." Under the Michigan SIP, "construction" means any physical change or change in the method of operation that would result in a change in emissions. Mich. Admin. Code R. 336.2801(m).

31. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as "any physical change or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act." Under the Michigan SIP, major modification is defined as any physical change or change in the method of operation that results in both a significant emissions increase and a significant net emissions increase of a regulated NSR pollutant from a major stationary source. Mich. Admin. Code R. 3362.801(aa)(i).

32. "Net emissions increase" means "the amount by which the sum of the following exceeds zero: (a) [a]ny increase in actual emissions (as defined by 40 C.F.R. § 52.21(b)(21)) from a particular physical change or change in the method of operation at a stationary source; and (b) [a]ny other increases and decreases in actual emissions (as defined by 40 C.F.R. § 52.21(b)(21)) at the source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i). A "significant" net emissions increase means an increase in the rate of emissions that equals or exceeds any of the following: 40 tons per year of $SO_2$; 40 tons per year of $NO_x$; or 25 tons per year of PM. 40 C.F.R. § 52.21(b)(23)(i). Effective July 15, 2008, $SO_2$ is regulated as a precursor to PM2.5, and $NO_x$ is regulated as a presumed precursor to PM2.5. 73 Fed. Reg. 28321, 28327-28 (May 16, 2008).

33. As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment or unclassifiable area that intends to construct a major modification must first obtain a PSD permit."

34. As set forth at 42 U.S.C. § 7475(a)(4) and 40 C.F.R. § 52.21, a source that undergoes a major modification in an attainment or unclassifiable area must install and operate BACT, as defined in 40 C.F.R. § 52.21 (b)(12) and 42 U.S.C. § 7479(3). Any application for a

9

PSD permit must be accompanied by an analysis of ambient air quality in the area. 40 C.F.R. § 52.21(m).

35.     The relevant law defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility." Section 169(3) of the Act, 42 U.S.C. § 7479(3); Mich. Admin. Code Rule 336.2801(f).

36.     The PSD program also requires any person who elects to modify a major source in an attainment area to demonstrate, before construction begins, that the construction will not cause or contribute to air pollution that is in violation of any national ambient air quality standard or the maximum allowable increase in emissions of that pollutant. 40 C.F.R. § 52.21(k).

37.     In addition, the owner or operator of a proposed source or modification must submit all additional information about the source, the modification and the air quality impact of the modification as requested by the U.S. EPA under 40 C.F.R. § 52.21(n).

38.     Though PSD is a preconstruction permitting program, the Clean Air Act , federal implementing regulations, and the Michigan SIP establish requirements for the lawful operation of the source following a modification.

The Nonattainment New Source Review Requirements

39.     Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as being in nonattainment with the NAAQS standards. These provisions are referred to collectively as the "Nonattainment NSR program." The Nonattainment NSR program is intended to reduce emissions of air pollutants in

areas that have not attained the NAAQS, so that the areas make progress toward meeting the NAAQS.

40. Under Section 172(c)(5) of the Nonattainment NSR provisions of the Act, 42 U.S.C. § 7502(c)(5), each state is required to adopt Nonattainment NSR SIP rules that include provisions requiring permits to conform to the requirements of Section 173 of the Act, 42 U.S.C. §7503, for the construction and operation of modified major stationary sources within nonattainment areas. Section 173 of the Act, in turn, sets forth a series of minimum requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas. 42 U.S.C. § 7503.

41. By rule, EPA regulates $SO_2$ as a precursor to PM2.5. 73 Fed. Reg. 28321 (May 16, 2008). Until EPA approves Michigan SIP provisions related to PM2.5, 40 C.F.R. § 51 Appendix S applies to areas of PM2.5 nonattainment including Monroe, County, Michigan. 73 Fed. Reg. 28321, 28343 (May 16, 2008). Michigan has submitted for EPA's review and approval revised Nonattainment NSR provisions that include regulation of PM2.5 precursors. If those provisions are approved, they will become federally enforceable at that time. 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

42. Section 173(a) of the Act, 42 U.S.C. 7503(a), 40 C.F.R. § 51 Appendix S, and Mich. Admin. Code R. 336.2908 provide that construction and operating permits may be issued, if, among other things:"(a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the national ambient air quality standards is maintained; and (b) the pollution controls to be employed will reduce emissions to the "lowest achievable emission rate."

43. "Net emissions increase" means the amount by which the sum of the following exceeds zero: (a) any increase in actual emissions from a particular physical change or change in the method of operation at a stationary source; and (b) any other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable as calculated under the applicable rules. 40 C.F.R. § 51 Appendix S; Mich. Admin. Code R. 336.2901(v). A "significant" net emissions increase means an increase in the rate of emissions that would equal or exceed any of the following rates for the following pollutants: 40 tons per year of $SO_2$; 40 tons per year of $NO_x$; and 25 tons per year of PM. 40 C.F.R. § 51 Appendix S; Mich. Admin. Code R. 336.2901(gg).

