# EXHIBIT 5
# TO DETROIT EDISON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

Michael Solo, Esq.
DTE Energy
One Energy Plaza
Detroit, MI 48226-1279

MAY 28 2010

Re:   *Monroe Unit 2 Capital Improvement Projects*

Dear Mr. Solo:

The United States Environmental Protection Agency ("EPA") has learned of information suggesting that DTE Energy ("DTE") is currently performing a number of capital improvement projects at unit 2 of the Monroe Power Plant. We have evidence indicating that these projects constitute modification(s) under the New Source Review ("NSR") provisions of the Clean Air Act, 42 U.S.C. § 7401, *et. seq.*, and the corresponding provisions of the Michigan State Implementation Plan ("SIP"). *See, e.g.*, Attachments A (March 12, 2010 K. Guertin Letter to W. Presson) ("Notice Letter") and B ("Extreme Makeover: Power Plant Edition," Monroe Evening News, April 22, 2010).

**Please provide the information below by close of business on June 1, 2010.**

As you know, it is illegal to modify an existing source of emissions without, *inter alia*, obtaining a permit and installing pollution controls. The seriousness of the violation would be compounded by beginning operation of the illegally modified unit. U.S. EPA is charged with enforcement of the Clean Air Act, *e.g.*, 42 U.S.C. § 7413, and has the authority to "take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of this part." 42 U.S.C. § 7477. EPA also has the authority to obtain information from owners and operations of emissions sources. 42 U.S.C. § 7414.

DTE has provided information to state regulators that it is currently performing capital projects, including the replacement of the economizer and the high temperature reheater pendant, at Monroe unit 2. The information provided indicates that the project will last until mid-June. In its Notice Letter, DTE projects emissions increases of 3,701 tons of $SO_2$, 4,096 tons of $NO_X$, and 615 tons of PM compared to the baseline periods selected by the company. DTE has provided no information that these emissions increases can be excluded as caused solely by demand

growth. Under the rules, for an applicant to exclude any portion of an emissions increase, it must demonstrate *both* (i) that those emissions "could have accommodated during the consecutive 24-month period used to establish the baseline actual emissions" *and* (ii) that those emissions are "unrelated to the particular project." MAR 1801(ll)(2)(C).

Given that DTE may soon complete its modification of Monroe Unit 2, time is of the essence. Pursuant to Section 114, please provide the following information by the close of business on **June 1, 2010**:

- When currently DTE expects to complete the outage at unit 2; and
- Any additional information that you believe supports your contention that the work done during this outage does *not* require a permit.

Sincerely,

Phillip A. Brooks
Director, Air Enforcement Division