# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

and

NATURAL RESOURCES DEFENSE
COUNCIL, INC. AND SIERRA CLUB,

      Intervenor-Plaintiffs,

      v.

DTE ENERGY COMPANY AND
DETROIT EDISON COMPANY,

      Defendants.

Civil Action No.
2:10-cv-13101-BAF-RSW

Judge Bernard A. Friedman

Magistrate Judge R. Steven Whalen

## DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH RULES 33 AND 34 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Local Rule 7.1 and Rule 37 of the Federal Rules of Civil Procedure, Defendants DTE Energy Company and Detroit Edison Company (collectively, "Detroit Edison") move for an order compelling Plaintiff's compliance with Rules 33 and 34 of the Federal Rules of Civil Procedure. Such an order is appropriate because Plaintiff has failed to: (1) organize and label its documents to correspond to Detroit Edison's requests for production as required by Federal Rule 34(b); (2) specify records in sufficient detail to enable Detroit Edison to locate the information sought as required by Federal Rule 33(d); and (3) search for and produce relevant and responsive documents covering the period from 2005 to the present from nine of the Environmental Protection Agency's ten regional offices. Detroit Edison conferred in good faith with counsel for Plaintiff in an effort to obtain the relief sought in the Motion without Court

action.  Fed. R. Civ. P. 37(a).  In addition, in accordance with Local Rule 7.1(a)(2)(A), counsel

for Detroit Edison contacted counsel for Plaintiff and provided an explanation for the legal basis

for the Motion.  Plaintiff does not concur.

      Respectfully submitted, this 8th day of April 2011.

                    **HUNTON & WILLIAMS LLP**

|  |  |
|---|---|
|  | /s/ Brent A. Rosser |
| Matthew J. Lund (P48632) | F. William Brownell |
| Pepper Hamilton LLP | bbrownell@hunton.com |
| 100 Renaissance Center, 36th Floor | Mark B. Bierbower |
| Detroit, Michigan 48243 | mbierbower@hunton.com |
| lundm@pepperlaw.com | Makram B. Jaber |
| (313) 393-7370 | mjaber@hunton.com |
|  | Brent A. Rosser |
| Michael J. Solo (P57092) | brosser@hunton.com |
| Office of the General Counsel | Hunton & Williams LLP |
| DTE Energy | 1900 K Street, N.W. |
| One Energy Plaza | Washington, D.C. 20006-1109 |
| Detroit, Michigan | (202) 955-1500 |
| solom@dteenergy.com |  |
| (313) 235-9512 | *Counsel for Defendants* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2011, the foregoing **DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH RULES 33 AND 34 OF THE FEDERAL RULES OF CIVIL PROCEDURE** was served electronically only on the following attorneys of record in accordance with an agreement reached among the parties:

Ellen E. Christensen
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI  48226
313-226-9100
Email:  ellen.christensen@usdoj.gov

James A. Lofton
Thomas Benson
Justin A. Savage
Kristin M. Furrie
U.S. Department of Justice
Environmental and Natural Resource Div.
Ben Franklin Station
P.O. Box 7611
Washington, DC  20044
202-514-5261
Email:  thomas.benson@usdoj.gov
        justin.savage@usdoj.gov
        kristin.furrie@usdoj.gov
        jim.lofton@usdoj.gov

Holly Bressett
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA  94105
Phone: (415) 977-5646
Email:  Holly.Bressett@sierraclub.org

Andrea S. Issod
Sierra Club
85 2nd Street, 2nd Floor
San Francisco, CA  94105
415-977-5544
Email:  andrea.issod@sierraclub.org

/s/ Brent A. Rosser

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

and

NATURAL RESOURCES DEFENSE
COUNCIL, INC. AND SIERRA CLUB,

      Intervenor-Plaintiffs,

        v.

DTE ENERGY COMPANY AND
DETROIT EDISON COMPANY,

      Defendants.

Civil Action No.
2:10-cv-13101-BAF-RSW

Judge Bernard A. Friedman

Magistrate Judge R. Steven Whalen

# BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH
### RULES 33 AND 34 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**TABLE OF CONTENTS**

Page

STATEMENT OF ISSUES PRESENTED....................................................................... iv

CONTROLLING OR OTHER APPROPRIATE AUTHORITY ................................... v

INTRODUCTION.......................................................................................................... 1

BACKGROUND............................................................................................................. 2

      A.     Detroit Edison's Discovery Requests. ..................................................... 3

      B.     EPA's Responses to Detroit Edison's Discovery Requests. ................... 4

      C.     EPA's Supplemental Production. ............................................................. 6

      D.     The Parties' Meet and Confer Efforts...................................................... 7

ARGUMENT .................................................................................................................. 9

I.      EPA HAS FAILED TO COMPLY WITH FEDERAL RULE 34(b). ................ 9

      A.     EPA Document Dumps Have Been Rejected in Other NSR Cases. ..................... 10

      B.     The Documents Were Not Produced as They Are Kept in the Usual Course of EPA's Business. .................................................................. 12

