# EXHIBIT 13
# TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ESTABLISH CORRECT LEGAL STANDARD ON THE ISSUE OF "ROUTINE MAINTENANCE, REPAIR AND REPLACEMENT" ("RMRR")

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AVENAL POWER CENTER, LLC )
)
      Plaintiff, )
)
      v. ) Case No.: 1:10-cv-00383-RJL
) (Hon. Richard J. Leon)
U.S. ENVIRONMENTAL PROTECTION )
AGENCY and LISA P. JACKSON, in her )
capacity as Administrator of the )
U.S. Environmental Protection Agency )
)
      Defendants. )
_____)

## DECLARATION OF REGINA MCCARTHY

      I, Regina McCarthy, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge, information and belief, and is based on my own personal knowledge or on information contained in the records of the United States Environmental Protection Agency (EPA) or supplied to me by EPA employees.

      1.    I am the Assistant Administrator of the Office of Air and Radiation in EPA, a position I have held since June 2009. The Office of Air and Radiation (OAR) is the EPA office that develops national programs, technical policies, and regulations for controlling air pollution. OAR's assignments include the protection of public health and welfare, pollution prevention and energy efficiency, air quality, industrial air pollution, pollution from vehicles and engines, acid rain, stratospheric ozone depletion, and climate change.

      2.    OAR is responsible for development of National Ambient Air Quality Standards and the development and implementation of regulations, policy, and guidance associated with the Prevention of Significant Deterioration (PSD) permitting program.

      3.    Prior to joining EPA, I served as the Commissioner of the Connecticut Department of Environmental Protection. I have worked at both the state and local levels on critical environmental issues, and helped coordinate policies on economic growth, energy, transportation and the environment. I have a B.A. in Social Anthropology from the University of Massachusetts at Boston and a joint M.S. in Environmental Health Engineering and Planning and Policy from Tufts University.

      4.    On February 9, 2010, EPA issued a National Ambient Air Quality Standard (NAAQS) for hourly concentrations of nitrogen oxides ("hourly NO2 standard").

5. In a prior declaration, I testified that applicants seeking PSD permits to construct stationary sources of air pollution have experienced unforeseen challenges with the preparation and review of information to predict the impact of proposed sources on hourly NO2 concentrations. This gave rise to an EPA policy review that has now proceeded to the point that the agency can more specifically explain how it intends to move forward with action on the PSD permit application submitted by Avenal Power Center ("Avenal"). See paragraphs 5-8, Declaration of Regina McCarthy (January 7, 2011).

6. As part of this policy review, EPA has determined that it is appropriate, under certain narrow circumstances, to grandfather certain PSD applications from the requirement to demonstrate that the proposed facility will not cause or contribute to a violation of the hourly NO2 standard. In addition, EPA believes the factors that justify such an approach for the hourly NO2 standard also provide a basis not to subject these same permit applications to additional permitting requirements that have taken effect during the period of time these permit applications have been pending and permit applicants have been seeking to compile the additional information necessary to demonstrate that the source will not cause or contribute to a violation of the hourly NO2 standard. The PSD permit application submitted by Avenal in 2008 is among those PSD permit applications that EPA believes it is appropriate to grandfather from these additional requirements, particularly in light of EPA's statutory obligation to grant or deny a complete PSD permit application within one year and other circumstances present in this case. EPA will propose to extend similar relief to other permit applicants that can show they are similarly situated. This determination represents a change in the position EPA has taken in this matter and in previous interpretive statements issued by EPA, including statements cited by EPA to support its Cross Motion for Summary Judgment in this litigation.

7. Because this change in position requires that EPA modify or narrow previous interpretations of EPA regulations and the position EPA has taken in public statements to this court regarding this permit, the Agency reads applicable regulations and case law to require that the EPA provide the public with an opportunity to comment on this proposed action before the Agency can issue a final decision on the pending permit application that exempts Avenal from these additional requirements.

8. EPA intends to issue a supplemental public notice that will request comment on EPA's proposal to approve Avenal's application without requiring a demonstration that this source will not cause a violation of the hourly NO2 standard. In addition, this notice will also request comment on EPA's proposal not to require this source to meet emissions limitations for greenhouse gases or to demonstrate that the proposed source will not cause or contribute to a violation of the National Ambient Air Quality Standards for hourly concentrations of sulfur dioxide which became effective on August 23, 2010. The notice will also inform interested persons of the opportunity to provide comments on these subjects at a public hearing.

9. As a result of a recent ruling by the EPA Environmental Appeals Board, EPA has also determined that it is necessary to supplement its analysis of whether minority and low income communities may be disproportionately affected by emissions of NO2 from the Avenal facility. *See, In re: Shell Gulf of Mexico, Inc. and Shell Offshore, Inc.*, OCS Appeal Nos. 10-1 to 10-4, Slip. Op. at 63-81 (EAB December 30, 2010). A copy of this decision may be obtained at

<http://yosemite.epa.gov/oa/EAB_Web_Docket.nsf/OCS+Permit+Appeals+(CAA)?OpenView>.

10. EPA is in the process of drafting a supplemental statement of basis to explain its justification for exempting Avenal from these additional requirements described above and to provide a supplemental analysis concerning disproportionate impacts to minority and low income communities. EPA requires an additional 3 weeks to complete this document.

11. Once the document described in paragraph 10 is completed, EPA requires an additional 3 weeks to complete and arrange for publication and direct mail distribution of the public notice. This time is necessary to translate the public notice into Spanish, book the public hearing venue and court reporter to transcribe the hearing, provide advanced copies of the public notice to newspapers for publication, and complete the procurement processes for such services. From the date this notice is published and distributed, EPA will require approximately 5 weeks to complete the public comment and hearing process, in order to allow the 33 days for public comment required by 40 CFR 124.10(b) and 124.20(d) and several additional days for completion of the public hearing. EPA is required to hold a public hearing if requested by any interested person, to provide 33 days notice of such a hearing, and to keep the public comment period open until the hearing concludes. 40 CFR 124.12; 40 CFR 124.10(b)(2); 124.20(d). EPA anticipates based on prior public comments on this permit that a public hearing will be requested. Thus, to expedite the public comment process as much as possible, EPA will provide public notice of the hearing at the same time as public notice of the supplemental statement of basis. In light of the scope of the issues addressed in the supplemental statement of basis, public interest in such matters, and volume of public comments EPA expects to receive, once the comment period ends, EPA will require an additional 6 weeks to consider public comments, prepare responses thereto, and issue a final permit decision in accordance with 40 CFR 124.15.

12. A least four EPA career staff persons and several additional supervisors already familiar with the subject matter are assigned to prepare and review these actions by EPA. The career staff preparing initial drafts of the necessary documents include an Environmental Engineer and Air Permits Manager in EPA's Region 9 office and staff attorneys from both the Region 9 Office of Regional Counsel and the Office of General Counsel at headquarters. At least 5 additional staff and supervisors in Region 9, the headquarters Office of Air and Radiation, and the Office of General Counsel will need to review and approve these actions. The timetable described above cannot be expedited by reassigning additional EPA staff because the time required for such persons to obtain the necessary familiarity with the technical and factual background on this permit application and the issues it presents (and already-assigned staff to train such persons) would offset any benefit from having more manpower involved.

13. After consideration of public comments the Agency may receive in response to this public notice, EPA will be able to complete final action on this permit application by May 27, 2011, as I have previously testified.

Executed this 31st day of January, 2011.

*[signature]*

Regina McCarthy

Assistant Administrator
Office of Air and Radiation
United States EPA