UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>and<br><br>NATURAL RESOURCES DEFENSE COUNCIL, INC. AND SIERRA CLUB,<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>DTE ENERGY COMPANY AND DETROIT EDISON COMPANY,<br><br>    Defendants. | Civil Action No.<br>2:10-cv-13101-BAF-RSW<br><br>Judge Bernard A. Friedman<br><br>Magistrate Judge R. Steven Whalen |

DEFENDANTS' REPLY IN RESPONSE TO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO ESTABLISH
CORRECT LEGAL STANDARD ON THE ISSUE OF "ROUTINE
MAINTENANCE, REPAIR AND REPLACEMENT" ("RMRR")

The Government's opposition rehashes arguments made in this and other New Source Review ("NSR") enforcement actions, arguments that have been thoroughly refuted by Detroit Edison's RMRR motion (Doc. No. 116), Detroit Edison's opposition to Plaintiff's motion for partial summary judgment (Doc. No. 127), and the decisions of five district courts. Those courts reviewed the Clean Air Act ("CAA"), the NSR rules, and EPA guidance and conduct for at least two decades.  The Government asks the Court to ignore that authority and instead adopt a "*de minimis*" RMRR standard primarily based on two inapplicable and non-binding D.C. Circuit decisions—one that does not even address RMRR, and another that did not address the rules before *this* Court and that the Government elsewhere characterized as "stand[ing] in flagrant opposition to *Chevron*" and "egregiously" wrong.  Doc. No. 127 at 5.  The Government's claim cannot be squared with the rules and decades of EPA statements and conduct confirming otherwise.  Nor can it be squared with EPA's official *Federal Register* statement that it "did *not* consider the terms 'modification' or 'change' to cover everything other than *de minimis* activities."  68 Fed. Reg. 61,248, 61,272 (Oct. 27, 2003) (emphasis added).  Detroit Edison's approach is consistent with the majority view on RMRR, and with EPA's view until the Government radically changed it for litigation purposes.  Detroit Edison's RMRR Motion should be granted.

## ARGUMENT

I.  **DETROIT EDISON'S APPROACH TO RMRR DOES NOT CREATE A FALSE DICHOTOMY; RATHER, IT COMPORTS WITH THE MAJORITY VIEW.**

The Government first claims that Detroit Edison's position creates a "false dichotomy" between an RMRR standard that looks solely at industry practice and one that looks solely at a particular unit.  Doc. No. 126 at 2-3.  The Government either ignores or misunderstands Detroit Edison's position, which is consistent with the majority view.  Doc. No. 116 at 1, 7-16 (discussing cases and RMRR standard).  The Government then attempts to distort that view by asserting that RMRR must be assessed by looking at the experience of other "*individual* units throughout

1

the relevant industry" as opposed to projects throughout the industry. Doc. No. 126 at 6-9 (emphasis in original). This is wrong too. The majority view *requires* consideration of, among other things, *all* five factors as they relate to projects performed across the utility industry *as a whole*. *See, e.g., U.S. v. Duke Energy Corp.*, No. 1:00CV1262, 2010 WL 3023517, at *7 (M.D.N.C. July 28, 2010) ("[T]he Court will consider *all* of the WEPCO factors, including frequency, taking into consideration the work conducted at the particular unit, *the work conducted by others in the industry*, and the work conducted at other individual units within the industry.") (emphasis added). This standard is based largely on EPA's statement that the RMRR inquiry "*must*" be based (*i.e.*, one has *no* discretion in this regard) on experience at "sources" (*not* individual unit or even an individual source) across the relevant "industrial category."[1] The Government's attempt to diminish the significance of this statement should be rejected. *See, e.g., Duke Energy I*, 278 F. Supp. 2d at 632 n.12 (Government's current position on *Federal Register* notice "nonsensical"); *Pa. Dep't of Envtl. Prot. v. Allegheny Energy, Inc.*, No. 05-885, 2008 WL 4960100, at *4-5 (W.D. Pa. Sept. 2, 2008) (*Federal Register* statement "comport[s]" with "EPA's original interpretation of RMRR," not its "narrowed … interpretation" introduced in "subsequent litigation").

