UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> and <br><br> NATURAL RESOURCES DEFENSE COUNCIL, INC. AND SIERRA CLUB, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> DTE ENERGY COMPANY AND DETROIT EDISON COMPANY, <br><br> Defendants. | Civil Action No. <br> 2:10-cv-13101-BAF-RSW <br><br> Judge Bernard A. Friedman <br><br> Magistrate Judge R. Steven Whalen |

## DTE'S REPORT IN ADVANCE OF STATUS CONFERENCE

Defendants DTE Energy Company and Detroit Edison Company (now called DTE Electric Company) (collectively, "DTE") respectfully submit this report in advance of the status conference, set for June 20, 2013, following the Court's May 28, 2013 order granting the Government's Motion for a Status Conference and Stay of Summary Judgment Briefing. For the reasons set forth below, DTE respectfully suggests that the Court should address DTE's motion for summary judgment now, and at the status conference set a briefing schedule for that motion consistent with the Court's Local Rules governing dispositive motions. *See* Local Rule 7.1(e)(1).

1.  The Government filed its Complaint on August 5, 2010, alleging that three projects at Monroe Unit 2 were "major modifications" under the 2002 New Source Review ("NSR") Rules. Doc. No. 1. After the Court denied the Government's motion for preliminary injunction (Doc. No. 78), the parties engaged in extensive and costly discovery related to those

projects. During this time, the parties combined to serve over 80 document requests and 60 interrogatories, which resulted in the production of more than 4.6 million pages of documents by the Government and more than 400,000 pages of documents by DTE.

2. After nearly eight months of discovery related to the projects at Monroe Unit 2, DTE moved for summary judgment (Doc. No. 107), which the Court granted on August 23, 2011. Doc. Nos. 160, 161. On March 28, 2013, a divided panel of the Sixth Circuit found that "the district court's premises [were] largely correct," but nonetheless reversed and remanded "for further proceedings consistent with th[e] opinion" of the court. *United States v. DTE Energy Co.*, 711 F.3d 643, 649, 652 (6th Cir. 2013). The Sixth Circuit focused the remand on the narrow issue of whether DTE complied, "at a basic level," with the "specific instructions" of the projection regulations before it undertook the work at Monroe Unit 2. *Id*. at 649.

3. Throughout its opinion, and despite the Government's claims to the contrary, the Sixth Circuit held that the Government cannot "second-guess" a source's pre-construction projection to establish liability under the 2002 NSR rules. *See, e.g., id.* at 644 (holding "the regulations allow operators to undertake projects without having EPA second-guess their projections"). As the Government has repeatedly made clear, such "second-guessing" serves as the sole basis for its claims in this case that DTE constructed "major modifications" at Monroe Unit 2. *See, e.g.*, Pls.' Opp'n to Defs.' Mot. for Summ. J. at 10 (Doc. No. 114) ("If emissions *should have* been expected to increase as a result of the project, NSR is triggered.") (emphasis added).

4. Two days after the Sixth Circuit's mandate issued, DTE filed a motion for leave to file a summary judgment motion based upon undisputed facts showing that DTE complied with the "specific instructions" of the projection regulations. Doc. No. 166. DTE also made

2

clear that emissions from Monroe Unit 2 have not increased since the projects at issue, but in fact have decreased and will decrease further next year when the extensive air pollution control retrofit program at the Monroe Station is completed. *Id*. at 18-19; Doc. No. 166-5 (Supplemental Declaration of Skiles W. Boyd).