44. The relevant law defines Lowest Achievable Emission Rate ("LAER") as "the most stringent emissions limitation which is contained in [any SIP] for such class or category of sources, unless….the proposed source demonstrates that such limitations are not achievable, or…which is achieved in practice by such class or category of course, whichever is more stringent." 42 U.S.C. § 7501(3); Mich. Admin. Code R. 336.2901(r).

45. Though Nonattainment NSR is a preconstruction permitting program, the Clean Air Act, the implementing regulations, and the Michigan Nonattainment NSR rules establish requirements for the lawful operation of the source following a modification.

### New Source Review Reporting Requirements

46. The relevant federal regulations and Michigan SIP require sources to maintain and report certain information where there is a "reasonable possibility" that a project may qualify as a major modification. Under the rules, a reasonable possibility exists where the projected emissions increase is at least 50% of the significance level. 40 C.F.R. §,51.166(r)(6)(vi); Mich. Admin. Code R. 336.2818(3) (f)(ii). For an electric utility, where there is a reasonable

possibility that the project will trigger NSR, the source is required to maintain information related to its analysis that the project is not a major modification under the law, including the basis for any emissions excluded from the calculated emissions increase. 40 C.F.R. §§ 51.165(a)(6), 51.166(r)(6)(i); Mich. Admin. Code R. 336.2818(3)(a), 336.2902(6)(a).

## ENFORCEMENT PROVISIONS

47. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Act whenever, on the basis of any information available, the Administrator finds that any person has violated or is in violation of any other requirement or prohibition of, among other things: (1) the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); (2) the Nonattainment NSR requirements of Section 173 of the Act, 42 U.S.C. § 7503; (3) or the Michigan SIP.

48. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, the requirements or prohibitions described in the preceding paragraph.

49. Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief as necessary to prevent the construction, modification, or operation of a major emitting facility which does not conform to the PSD requirements in Part C of Title I of the Act.

## MONROE UNIT 2

50. Monroe Unit 2 is an 823 megawatt ("MW") coal-fired electrical generating unit that began operation in 1973. It is located in Monroe, Michigan, on the western shore of Lake Erie and approximately 40 miles southwest of Detroit.

51. Monroe Unit 2 emitted 27,230 tons of $SO_2$ and 8,205 tons of $NO_x$ in 2009. The Unit was the largest individual source of $SO_2$ and $NO_x$ in the state of Michigan in 2009. DTE has predicted that by 2013, Monroe Unit 2 will emit 33,816 tons of $SO_2$ and 14,494 tons of $NO_x$.

52. Monroe Unit 2 is an electric steam generating unit as that term is used in the Act and the Michigan SIP.

## GENERAL ALLEGATIONS

53. On or about March 13, 2010, DTE initiated a major overhaul of the boiler and other components of Monroe Unit 2. On information and belief, the overhaul included replacement of the economizer, 2,000 square feet of waterwall tubing, and large sections of piping in the reheater pendants. The project as a whole cost approximately $65 million and was unprecedented in the 40-year history of the Monroe Power Plant.

54. On March 12, 2010, the day before the project started, DTE mailed a planned outage notification letter to the Michigan Department of Natural Resources and Environment.

55. At all times pertinent to this civil action, the Monroe Power Plant as a whole and Monroe Unit 2 individually were each a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Michigan SIP for $NO_x$, $SO_2$, and PM.

## FIRST CLAIM FOR RELIEF
(PSD Violations at Monroe Unit 2)

56. Paragraphs 1 through 55 are realleged and incorporated herein by reference.

57. On or about March 13, 2010, Defendants commenced construction of a major modification, as defined by the Act and the Michigan SIP, that included the overhaul work described above. This major modification included one or more physical changes or change in the method of operation at Monroe Unit 2. This major modification resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following pollutants: $NO_x$ and $SO_2$.

58. Defendants did not comply with the PSD requirements in the Act and Michigan SIP with respect to the major modification at Monroe Unit 2. Among other things, Defendants failed to take the following actions required by the Act and the Michigan SIP with respect to the major modification at Monroe Unit 2: (i) obtain a PSD permit for the construction and operation of the major modification; (ii) undergo a BACT determination in connection with this major modification; (iii) install and operate the best available control technology for control of $NO_x$ and $SO_2$, pursuant to such BACT determination; or (iv) demonstrate that the major modification will not cause or contribute to air pollution that is in violation of any national ambient air quality standard or the maximum allowable increase in emissions of SO2 or NOx.