II.     EPA HAS FAILED TO COMPLY WITH FEDERAL RULE 33(d). .............. 15

III.    EPA'S UNILATERAL REFUSAL TO SEARCH FOR RELEVANT AND RESPONSIVE DOCUMENTS IS WITHOUT MERIT. .................................. 16

CONCLUSION ............................................................................................................. 17

i

# TABLE OF AUTHORITIES

## **<u>FEDERAL CASES</u>**

*Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105 (D. Neb. 2009)............................ 14

*In re Mentor Corp.*, No. 4:08-MD-2004, 2009 U.S. Dist. LEXIS 5791 (M.D. Ga. Jan. 22, 2009)....................................................................................................... 5, 9

*In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320 (N.D. Ill. 2005) ................................... 15

*In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351 (N.D. Ill. 2005) ............................... 9, 13

*Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73 (D. Mass. 1976).................................... 14

*Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698 (S.D. Fla. 2010) .............................................................................................. 13

*Nat'l Day Laborer Org. Network v. U. S. Immigration & Customs Enforcement Agency*, No. 10 Civ. 3488 (SAS), 2011 U.S. Dist. LEXIS 11655 (S.D.N.Y. Feb. 7, 2011) ....................................................................................................... 11

*Ohio Dep't of Human Servs. v. U.S. Dep't of Health & Human Servs.*, 862 F.2d 1228 (6th Cir. 1988) ............................................................................................... 16

*Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331 (N.D.N.Y. 2008).......................12, 14

*Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-01318-BES-GWF, 2006 WL 1582122 (D. Nev. June 5, 2006) ................................................ 14

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009)..................... 11, 12, 13, 14

*Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, No. 08-CV-12393, 2009 WL 2022308 (E.D. Mich. July 8, 2009) ............................................................................... 15

*United States v. Duke Energy Corp.*, No. 1:00 CV 1262 (M.D.N.C. Dec. 13, 2001) ............ 10

*United States v. Duke Energy Corp.*, No. 1:00 CV 1262 (M.D.N.C. Feb. 5, 2002) .............. 10

*United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619 (M.D.N.C. 2003) ..................... 8, 9

*United States v. Illinois Power Co.*, No. 99-833-MJR (S.D. Ill. Jan. 10, 2001) ................... 16

*United States v. Illinois Power Co.*, No. 99-833-MJR (S.D. Ill. Oct. 23, 2001).................... 10

### FEDERAL STATUTES

42 U.S.C. § 7411(a) ................................................................................................ 2

### MISCELLANEOUS

8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal
Practice And Procedure, § 2213 (2008) .................................................... 9

## STATEMENT OF ISSUES PRESENTED

In responding to Defendants' ("Detroit Edison") requests for production under Federal Rule of Civil Procedure ("Federal Rule" or "Rule") 34(b), whether Plaintiff United States ("EPA") is permitted to dump 4.6 million pages of unorganized documents on Detroit Edison without labeling them to correspond to Detroit Edison's specific requests.

Detroit Edison's Answer:  No.

In responding to interrogatories under Federal Rule 33(d), whether EPA is permitted to provide vague references to its productions without providing the information needed for Detroit Edison to locate and identify the information sought.

Detroit Edison's Answer:  No.

In responding to Detroit Edison's requests for production under Rule 34, whether EPA is permitted to unilaterally limit its search for responsive documents to just one of EPA's ten regional offices.

Detroit Edison's Answer:  No.

iv

## CONTROLLING OR OTHER APPROPRIATE AUTHORITY

FED. R. CIV. P. 33(d)

FED. R. CIV. P. 34(b)

*Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698 (S.D. Fla. 2010)

*Ohio Dep't of Human Servs. v. U.S. Dep't of Health & Human Servs.*, 862 F.2d 1228 (6th Cir. 1988)

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009)

*Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, No. 08-CV-12393, 2009 WL 2022308 (E.D. Mich. July 8, 2009)

*United States v. Duke Energy Corp.*, No. 1:00 CV 1262 (M.D.N.C.), orders dated Dec. 13, 2001 and Feb. 5, 2002

*United States v. Illinois Power Co.,* No. 99-833-MJR (S.D. Ill.), orders dated Jan. 10, 2001 and Oct. 23, 2001

## INTRODUCTION

Detroit Edison seeks an order requiring EPA to comply with Rules 33 and 34 of the Federal Rules of Civil Procedure.  Such an order is necessary because EPA has—among other things—engaged in document dumps totaling more than 4.6 million pages of unorganized documents, which amounts to roughly *1,800* banker's boxes of documents.  EPA claims these documents are responsive to Detroit Edison's First Set of Requests for Production.  But it has not organized and labeled them to correspond to the categories in Detroit Edison's requests as required under Federal Rule 34(b).  Based on EPA's representations, it appears that over 95% of the documents constitute a prepackaged mixture of documents EPA has produced in other New Source Review ("NSR") cases from 2000 to 2004, despite the fact that Detroit Edison requested documents covering 2005 to the present as well.