II. **NEITHER DECISION FROM THE D.C. CIRCUIT SUPPORTS THE GOVERNMENT'S LITIGATION POSITION.**

The Government again focuses on two D.C. Circuit decisions to support its litigation position. Doc. No. 126 at 1-2, 10, 13. But *Ala. Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979), does not discuss the RMRR provision, much less define the types of projects that should

---

[1] The Government's car analogy proves nothing except to illustrate how its new "individual unit" interpretation of RMRR differs from its original interpretation (Doc. No. 126 at 6-7); in particular, if the question is framed as whether a transmission replacement is "routine" across the automotive repair industry (and, specifically, those that specialize in transmission replacements), the answer is obviously yes. The Government's criticisms of Detroit Edison's purported reliance on "industry-wide tallies" regarding other similar replacements throughout the industry—while invalid—are premature. *Id*. at 5-9. Such criticisms have no bearing on the proper *legal standard* for the RMRR analysis but apply to the weight of the evidence used in *applying* that standard.

qualify as RMRR.  As EPA has noted elsewhere, *Alabama Power* "did not have before it the issue of what is a 'change' and did not decide this issue."  68 Fed. Reg. at 61,273.  Likewise, *New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2006) ("*New York II*"), did not address the rules applicable here but only a revised provision that would have excluded projects costing up to 20% of the replacement cost of an entirely new unit.  Though the court vacated the revised provision, it neither endorsed nor adopted the Government's enforcement interpretation it asserts here, *id*. at 888 (we "express no opinion regarding EPA's application of the *de minimis* exception"), a *changed* interpretation EPA could only establish, if at all, "'as [EPA] would formally modify the regulation itself:  through the process of notice and comment rulemaking.'"  *Duke Energy*, 278 F. Supp. 2d at 637 (quoting *Paralyzed Veterans of Am. v. D.C. Arena*, 326 U.S. App. D.C. 25, 117 F.3d 579, 586 (D.C. Cir. 1997)); *see also U.S. v. Ala. Power Co.*, No. 2:01cv00152-VEH, 2008 WL 7351189, *10 (N.D. Ala. Aug. 14, 2006) ("The United States says that *New York I* and *New York II* … reject the 'common in the industry' test.  *New York I* and *II* don't say that.").

To the extent *New York II* contains *dicta* regarding the court's mistaken understanding of how EPA applied the RMRR provision in the current rules (which were *not* under review in that case), EPA corrected it.  EPA's Pet. for Reh'g or Reh'g *En Banc*, *New York  v. U.S. EPA*, No. 03-1380, 2006 WL 1547034 (D.C. Cir. May 1, 2006) ("[T]he Panel's statement that the RMRR exclusion is limited to *de minimis* changes … is in error.").  Consistent with that view, EPA has confirmed outside the litigation context "most replacements of existing equipment that are necessary for the safe, efficient, and reliable operation of practically all industrial operations"— replacements like those at issue here—"*are not of regulatory concern and should qualify for the RMRR exclusion.*"  67 Fed. Reg. 80,290, 80,300 (Dec. 31, 2002) (emphasis added).  In an NSR case filed in 2000, the Government last week voluntarily dismissed with prejudice 16 claims related to the *same types of projects at issue in this case*, including replacements of economizer,

3

reheater, and waterwall tubes. *Compare U.S. v. Duke Energy,* No. 1:00CV1262 (M.D.N.C.), Stipulation of Dismissal (filed Aug. 5, 2011) (attached as Ex. 1) *with* Compl. (filed Dec. 22, 2000) (attached as Ex. 2). Like here, the Government initially alleged in that case such projects were non-routine. As the court recently found in *Nat'l Parks Conservation Ass'n, Inc. v. TVA*, No. 3:01-CV-71, 2010 WL 1291335 (E.D. Tenn. Mar. 31, 2010), those types of projects are routine. *Id*. at *27-34 (finding economizer and reheater replacements RMRR).

### III.   EPA RADICALLY CHANGED ITS INTERPRETATION OF RMRR.

The Government points to the Seventh Circuit's decision in *WEPCo* and various determinations in support of its view that EPA has always limited the RMRR provision to "*de minimis*" activities. Doc. No. 126 at 2 (claiming that "*de minimis*" standard is "exactly how EPA has interpreted [RMRR] for decades"). Detroit Edison has explained why these materials fail to support the Government's argument. *See* Doc. No. 116 at 4-9; Doc. No. 127 at 4-9. The Court should decline the Government's invitation to reject the very approach EPA took in 1988, defended before the Seventh Circuit in 1990, and confirmed as the standard in the *Federal Register* in 1992. *Id*.; *see also Sierra Club v. TVA*, No. 02-cv-2279-VEH, slip op. at 9 (N.D. Ala. July 5, 2006) ("I do not see how anyone can say with a straight face that EPA's 1999 interpretation of RMRR and emissions … was the same as [the] published SIP regulations.") (attached as Ex. 3).[2]

Moreover, while the Government continues to rely on inapplicable "applicability determinations," it continues to ignore other EPA statements that *further* contradict its position. *Compare, e.g.*, Doc. No. 126 at 2-4 *with* Doc. No. 127 at 5-11. EPA acknowledged in 2004 that Michigan followed the "routine in the industry" standard, claiming that was "not consistent with [its] policy" as "*recently expressed in utility enforcement actions*." Doc. No. 58-5 at 18 (empha-

---

[2] The Government's reliance on a 1989 letter sent by a lawyer to EPA is flawed. In addition to being irrelevant and double hearsay, the letter predates EPA's response to the 1990 GAO report and its 1992 clarification of the RMRR standard in the *Federal Register*, which put to rest any concerns about EPA's approach to RMRR following the WEPCo determination.