     5.     Rather than address this dispositive issue now and adhere to the Sixth Circuit's mandate to conduct "further proceedings consistent with" its opinion, the Government indicates it may seek to delay resolution and greatly expand the case beyond the claims related to Monroe Unit 2. In particular, the Government asserts that it "is now considering amending its complaint to add claims of . . . [Clean Air Act] violations at several other of DTE's facilities." Gov't Mot. for Status Conference & Stay of Summ. J. Briefing ("Gov't Mot.") at 2 (Doc. No. 168). DTE anticipates that the Government may seek to expand this case involving just three projects at one unit during one outage into a case involving multiple projects at *as many as 18 units during more than 35 outages.*[1] However, during the discovery phase of this case—which ended long ago— the parties made no effort to identify or collect documents or information related to these claims. Rather, the Government wanted the case "to focus on Monroe 2," and said that any "additional claims…would go forward on a separate track" due to the alleged "uniquely flagrant nature of the NSR violation[s]" at Monroe Unit 2. Hr'g Tr. on Mot. For Prelim. Inj. at 142 (excerpts attached as Exhibit A); Pl.'s Mot. for Prelim. Inj. at 13 (Doc. No. 8).

---

[1] These claims are likely based upon two Notices of Violation ("NOVs") that EPA issued to DTE in July 2009 and March 2013. Gov't Mot. at 1-2. These NOVs appear to list close to 100 separate projects performed during more than 35 outages at 18 units over the past 31 years. These projects are completely separate from the Monroe Unit 2 projects at issue in this case— indeed, most of them are alleged to have occurred at other power plants, so nothing in an amended complaint would aid in any way the resolution of *this* case. Conversely, a prompt resolution of this case, pursuant to the standard set forth by the Sixth Circuit, may materially aid in the resolution of other projects.

6. Of course, what has dramatically changed the case since then is the Sixth Circuit's decision, which unambiguously embraced the bulk of the Court's analysis and rejected most of the Government's arguments. *DTE Energy Co.*, 711 F.3d at 649, 652 (noting that the "district court's premises are largely correct," and that the Court's "reversal does not constitute endorsement of EPA's suggestions"). Among other things, the Sixth Circuit rejected the Government's "end-of-grandfathering" argument, which is a fundamental premise of EPA's enforcement initiative, as well as the Government's argument that post-project emissions are irrelevant to determining NSR liability. *Id*. at 651 (noting that the "statute and regulations allow sources to replace parts indefinitely without losing their grandfathered status so long as none of those changes cause an emissions increase"). Indeed, the court went further, affirming that a source can control its post-project emissions to avoid any emissions increase. *Id*. at 650-652. Though the Government "repeatedly suggest[ed] bad faith on the part" of DTE for undertaking this conduct to ensure further compliance with the major modification rules, the Sixth Circuit found it to be "entirely consistent with the statute and regulations," which are designed to "prevent *increases* in air pollution." *Id*. at 650, 651 (emphasis added) (internal quotation marks omitted).

7. The only question remaining in this case is whether DTE complied with the regulations' "specific instructions" for conducting preconstruction projections. Contrary to the Government's assertion (Gov't Mot. at 2), this issue has not been briefed by the parties—indeed, the Government *did not even claim* in its NOV or Complaint that DTE failed to comply with the projection regulations.[2] The reason behind the timing of the Government's motion to stay

---

[2] It is unclear whether the Government can even make such a claim now. *See, e.g.*, *United States v. DTE Energy Co.*, No. 10-13101, 2011 WL 3706585, *6 (E.D. Mich. Aug. 23, 2011) ("Plaintiff is barred from pursuing claims not specified in its Notice of Violation.").

briefing on DTE's motion for summary judgment thus seems unmistakable—having had most of its arguments rejected by this Court and the Sixth Circuit, the Government is resorting to "Plan B" to try to re-make its case and avoid another dispositive ruling.