59. Defendants have violated and continue to violate Section 165(a) of the Act, 42 U.SC. § 7475(a), and the PSD provisions of the Michigan SIP at Monroe Unit 2. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

60. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $37,500 per day for

each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**SECOND CLAIM FOR RELIEF**
(Nonattainment NSR Violations at Monroe Unit 2)

61. Paragraphs 1 through 55 are realleged and incorporated herein by reference.

62. On or about March 13, 2010, Defendants commenced construction of a major modification, as defined by the Act and the implementing regulations, that included the overhaul work described above. This major modification included one or more physical changes or changes in the method of operation at Monroe Unit 2. This major modification resulted in a significant net emissions increase, as defined by the relevant NNSR regulations, of the pollutant $SO_2$. Under the applicable NNSR rules, Defendants are required to comply with NNSR for $SO_2$ because it is a precursor to PM2.5, and Monroe County is in nonattainment for PM2.5.

63. Defendant did not comply with the applicable Nonattainment NSR requirements under the Act and the implementing regulations with respect to the major modification at Monroe Unit 2. Among other things, Defendants failed to take the following actions required by the Act and the implementing regulations with respect to the major modification at Monroe Unit 2: (i) obtain a Nonattainment NSR permit for the construction and operation of the major modification; (ii) undergo a LAER determination in connection with this major modification; (iii) install and operate the pollution controls required by such LAER determination. In addition, Defendants have not complied with other Nonattainment NSR requirements, including the requirement to obtain and operate with federally enforceable emission offsets at least as great as the modified source's emissions.

64. Defendants have violated and continue to violate the Nonattainment NSR provisions of Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, and the implementing regulations. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

65. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $37,500, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin Defendants from operating Monroe Unit 2, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendants to apply for New Source Review permit(s) under Parts C and/or D of Title I of the Clean Air Act, as appropriate, that conform with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the New Source Review requirements of the Clean Air Act;

3. Order Defendants to remedy their past violations by, among other things, requiring Defendants to install and operate the best available control technology or lowest achievable emission rate, as appropriate, at Monroe Unit 2, for each pollutant in violation of the New Source Review requirements of the Clean Air Act;

4. Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

5. Assess a civil penalty against Defendants of up to $37,500 per day violation;

6. Award Plaintiffs its costs of this action; and,

7. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

\_\_\_\_/s/_____
Nick Schroeck (MI Bar No. P70888)
Executive Director
Great Lakes Environmental Law Center
440 Burroughs St. Box 70
Detroit, MI 48202
Phone: (313)820-7797
nschroeck@wayne.edu

\_\_\_\_/s/_____
Shannon Fisk (IL Bar No. 6269746)*
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
Phone: (312) 651-7904
Fax: (312) 234-9633
Email: sfisk@nrdc.org

* Admitted to practice in the U.S. District Court for the Eastern District of Michigan on July 12, 2007.

\_\_\_\_/s/_____
Holly Bressett (CA Bar No. 251265)**
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA 94105
Phone: (415) 977-5646
Fax: (415) 977-5793
Email: holly.bressett@sierraclub.org

DATED: September 28, 2010

** *Pro hac vice* motion pending

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing **PROPOSED COMPLAINT IN INTERVENTION** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Ellen E. Christensen<br>U.S. Attorney's Office<br>211 W. Fort Street<br>Suite 2001<br>Detroit, MI 48226<br>313-226-9100<br>Email: ellen.christensen@usdoj.gov | Thomas Benson<br>U.S. Department of Justice<br>Environmental and Natural Resource Div.<br>Ben Franklin Station<br>P.O. Box 7611<br>Washington, DC 20044<br>202-514-5261<br>Email: Thomas.Benson@usdoj.gov |
| Michael J. Solo, Jr.<br>DTE Energy Co.<br>One Energy Plaza<br>Detroit, MI 48226-1279<br>solom@dteenergy.com | Matthew J. Lund<br>Pepper Hamilton LLP<br>100 Renaissance Center,<br>36th Floor<br>Detroit, MI 48243<br>lundm@pepperlaw.com |
| Mark B. Bierbower<br>F. William Brownell<br>Makram B. Jaber<br>Brent A. Rosser<br>James W. Rubin<br>Hunton & Williams LLP<br>1900 K Street, NW<br>Washington DC 20006<br>mbierbower@hunton.com<br>bbrownell@hunton.com<br>mjaber@hunton.com<br>brosser@hunton.com<br>jrubin@hunton.com | |

\_\_\_\_/s/_____
James Giampietro
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA 94105
Phone: (415) 977-5638
james.giampietro@sierraclub.org         DATED: September 28, 2010