EPA's productions lack any meaningful organization.  They contain no index, key, or table of contents.  Detroit Edison cannot determine which documents are responsive to which of Detroit Edison's requests.  It cannot determine whether EPA has documents that are responsive to a particular request.  It cannot determine who possessed the documents.  It cannot determine whether certain documents have been produced.  It cannot determine whether EPA's responses are complete.  Likewise, in response to several interrogatories, EPA has not provided details that allow Detroit Edison to locate information sought as required by Federal Rule 33(d).  Instead, EPA makes vague references to the documents it has produced or will produce at some unspecified time.  Finally, EPA has refused to search for the same types of documents it has been ordered to produce in other NSR cases.  This includes documents from nine of the ten EPA

regional offices charged with enforcement of the very NSR regulations at issue in this case.

Detroit Edison's motion to compel should be granted.[1]

## BACKGROUND

Like Detroit Edison's pending Motion for Protective Order, Doc. No. 81, this Motion is necessitated by EPA's non-compliance with the Federal Rules and its efforts to litigate a case that is different from the one EPA described to the Court on January 19, 2011. EPA told the Court at that time this case could be ready for trial in less than two weeks from now, and that any discovery by EPA would be limited to "maybe" filing supplemental expert reports. Tr. of Hr'g on Pl.'s Mot. for Prelim. Inj. at 142, 144 (excerpts attached as Ex. B). EPA specifically told the Court:

> I think for the expedited trial we're talking about here, it would make sense to focus on Monroe 2 because as the Court knows we've got all the information for the most part together and I think if [Detroit Edison] . . . think[s] there might be some additional discovery, if they want to supplement expert reports in a reasonable time maybe we'll do the same if they do. … I think this [case] is something we can [try] in another 90 days as the Court has suggested.

*Id*. The Court presumably relied on these representations—in addition to the extensive filings already before it—in setting the expedited case schedule. Detroit Edison—and likely the Court—did not anticipate EPA would then serve extensive written discovery, identify three new

---

[1] The prejudice to Detroit Edison caused by EPA's failure to comply with its discovery obligations is exacerbated by the headstart EPA had in preparing its case and the expedited trial schedule EPA obtained. Months before bringing this action, EPA used its investigative authority to prepare its case under Section 114 of the Clean Air Act, 42 U.S.C. § 7411(a), which permits EPA to demand certain records from owners or operators of facilities subject to regulation under the Clean Air Act. As a result, Detroit Edison was required to search for and produce to EPA tens of thousands of pages of documents before this litigation commenced. Nevertheless, many of EPA's requests in its First Set of Requests for Production mirror EPA's Section 114 requests to Detroit Edison, thereby expanding this litigation and increasing the burden on the company. Moreover, in contrast to EPA's strategy in dumping documents on Detroit Edison, EPA demanded that Detroit Edison reproduce any documents already produced to EPA under Section 114 unless the company "specifically identifies those previously produced Documents responsive to a particular Request, *e.g.*, identify the Bates number and Document title in Defendants' written responses to a specific Request." Pl.'s First Set of Doc. Req. to Defs. DTE Energy and Detroit Edison at 2 (Ex. A).

experts, conduct third-party discovery, demand 20 fact depositions, attempt to expand the case beyond the tube projects specifically identified in its Notice of Violation (*see* Doc. No. 81), and produce 4.6 million pages of unorganized documents on Detroit Edison. Indeed, in response to just *one* of EPA's requests for production, Detroit Edison recently collected and produced to EPA approximately 30 gigabytes of data. This equates to approximately *5 million* pages of Microsoft Excel files. This is not the simple case EPA described to the Court in January.

    **A.**    **Detroit Edison's Discovery Requests.**

       Detroit Edison served its First Set of Interrogatories and First Set of Requests for Production of Documents on EPA on February 1. Exs. C and D. On February 10, EPA raised concerns regarding the scope of several of the document requests. Letter from Kristin Furrie (U.S. Department of Justice ("DOJ")) to Mark Bierbower (Hunton & Williams LLP ("H&W")) (Feb. 10, 2011) (Ex. E). Detroit Edison agreed to narrow several of them. Letter from Jennifer Smith (H&W) to Kristin Furrie (DOJ) (Feb. 23, 2011) (Ex. F). EPA also indicated it would be producing a hard drive containing 4.5 million pages of documents produced in other NSR cases through 2004. *See, e.g.*, Ex. E at 2. EPA did not describe the manner or form in which these documents would be produced. Nor did it state that Detroit Edison—rather than EPA—would be responsible for reviewing them to determine which documents might be responsive to which of Detroit Edison's requests. With respect to documents from 2005 to the present, EPA stated that it would not be searching for documents from nine of EPA's ten regional offices. *Id.* Rather, EPA said it would limit its search to EPA headquarters and the Region 5 office in Chicago. *Id.* Detroit Edison did not agree to the form of EPA's production. Nor did it agree to EPA's decision to limit the scope of its search. Nevertheless, EPA elected to proceed in that manner.