4

sis added and parentheses omitted). EPA then asked Michigan to adopt its litigation position and "*discontinue* consideration of the frequency with which other sources in an industry perform similar maintenance, repair or replacement projects." *Id.* at 20 (emphasis added). There is no indication *Michigan* ever did; rather, the facts suggest just the opposite. *U.S. v. Ala. Power Co.*, 681 F. Supp. 2d 1292, 1309 (N.D. 2008) (lack of NSR "enforcement … speaks for itself"). The Government's claim that Detroit Edison's approach would improperly expand RMRR to cover activities "that cannot fairly be considered *de minimis*" is disingenuous. Doc. No. 126 at 1-2. As one court stated it in rejecting a similar argument:

> The United States also says that the [court's] RMRR test is unbounded and will carve out large exemptions from NSR as a threshold matter. The assertion is a bit of a straw man; I didn't write the RMRR rules, nor did I promulgate regulations or guidance saying "routine" was to be judged by whether the parts or equipment has been repaired within the relevant industrial category.

*Alabama Power*, 2008 WL 7351189, at *10 (N.D. Ala. Aug. 14, 2006). The Government finally argues that the Court should disregard many of EPA's own statements. It states they are not the "stuff … upon which a coherent permitting regime" can operate but mere "obfuscation." Doc. No. 126 at 17. But this is *precisely* the "stuff" courts rely upon in rejecting the Government's litigation position: "[EPA] could not tell Congress it envisioned very few *future WEPCO*-type enforcement actions on the one hand, and then argue in subsequent enforcement actions that the utility industry was unreasonable in relying on those, or similar, EPA statements." *Alabama Power*, 681 F. Supp. 2d at 1310; *see also Duke Energy I*, 278 F. Supp. 2d at 636 n.13.

## CONCLUSION

Detroit Edison's RMRR Motion should be granted.

Respectfully submitted, this 10th day of August 2011.

> By: /s/ F. William Brownell
> F. William Brownell (bbrownell@hunton.com)
> Hunton & Williams LLP | 2200 Pennsylvania Ave., N.W.
> Washington, D.C. 20037-1701 | (202) 955-1500

5

Matthew J. Lund (P48632)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, Michigan 48243
lundm@pepperlaw.com
(313) 393-7370

Michael J. Solo (P57092)
Office of the General Counsel
DTE Energy, One Energy Plaza
Detroit, Michigan
solom@dteenergy.com
(313) 235-9512

F. William Brownell
Mark B. Bierbower
Makram B. Jaber
Hunton & Williams LLP
2200 Pennsylvania Ave., N.W.
Washington, D.C. 20037-1701
bbrownell@hunton.com
mbierbower@hunton.com
mjaber@hunton.com
(202) 955-1500

Brent A. Rosser
Hunton & Williams LLP
Bank of America Plaza, Suite 3500
101 South Tryon Street
Charlotte, North Carolina 28280
brosser@hunton.com
(704) 378-4700

Harry M. Johnson, III
George P. Sibley, III
Hunton & Williams LLP
951 E. Byrd Street
Richmond, Virginia 23219
pjohnson@hunton.com
gsibley@hunton.com
(804) 788-8200

*Counsel for Defendants*

6

## CERTIFICATE OF SERVICE

    I hereby certify that on August 10, 2011, the foregoing **DEFENDANTS' REPLY IN RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO ESTABLISH CORRECT LEGAL STANDARD ON THE ISSUE OF "ROUTINE MAINTENANCE, REPAIR AND REPLACEMENT" ("RMRR")** was served electronically only on the following attorneys of record in accordance with an agreement reached among the parties:

    Ellen E. Christensen
    U.S. Attorney's Office
    211 W. Fort Street
    Suite 2001
    Detroit, MI  48226
    313-226-9100
    Email:  ellen.christensen@usdoj.gov

    James A. Lofton
    Thomas Benson
    Justin A. Savage
    Kristin M. Furrie
    James Beers, Jr.
    Elias Quinn
    U.S. Department of Justice
    Environmental and Natural Resource Div.
    Ben Franklin Station
    P.O. Box 7611
    Washington, DC  20044
    202-514-5261
    Email:  thomas.benson@usdoj.gov
          justin.savage@usdoj.gov
          kristin.furrie@usdoj.gov
          jim.lofton@usdoj.gov
          james.beers@usdoj.gov
          elias.quinn@usdoj.gov

    Holly Bressett
    Sierra Club Environmental Law Program
    85 Second St., 2nd Floor
    San Francisco, CA  94105
    Phone: (415) 977-5646
    Email:  Holly.Bressett@sierraclub.org

                          /s/ F. William Brownell