8.  Contrary to its assertion, the Government did not "agree[]" to limit this case to the projects at Monroe Unit 2. Gov't Mot. at 1-2. That is precisely the case the Government pled, and the one this Court and the parties have been focused on for almost three years. Displeased with the decision of the Court and the Sixth Circuit, the Government now seeks to change gears and delay resolution of the Monroe Unit 2 claims indefinitely. Consistent with the Sixth Circuit's mandate and "secur[ing] the just, speedy, and inexpensive determination" of those claims, the Court should decline the Government's invitation. Fed. R. Civ. P. 1; *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006) ("The district court must implement both the letter and the spirit of the mandate and take into account the circumstances it embraces.") (internal quotation marks omitted). Rather, the Court should promptly grant DTE's motion for leave to file its motion for summary judgment, and at the status conference set a briefing schedule on that motion consistent with the Court's Local Rules governing dispositive motions. *See* Local Rule 7.1(e)(1).

---

Nonetheless, probably because this specific issue was not briefed in the Sixth Circuit, the Court of Appeals remanded for this Court to make this determination in the first place. Surely, however, expanding this case from three projects at one unit during one outage to projects at as many as 18 units during more than 35 outages is not what the Sixth Circuit had in mind when it narrowly remanded for "further proceedings consistent with" its opinion.

Respectfully submitted, this 13th day of June, 2013.

| | |
|---|---|
| Matthew J. Lund (P48632)<br>PEPPER HAMILTON LLP<br>100 Renaissance Center, 36th Floor<br>Detroit, Michigan 48243<br>lundm@pepperlaw.com<br>(313) 393-7370<br><br>Michael J. Solo (P57092)<br>DTE ENERGY<br>One Energy Plaza<br>Detroit, Michigan 48226<br>solom@dteenergy.com<br>(313) 235-9512 | /s/ F. William Brownell<br>F. William Brownell<br>Mark B. Bierbower<br>Makram B. Jaber<br>HUNTON & WILLIAMS LLP<br>2200 Pennsylvania Avenue, NW<br>Washington, D.C. 20037<br>bbrownell@hunton.com<br>mbierbower@hunton.com<br>mjaber@hunton.com<br>(202) 955-1500<br><br>Brent A. Rosser<br>HUNTON & WILLIAMS LLP<br>Bank of America Plaza, Suite 3500<br>101 South Tryon Street<br>Charlotte, NC 28280<br>brosser@hunton.com<br>(704) 378-4700<br><br>Harry M. Johnson, III<br>George P. Sibley, III<br>HUNTON & WILLIAMS LLP<br>951 E. Byrd Street<br>Richmond, Virginia 23219<br>pjohnson@hunton.com<br>gsibley@hunton.com<br>(804) 788-8200<br><br>*Counsel for Defendants* |

## CERTIFICATE OF SERVICE

     I hereby certify that on June 13, 2013, a true and correct copy of the foregoing **DTE'S REPORT IN ADVANCE OF STATUS CONFERENCE** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

    Ellen E. Christensen
    U.S. Attorney's Office
    211 W. Fort Street
    Suite 2001
    Detroit, MI  48226
    313-226-9100
    Email:  ellen.christensen@usdoj.gov

    James A. Lofton
    Thomas Benson
    Justin A. Savage
    Kristin M. Furrie
    James W. Beers, Jr.
    Elias L. Quinn
    U.S. Department of Justice
    Environmental and Natural Resource Div.
    Ben Franklin Station
    P.O. Box 7611
    Washington, DC  20044
    202-514-5261
    Email: thomas.benson@usdoj.gov
          justin.savage@usdoj.gov
          kristin.furrie@usdoj.gov
          james.beers@usdoj.gov
          jim.lofton@usdoj.gov
          elias.quinn@usdoj.gov

    Holly Bressett
    Sierra Club Environmental Law Program
    85 Second St., 2nd Floor
    San Francisco, CA  94105
    Phone: (415) 977-5646
    Email:  Holly.Bressett@sierraclub.org

    Nicholas J. Schroeck
    Great Lakes Environmental Law Center
    440 Burroughs St. Box 70
    Detroit, MI 48202
    Phone: (313) 820-7797
    Email: nschroeck@wayne.edu

                                /s/ F. William Brownell