**B.      EPA's Responses to Detroit Edison's Discovery Requests.**

EPA served its responses to Detroit Edison's request for production and interrogatories

on March 7.  *See* Exs. G and H.  EPA objected to many of Detroit Edison's requests as

overbroad, unduly burdensome and irrelevant but did not move for a protective order.  EPA

produced 4.5 million pages of documents on a hard drive, cited eleven EPA websites, and

referred Detroit Edison to EPA databases that "may contain documents responsive to Detroit

Edison requests."  Ex. G at 2-3, 6.  Detroit Edison reviewed the hard drive to determine whether

the documents were organized to correspond to Detroit Edison's requests.  They were not.

Rather, EPA's production is disorganized and confusing.  The following is a screen shot of a

small portion of the 83-page hard drive inventory from EPA's initial production.



*See also* First Produc. Inventory -- Pl.'s Resps. to Defs.' Reqs. for Produc. of Docs. (Ex. I).

The documents do not appear to be organized by date or subject matter. They appear to reside in nine different "directories." Ex. G at 6. Though EPA described those directories, the descriptions are inadequate and in at least one case inaccurate. EPA states, for example, that "[t]he APC-EPAAPC01-13 directory contains non-confidential business information responsive material collected from prior case productions that are responsive to your requests." *Id*. at 7. EPA does not, however, describe the nature or subject matter of that business information, how and from whom that information was collected, the cases in which the information has been produced, how the information corresponds to Detroit Edison's specific document requests, or even how the documents might be relevant to this case against Detroit Edison.[2] EPA also claims that one of the directories contains documents produced in 2000 by "EPA Regions 2, 3 and 5 (i.e. the Regions where the initial power plant initiative cases were filed)." *Id*. at 6. But EPA initially filed two NSR cases in Region 4 as well.

Moreover, EPA claims that the websites it referenced contain documents that "are responsive to multiple Detroit Edison requests." *Id*. at 3. But some of the websites contain materials that have nothing to do with the Clean Air Act. One website contains materials related

---

[2] During the meet and confer process, EPA's counsel suggested that Detroit Edison should not be prejudiced by the nature of EPA's production because Detroit Edison's counsel, Hunton & Williams, was involved in at least some of the cases in which those documents were produced. Thus, it was asserted, Hunton & Williams should be "familiar with" those documents. That is not a valid excuse for EPA's failure to comply the Federal Rules for numerous reasons, not the least of which is the lack of any organization for such a voluminous production of documents. *See In re Mentor Corp.*, No. 4:08-MD-2004, 2009 U.S. Dist. LEXIS 5791, *6 (M.D. Ga. Jan. 22, 2009). Moreover, Detroit Edison requests many documents that are specific to this case and likely have not been requested in other NSR cases. *See, e.g.*, Ex. D at 11-30 (requesting documents supporting allegations in Complaint; documents describing each project at Monroe 2 which EPA contends to be a "modification"; documents relating to EPA's June 4, 2010 Notice of Violation; documents relating to emissions calculations performed in this case; documents relating to EPA's determination that the work performed at Monroe Unit 2 was not routine maintenance, repair or replacement; documents relating to inspections of any Detroit Edison plant since 1970; documents relating to EPA's oversight of Michigan's implementation of the PSD and NSR program; communications between EPA and Michigan relating to enforcement of NSR; communications between EPA and Michigan relating to facts underlying the Complaint; documents relating to EPA's review of state actions regarding implementation of NSR provisions of Michigan's SIP; documents relating to EPA's experts in this case).

to unrelated statutes such as the Endangered Species Act, the Federal Insecticide, Fungicide and Rodenticide Act and California's Oil Spill Prevention and Response Act.  EPA indicates that some of the documents on the websites "may have been subsequently superseded" but does not identify which documents it believes fit that category.  *Id*. at 3 n.1.  In response to Detroit Edison's interrogatories, EPA also made vague references to documents that "have been or will be produced" without providing any additional details.  *See, e.g.*, Ex. H at 34, 36, 37, 39, 40, 41, 42, 43, and 46.  To the extent it claims that documents containing responsive information "have been … produced," EPA does not indicate when those documents were produced or how it proposes that Detroit Edison find them.  To the extent it claims that documents containing responsive information "will be produced," EPA does not indicate when it will produce them.

### C.      EPA's Supplemental Production.

On March 14, EPA served an additional 140,000 pages of documents.  Like EPA's first production, EPA did not organize the documents to correspond to Detroit Edison's requests.  In addition, EPA did not provide an index, key, or table of contents.  The folders on the discs are labeled in a manner that makes it impossible to determine their subject matter.  The following is a screen shot of the inventory from EPA's second production.

6



Second Produc. Inventory -- Pl.'s Resps. to Defs.' Reqs. for Produc. of Docs. (Ex. J). EPA stated that this production—which equates to approximately 54 banker's boxes of documents—contained "additional documents responsive to Defendants' First Request for Production of Documents to Plaintiff United States" but failed to provide any additional information. Letter from Beth Walinskas (DOJ) to Jennifer Smith (H&W) (Mar. 14, 2011) (Ex. K).

**D.    The Parties' Meet and Confer Efforts.**

On March 18, Detroit Edison expressed concerns related to EPA's responses to Detroit Edison's discovery. Letter from Brent Rosser (H&W) to Thomas Benson (DOJ) (Mar. 18, 2011) (Ex. L). Detroit Edison requested that EPA organize and label its documents to correspond to its requests. *Id.* at 1-2. EPA refused. It claimed that its review for responsive documents was "wind[ing] down," and that EPA's production complied with the Federal Rules. Letter from

Thomas Benson (DOJ) to Brent Rosser (H&W) (Mar. 24, 2011) at 2-3 (Ex. M).  EPA stated *for the first time* that "the documents have been produced as they were kept in the normal course of business, which is sufficient under Rule 34(b)(2)(E)(i)."  *Id.* at 3 n.2.  EPA did not, however, provide any information in support of this new claim.  The new claim appeared inconsistent with EPA's prior statement that the documents were "collected and produced in prior litigation," including documents "produced in response to specific document requests in the *United States v. Illinois Power* case …."  Letter from Kristin Furrie (DOJ) to Jennifer Smith (H&W) (Feb. 28, 2011) at 3 (Ex. N); Ex. G at 7.  Detroit Edison also requested that EPA comply with Rule 33(d), and that EPA search all EPA regional offices for responsive documents from 2005 to the present.  Ex. L at 4.[3]

Detroit Edison sent a letter to EPA on March 31 reiterating many of the points raised in its March 18 letter.  Letter from Brent Rosser (H&W) to Thomas Benson (DOJ) (Mar. 31, 2011) (Ex. O).  Detroit Edison stated that EPA's compliance was necessary because the expedited case schedule was "becoming more and more unworkable as EPA's non-compliance continues."  *Id.* at 3.  In response, EPA asserted that its productions were proper and accused Detroit Edison of doing "nothing more than seek[ing] delay for delay's sake."  Letter from Kristin Furrie (DOJ) to Brent Rosser (H&W) (Apr. 4, 2011) at 1 (Ex. P).  Detroit Edison does not seek delay.  It seeks EPA's compliance with the Federal Rules.

EPA also purported to identify a "contradiction" in Detroit Edison's analysis that EPA "has produced too many documents and yet not produced enough."  *Id.*  No such contradiction exists.  Given the complexity of the case and the experience of other NSR cases, Detroit Edison is not surprised by the volume of documents EPA has produced.  *See, e.g.*, *United States v. Duke*

---

[3] Detroit Edison's March 18 letter addressed several other issues with EPA's responses to its discovery requests, but it appears the parties have resolved many of those issues.

*Energy Corp.*, 278 F. Supp. 2d 619, 622 (M.D.N.C. 2003) ("After a lengthy discovery period, which produced 4.6 million pages of documents, extensive discovery disputes, and numerous pretrial motions, the parties now move for summary judgment.").  Rather, it is surprised by the manner and form in which EPA has produced them.  In a final effort to resolve the parties' dispute, the parties held additional meet and confers on April 4 and April 8.  The parties were unable to resolve these matters, requiring the filing of this Motion.

## ARGUMENT

**I.      EPA HAS FAILED TO COMPLY WITH FEDERAL RULE 34(b).**

A party has two options under Rule 34(b) for the production of documents in response to discovery requests.  A party must either produce documents as they are kept in the usual course of business or label them to correspond to the categories in the requests.  FED. R. CIV. P. 34(b). This rule prohibits parties from "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought."  8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, and RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE, § 2213 (2008).  It also prohibits parties from "dump[ing] massive amounts of documents, which … have no logical order to them, on their adversaries and demand that they try to find what they are looking for."  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005) (internal citations omitted).  As one court stated:

> [I]t would not be good faith for the producing party to simply produce all of the documents in its possession and respond, "this is how the documents are kept in the ordinary course of business; here's an index; good luck figuring it out; the rules require you to comb through the proverbial haystack and find the needle you are looking for."

*In re Mentor Corp.,* 2009 U.S. Dist. LEXIS 5791, at *6.  This is EPA's position in this case, except that EPA has failed to provide *even an index*.

**A.     EPA Document Dumps Have Been Rejected in Other NSR Cases.**

EPA's argument that its productions comply with Rule 34(b) cannot be squared with the

decisions rejecting similar EPA document dumps in other NSR cases.  In *United States v. Duke*

*Energy Corp.*, No. 1:00 CV 1262 (M.D.N.C.), EPA moved for a five-month extension of the

case schedule so that it could organize and label over 300,000 pages of documents.  *Id.*, Order at

1 (Dec. 13, 2001) ("[T]he United States has been ordered to segregate relevant documents itself,

as opposed to merely doing a document dump wherein other parties have to go through the

documents.") (Ex. Q).  Like EPA's productions here, EPA's production was "not indexed,

organized, or labeled to correspond to defendant's discovery requests."  Order at 6, *United States*

*v. Duke Energy Corp.*, No. 1:00 CV 1262 (M.D.N.C. Feb. 5, 2002) (Ex. R).   The court found

that "the documents are of no practical use to defendant," and granted EPA's motion for an

extension to allow EPA "to produce documents in an ordered manner without engaging in a

'document dump.'"  *Id.* at n.1.  The court hoped that such an order would "cure any problems

with prior production … and avoid them in any future productions."  *Id.*  Likewise, in *United*

*States v. Illinois Power Co.*, No. 99-833-MJR (S.D. Ill.), the court rejected EPA's argument that

the defendant should be required to sort through documents.  The court observed that EPA "is

certainly more familiar with its documents than [the defendant is], and can more readily locate

responsive documents stored it its archives."  *Id.*, Order at 3 (Oct. 23, 2001) (Ex. S).  In response

to EPA's concern regarding the burdens that a review would impose, the court stated that the

"large number of documents" was an "inescapable characteristic of [NSR litigation], which fact

was surely known to the United States before suit was filed."  *Id.*

EPA's refusal to organize its documents is contrary to the demands it placed on Detroit

Edison in responding to EPA's discovery requests.  EPA demanded that Detroit Edison

*reproduce* documents it provided to EPA under Section 114 unless the company "specifically

10

identifies those previously produced Documents responsive to a particular Request, *e.g.*, *identify the Bates number and Document title* in Defendants' written responses to a specific Request." Ex. H at 2 (emphasis added).  EPA also stated that Detroit Edison may only identify documents "in place of a written answer … [if] the *specific sections or pages* from the document that are responsive to the Interrogatory are identified."  Pl. United States' First Set of Interrogs. to Defs. at 3 (Ex. T) (emphasis added).  EPA provides no reason for its refusal to adhere to similar requirements when responding to Detroit Edison's discovery requests.  *See, e.g., Nat'l Day Laborer Org. Network v. U. S. Immigration & Customs Enforcement Agency*, No. 10 Civ. 3488 (SAS), 2011 U.S. Dist. LEXIS 11655, at *30 (S.D.N.Y. Feb. 7, 2011) ("The Government would not tolerate such a production when it is a receiving party, and it should not be permitted to make such a production when it is a producing party.").

The government's practice of dumping documents has been harshly criticized.  In a recent case presenting "important questions concerning the Government's discovery obligations in civil litigation," Judge Scheindlin issued a clear signal to government agencies that document dumps in civil litigation were not acceptable.  *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 405 (S.D.N.Y. 2009).  A defendant challenged the SEC's production of 10.6 million pages of documents maintained on databases.  Like EPA's production here, the SEC's production was not organized and labeled to correspond to the categories in the defendant's requests.  Rather, it was a collection of documents the agency had assembled in prior SEC investigations.  *Id*. at 413.  In rejecting this document dump, the court stated that "[l]ike any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure."  *Id*. at 414.  The Government, the court observed, is "not entitled to special consideration concerning … discovery, *especially when it voluntarily initiates an action*."  *Id*. (emphasis added).  The court found that the documents

11

collected during the SEC's investigations "can only be provided in a useful manner if the agency organizes or labels them to correspond to each demand." *Id*. at 413.  The court granted the defendant's motion to compel, and ordered the SEC to comply with Rule 34(b).  *Id*. at 418.  The Court should order EPA to do the same here.

## B.     The Documents Were Not Produced as They Are Kept in the Usual Course of EPA's Business.

EPA seeks to avoid the obligation to organize its documents by arguing that the 4.6 million pages of documents were produced as they are kept in the usual course of business.  "A party choosing to produce documents as maintained in the ordinary course of business 'bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate.'"  *Collins & Aikman Corp.*, 256 F.R.D. at 409 (quoting *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008)).  To carry this burden, a party must do more than represent that the documents have been produced as they are maintained.  *Pass & Seymour*, 255 F.R.D. at 334 (finding attorney's statement that documents produced had been assembled as maintained did not satisfy burden).  Rather, the disclosing party must provide information regarding how the documents are organized in the party's ordinary course of business.  *Id*. at 335.  In addition, the disclosing party must provide information "regarding its search for the documents, including where the documents produced were maintained, whether they came from a single source or file or from multiple points of origin, the identity of the record custodians, and the manner in which they were organized."  *Id*. at 334.

EPA has not shown that its production satisfies the business records option under Rule 34(b)(2)(E)(i).  Nor could it.  The 4.5 million pages of documents produced to Detroit Edison were collected and assembled from various sources and locations during the course of prior NSR cases over the past decade.  *See, e.g.*, Ex. E at 2 ("[T]he United States will provide documents

from all ten EPA regions to the extent that such documents have been previously produced in other New Source Review cases against coal-fired utilities.").  Likewise, at least some of the 140,000 additional pages of documents were collected and assembled from the offices of Region 5 and EPA headquarters "in response to DTE's specific requests."  Ex. P at 3.  These documents were thus not produced as they are kept be in the usual course of EPA's business.  They were "accumulated during a specific, non-routine occurrence, and by their very nature are not business records under Rule 34(b)(2)(E)(i)."  *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698 (S.D. Fla. 2010) (documents collected in prior litigations were not produced as they were kept in the normal course of business); *see also Collins & Aikman Corp.*, 256 F.R.D. at 412-13 (production of records obtained during prior SEC investigations did not satisfy the business records option because they were collected during the course of investigations). [4]  To the extent EPA's lawyers at DOJ may have *stored* documents they have collected over the past decade in other NSR cases, such documents "are no longer kept in the 'usual course of business,' they are kept in the usual course of '*storage*,' and the option granted by the first clause of Rule 34(b) no longer exists."  *In re Sulfuric Acid*, 231 F.R.D. at 363

---

[4] Following the parties' unsuccessful April 4 meet and confer, counsel for EPA sent an email to counsel for Detroit Edison stating that they would "provide further information that demonstrates that we are producing documents in the normal course of business as required by Rule 34(b)(2)(e)(i).  Accordingly, as soon as we can, we will provide custodian information for the documents that we have produced to you other than the documents produced to you on the hard drive.  For the documents on the hard drive, we will produce a description of the location of document according to the bates number of the documents.  The location will be the office or region where the documents originated."  Email from Kristin Furrie (DOJ) to Brent Rosser, et al. (H&W) (Apr. 6, 2011) (Ex. U).  As shown, however, explaining where documents may have originated before being culled out and selected for production in this and *other* litigation does not constitute producing documents "as they kept are in the usual course of business."  While Detroit Edison appreciates the offer for additional information at some unspecified future time, the information will not cure the underlying failure to comply with the Federal Rules and will unduly delay a resolution of the issue.  Because of the time sensitivities in this case, Detroit Edison is filing this motion promptly and seeking expedited treatment to avoid further delay.

(internal citations omitted).  That leaves EPA "with the obligation to 'organize and label' the documents to correspond to the document requests."  *Id.*[5]

Even if the documents could be construed as being produced as they are "kept in the usual course of business," EPA's production fails to comply with Rule 34(b)(2)(E)(i).  A party "may not excuse itself from compliance with Rule 34 … by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition."  *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976).  As noted, there is no way for Detroit Edison to know—among other things—where the documents originated, who possessed them, or whether EPA's production is even complete.  To find the documents and information responsive to its requests, Detroit Edison would thus have to examine and sort through each folder.[6]  This is a task that Federal Rule 34(b) assigns to EPA, not Detroit Edison.

---

[5] Unlike the documents lawyers for DOJ have collected and assembled during previous NSR cases, government records like those "reflecting purchases and sales, employee performance and salaries" are presumably "created and maintained in an efficient manner such that production as they are kept in the ordinary course of business would allow for easy analysis of—for example—a contract, False Claims Act, or a Title VII claim."  *Collins & Aikman Corp.*, 256 F.R.D. at 413 (rejecting SEC's argument that documents collected during prior SEC investigations were produced as they were kept in the normal course of business).

[6] EPA suggests that its failure to organize and label the documents should be excused because of the text searchable feature of its production.  Not so.  EPA's argument, if accepted, would obviate the requirements regarding the form and manner of production under Rule 34(b).  Moreover, similar arguments have been rejected by several courts.  *See, e.g.*, *Collins & Aikman Corp.*, 256 F.R.D. at 411 ("[The defendant] could search the document databases using appropriate search terms, but the inaccuracy of such searches is by now relatively well known."); *Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1109 (D. Neb. 2009) ("[T]he fact that the documents can be electronically searched by key term is not sufficient to discharge defendant's duty to sufficiently identify the location of the relevant documents."); *Pass & Seymour*, 255 F.R.D. at 337 (granting motion to compel in part where "[p]laintiff's initial production, while capable of being converted into text searchable format, contained no organizational information regarding the documents produced"); *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-01318-BES-GWF, 2006 WL 1582122, at *1-2 (D. Nev. June 5, 2006) (finding

## II.      EPA HAS FAILED TO COMPLY WITH FEDERAL RULE 33(d).

In addition to the problems with EPA's productions, several of its responses to Detroit Edison's interrogatories cite Rule 33(d) but fail to specify the records in sufficient detail for Detroit Edison to locate and identify the information sought, as required by the rule.  *See, e.g.*, Ex. H at 34, 36, 37, 39, 40, 41, 42, 43, and 46.  For example, in response to Detroit Edison's request that EPA identify "inspection reports and records of inspections for any Detroit Edison coal-fired power plant since 1970," EPA responded in part as follows:

> As in prior cases, the United States is producing all inspection reports prepared for Clean Air Act related inspections of coal-fired electric generating units prior to January 1, 1997.  Pursuant to Rule 33(d), Plaintiff references that production in response to this Interrogatory.

*Id*. at 40.  EPA does not identify what "that production" means.  Nor does it indicate whether those inspection reports have even been produced and, if so, when.  Likewise, in response to other interrogatories, EPA states that responsive documents "have been or will be produced to Fed. R. Civ. P. 33(d)" without providing any additional information.  *Id.* at 34, 36-37, 39, 41-43, 46.  Vague references to a mass of documents do not comply with Federal Rule 33(d).  *See, e.g., See Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, No. 08-CV-12393, 2009 WL 2022308, at * 4 (E.D. Mich. July 8, 2009) ("[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery.").  Federal Rule 33(d) "requires substantially more than making available a documents repository."  *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 326 (N.D. Ill. 2005).  To the extent EPA has provided or will provide documents to Detroit Edison pursuant to Federal Rule 33(d), the Court should order EPA to identify those documents by Bates number.

---

that forty-one boxes of documents with no index or table of contents, although text searchable, did not comply with plaintiff's obligation under Rule 34).

## III.    EPA'S UNILATERAL REFUSAL TO SEARCH FOR RELEVANT AND RESPONSIVE DOCUMENTS IS WITHOUT MERIT.

Finally, EPA's unilateral decision to search for relevant documents from only one of its ten EPA regional offices is without merit.  Indeed, EPA made this unilateral decision despite a holding in another NSR case that a defendant was "entitled to production of responsive documents from all ten Regions of EPA, insofar as these offices are involved in the enforcement of the Clean Air Act."  Order at 4, *United States v. Illinois Power Co.*, No. 99-833-MJR (S.D. Ill. Jan. 10, 2001) (Ex. V).  Detroit Edison is entitled to that same production here, and EPA has cited no case to the contrary.  Moreover, having already produced documents from all EPA regions through 2004, EPA should be required to update that production and produce documents from those same regions from 2005 to the present.  This is particularly true when documents from the past six years are just as relevant in this case—if not *more* relevant—than the pre-2005 documents EPA has already produced.

Because the NSR program is a nationwide program, the nine other regions do not have any greater or lesser responsibility over that program than Region 5.  EPA has not—because it cannot—offered any basis for suggesting that the regulatory standards differ with geography.  In addition, because EPA's enforcement efforts and interpretations have been highly inconsistent, *see, e.g.*, Doc. No. 15 at 8-12, Doc. No. 46 at 10-16, Detroit Edison is entitled to documents from other regions to support its view that EPA's interpretations in this case are nothing more than impermissible litigation positions.  The views of EPA personnel in the various regional offices are "highly relevant" to this defense.  *Ohio Dep't of Human Servs. v. U. S. Dep't of Health & Human Servs.*, 862 F.2d 1228, 1235 (6th Cir. 1988) (expression of opinion by agency personnel considered "highly relevant and material" to the agency's general understanding of regulatory

16

provisions).  The Court should thus require EPA to update its search and produce documents covering the period from 2005 to the present from all ten regional EPA offices.

## CONCLUSION

For these reasons, the Court should grant Detroit Edison's motion to compel and require that EPA: (1) make a good faith effort to organize or label the documents it has produced, and will produce, to correspond to the categories in Detroit Edison's document requests; (2) specify by Bates number the documents containing the information sought to the extent EPA has relied, and will rely, on Federal Rule 33(d); and (3) search for and produce responsive documents covering the period from 2005 to the present from all ten regional EPA offices.

Respectfully submitted, this 8th day of April 2011.

**HUNTON & WILLIAMS LLP**

/s/ Brent A. Rosser

Matthew J. Lund (P48632)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, Michigan 48243
lundm@pepperlaw.com
(313) 393-7370

Michael J. Solo (P57092)
Office of the General Counsel
DTE Energy
One Energy Plaza
Detroit, Michigan
solom@dteenergy.com
(313) 235-9512

F. William Brownell
bbrownell@hunton.com
Mark B. Bierbower
mbierbower@hunton.com
Makram B. Jaber
mjaber@hunton.com
Brent A. Rosser
brosser@hunton.com
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
(202) 955-1500

*Counsel for Defendants*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2011, the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH RULES 33 AND 34 OF THE FEDERAL RULES OF CIVIL PROCEDURE** was served electronically only on the following attorneys of record in accordance with an agreement reached among the parties:

> Ellen E. Christensen
> U.S. Attorney's Office
> 211 W. Fort Street
> Suite 2001
> Detroit, MI  48226
> 313-226-9100
> Email:  ellen.christensen@usdoj.gov
>
> James A. Lofton
> Thomas Benson
> Justin A. Savage
> Kristin M. Furrie
> U.S. Department of Justice
> Environmental and Natural Resource Div.
> Ben Franklin Station
> P.O. Box 7611
> Washington, DC  20044
> 202-514-5261
> Email:  thomas.benson@usdoj.gov
>         justin.savage@usdoj.gov
>         kristin.furrie@usdoj.gov
>         jim.lofton@usdoj.gov
>
> Holly Bressett
> Sierra Club Environmental Law Program
> 85 Second St., 2nd Floor
> San Francisco, CA  94105
> Phone: (415) 977-5646
> Email:  Holly.Bressett@sierraclub.org
>
> Andrea S. Issod
> Sierra Club
> 85 2nd Street, 2nd Floor
> San Francisco, CA  94105
> 415-977-5544
> Email:  andrea.issod@sierraclub.org

/s/ Brent A. Rosser

18