IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:10-cv-13101-BAF-RSW |
| and | ) | |
| | ) | Judge Bernard A. Friedman |
| NATURAL RESOURCES DEFENSE | ) | |
| COUNCIL, and SIERRA CLUB | ) | Magistrate Judge R. Steven Whalen |
| | ) | |
| Plaintiff-Intervenors | ) | |
| v. | ) | |
| | ) | |
| DTE ENERGY COMPANY, and | ) | |
| DETROIT EDISON COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' MOTION FOR LEAVE
## TO FILE A FIRST AMENDED COMPLAINT

The United States seeks leave to file a first amended complaint ("Amended Complaint"). The Amended Complaint would add New Source Review claims related to six additional construction projects at coal-fired power plants owned and operated by Defendants. Amending the complaint at this time is the logical next step for this litigation: it will allow the Parties to litigate the full set of Clean Air Act claims against DTE, avoiding "piecemeal litigation." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973). In addition to the claims at Monroe Unit 2, the Amended Complaint would add NSR claims at five additional units: Belle River Units 1 and 2; Monroe Units 1 and 3; and Trenton Channel Unit 9.

Pursuant to Local Rule 7.1 (a)(2), counsel for the United States contacted counsel for DTE regarding this motion. Counsel for DTE reported that it could not take a position on the

- 1 -

motion until seeing the proposed amended complaint, and so would take no position before the

filing of the motion.

      The United States respectfully requests that the Court grant this motion for leave to file

an Amended Complaint so that the Parties and the Court can resolve the Clean Air Act liability

stemming from DTE's pollution-increasing construction projects.


                                        Respectfully Submitted,

                                         ROBERT G. DREHER
                                         Acting Assistant Attorney General
                                         Environment & Natural Resources Division

Dated: September 3, 2013               *s/ Thomas A. Benson*_____
                                         THOMAS A. BENSON (MA Bar # 660308)
                                         KRISTIN M. FURRIE
OF COUNSEL:                        ELIAS L. QUINN
SABRINA ARGENTIERI            Environmental Enforcement Section
MARK PALERMO                  U.S. Department of Justice
SUSAN PROUT                    P.O. Box 7611
Associate Regional Counsel       Washington, D.C. 20044-7611
U.S. EPA Region 5                 (202) 514-5261
Chicago, IL                      thomas.benson@usdoj.gov
77 W. Jackson Blvd.

APPLE CHAPMAN               BARBARA McQUADE
Associate Director              United States Attorney
Air Enforcement Division        Eastern District of Michigan
U.S. EPA
1200 Pennsylvania Ave. NW      ELLEN CHRISTENSEN
Washington D.C. 20460           Assistant United States Attorney
                                         211 W. Fort St., Suite 2001
                                         Detroit, MI 48226

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading and supporting materials were served via ECF on counsel of record.


_s/ Thomas A. Benson_
Counsel for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA                    )
                                            )
                    Plaintiff,              )        Civil Action No. 2:10-cv-13101-BAF-RSW
            and                             )
                                            )        Judge Bernard A. Friedman
NATURAL RESOURCES DEFENSE                   )
COUNCIL, and SIERRA CLUB                    )        Magistrate Judge R. Steven Whalen
                                            )
                    Plaintiff-Intervenors   )
            v.                              )
                                            )
DTE ENERGY COMPANY, and                     )
DETROIT EDISON COMPANY                      )
                                            )
                    Defendants.             )
_____        )

**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION
FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

ISSUE PRESENTED ......................................................................................... iv

LEGAL AUTHORITY FOR THE RELIEF SOUGHT ..................................................... v

BACKGROUND ................................................................................................ 2

    I. Procedural History Of The Case ................................................................. 2

    II. New Claims ......................................................................................... 3

        A. Units at Issue in the Amended Complaint ........................................... 4

        B. Claims in the Amended Complaint .................................................... 4

        C. DTE's Attempts to Obscure Its Pollution Increases .............................. 5

ARGUMENT .................................................................................................... 7

    I. Legal Standard For Amending Complaint .................................................... 7

    II. Granting Leave to Amend The Complaint Is Appropriate Here ....................... 8

        A. Amending the Complaint Now Will Result in the Most Efficient
          Resolution of the Claims between the Parties ...................................... 8

        B. None of the *Foman* Factors Support Denying Leave to
          Amend the Complaint ..................................................................... 9

            1. The Amended Complaint does not prejudice DTE ............................ 9

            2. DTE has had ample notice of the claims in the
               Amended Complaint ................................................................ 11

            3. There is no undue delay in the United States'
               Amended Complaint ................................................................ 11

            4. The Amended Complaint is not futile .......................................... 12

CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Belle v. Ross Prods. Div.*, No. 2:01-CV-677, 2003 WL 133242
    (S.D. Ohio Jan. 3, 2003)……………………………………………………...11

*Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999)……………………………...8, 11

*Estes v. Kentucky Utils. Co.*, 636 F.2d 1131 (6th Cir. 1980)…………………………………10-11

*Foman v. Davis*, 371 U.S. 178  (1962)……………………………………………………7-8

*Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973)…………………………………9

*Head v. Timken Roller Bearing Co.*, 486 F.2d 870 (6th Cir. 1973)……………………………..11

*Johnson v. Ventra Group, Inc.*, No. 96-1463, 1997 WL 468332
    (6th Cir. Aug. 13, 1997)……………………………………………………………9-10

*Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)……………………………...7, 8, 10, 11

*Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
    480 F.3d 410 (6th Cir. 2007)……………………………………………………………..9

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001
    (6th Cir. 1995)……………………………………………………………………..9

*Tefft v. Seward*, 689 F.2d 637 (6th Cir. 1982)……………………………………………7, 8

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir. 1973)………………………..1, 8

*United States v. DTE Energy*, 711 F.3d 643 (6th Cir. 2013)……………………………..2-3, 5, 12

## FEDERAL REGULATIONS AND RULES

40 C.F.R. § 52.21………………………………………………………………………6, 7

Fed. R. Civ. P. 15……………………………………………………………………….7

**ISSUE PRESENTED**

Should the United States be allowed to amend its complaint to bring additional New Source Review claims, enabling the Parties and the Court to resolve the existing set of claims all at once rather than in a piecemeal fashion?

## LEADING AUTHORITY FOR THE RELIEF SOUGHT

***Amending Complaint***

Fed. R. Civ. P. 15(a)

*Foman v. Davis*, 371 U.S. 178, 182 (1962)

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir. 1973)

***NSR Operation and Liability***

*United States v. DTE Energy*, 711 F.3d 643 (6th Cir. 2013)

40 C.F.R. § 52.21(a)

The United States seeks leave to file a first amended complaint ("Amended Complaint") to bring Clean Air Act claims at five additional units owned and operated by Defendants. Amending the complaint at this time is the logical next step for this litigation: it will allow the Parties to litigate the full set of Clean Air Act claims against DTE, avoiding "piecemeal litigation." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973).

The United States filed this action in August 2010 with New Source Review ("NSR") claims related to a recently-completed construction project at Monroe Unit 2. The United States immediately moved for a preliminary injunction to require DTE to obtain NSR permits and install the necessary pollution controls at Monroe Unit 2. In doing so, the United States made plain to DTE and the Court that it was seeking expedited relief with respect to Monroe Unit 2, and would later likely bring additional claims at other units. While DTE has challenged the United States' allegations, it also obtained NSR permits and has proceeded to construct pollution controls at Monroe Unit 2. The company has previously reported that those controls would be operational by Spring 2014. Thus, while the alleged major modification at Monroe Unit 2 remains at issue,[1] there is no longer the need for immediate action that existed when the United States filed the original complaint. It makes sense to add the new claims and resolve all alleged Clean Air Act violations together.

The Amended Complaint (included as Attachment 1) would add NSR claims at five additional units: Belle River Units 1 and 2; Monroe Units 1 and 3; and Trenton Channel Unit 9. While the details of each project are different, the United States' claims for each project are similar to the claims in the original complaint. In each case, the United States alleges that DTE should have obtained NSR permits before proceeding with major component replacement

---

[1] In addition to the pollution controls that DTE is installing, the United States will seek a penalty and mitigation of prior environmental and human health harm from any violation.

- 1 -

projects costing millions of dollars each.  In each case, the United States alleges that DTE should have anticipated that the construction projects would result in increased pollution.  Finally, for the new claims alleged in the Amended Complaint, actual pollution did increase after the project – just what DTE has previously argued should be the trigger for NSR liability.

 The United States respectfully requests that the Court grant this motion for leave to file an Amended Complaint so that the Parties and the Court can resolve the Clean Air Act liability stemming from DTE's pollution-increasing construction projects.

BACKGROUND

## I. Procedural History Of The Case

 EPA first issued a Notice of Violation to DTE in July 2009 ("July 2009 NOV").  That notice alleged NSR violations related to 35 prior construction projects.  In Spring 2010 DTE performed an additional project at Monroe Unit 2.  The United States issued a Notice of Violation for that project in June 2010, and then filed suit on that project in August 2010.  Once this case was filed, the United States immediately sought a preliminary injunction requiring DTE to begin construction of pollution controls on Monroe Unit 2.  The Court denied the motion for preliminary injunction, and proposed that the Parties conduct an expedited trial on the Monroe Unit 2 claims.  Att. 2 (Excerpts of Preliminary Injunction Transcript) at 136-137.  The Parties accepted the Court's proposal for an expedited trial, which was originally scheduled for May 2011 and later moved to September 2011.

 In August 2011, the Court dismissed the Monroe Unit 2 claim.  That dismissal was reversed on appeal, so the Monroe Unit 2 claim is back before this Court.  In remanding the case to this Court, the Sixth Circuit made clear that, "A preconstruction projection is subject to an

enforcement action by EPA to ensure that the projection is made pursuant to the requirements of the regulations." *United States v. DTE Energy*, 711 F.3d 643, 652 (6th Cir. 2013).

The Parties recently completed briefing on DTE's new motion for summary judgment, and the Court has set a status conference for October 9, 2013. There is no schedule beyond the status conference.

From the beginning of this litigation, the United States has made clear that it might later amend its complaint to add additional claims. A day after filing the original complaint, the United States' preliminary injunction brief cited the July 2009 NOV and explained that its complaint "may be amended to allege additional claims." ECF 8 at 13. The Parties then discussed the issue with the Court at the preliminary injunction hearing in January 2011. DTE counsel noted that the July 2009 NOV alleged violations from 35 other projects, and the undersigned counsel responded that for purposes of the expedited trial proposed by the Court and then planned for May 2011, the government anticipated focusing on the Monroe Unit 2 claim alone. Att. 2 at 141-142. The undersigned clarified that "the Government is still considering whether or not to bring additional claims." *Id.* at 142.

On March 3, 2013, EPA issued a new Notice of Violation ("March 2013 NOV") to DTE. That NOV provided notice of three additional construction projects violating NSR, and clarified aspects of the July 2009 NOV. The United States now seeks to amend its original complaint in this case to add claims from the July 2009 NOV and the March 2013 NOV.

## II.    New Claims

The Amended Complaint includes the original Monroe Unit 2 claim and adds six new claims at six units owned and operated by the Defendants.[2]

---

[2] References to DTE or Defendants in this brief include both DTE Energy Company and the former Detroit Edison Company, which has changed its name since the original complaint was filed to DTE Electric Company.

## A.    Units at Issue in the Amended Complaint

The Belle River Power Plant consists of two units of approximately 670 MW (gross) each that began operating in 1984 and 1985.  Belle River is located in East China, Michigan, on the shore of the Belle River and approximately 50 miles northeast of Detroit.  The Amended Complaint alleges violations at both Belle River units.

The Monroe Power Plant consists of four units of about 820 MW (gross) each that began operating in the early 1970s.  The plant is located in Monroe, Michigan, on the western shore of Lake Erie and approximately 40 miles southwest of Detroit.  The Amended Complaint alleges violations at Monroe Units 1, 2, and 3.

The Trenton Channel Power Plant has five units: four small units of about 60 MW each and one larger unit of about 540 MW (gross).  The smaller units are known as units 16-19 and began operation in 1949 and 1950.  The larger unit is known as Trenton Channel 9 and began operation in 1968.  The plant is located in Trenton, Michigan, next to Slocum's Island in the Detroit River and about 20 miles southwest of Detroit.  The Amended Complaint alleges violations at Trenton Channel Unit 9.

## B.    Claims in the Amended Complaint

The Amended Complaint adds NSR claims at six units.  While the facts are different, the underlying legal claims are similar to those alleged in the original complaint.  Under the applicable NSR rules (as described in more detail in the Amended Complaint and prior briefing) a source must obtain a permit if it should expect emissions to increase as a result of a planned construction project.  In addition, if pollution actually does increase after the project as a result of the work, the source must obtain a permit at that time.  In determining whether an NSR-triggering pollution increase is predicted or has occurred, the source must compare its prediction

and/or actual pollution to the pollution generated during a "baseline" period for the unit.  For electric generating units like those at issue here, the baseline must come from the five years immediately preceding the project.

The Amended Complaint describes the construction projects at each unit that trigger NSR liability.  The company should have expected that those projects would increase pollution.  Had DTE correctly followed the NSR regulations, it would have predicted significant pollution increases and been required to get NSR permits.  Moreover, for each new project in the Amended Complaint, actual pollution did increase, providing a second, independent basis for triggering NSR.  Notably DTE has argued throughout this case that actual pollution increases should be what triggers NSR liability.  While the United States does not believe that actual pollution increases are the *only* basis for triggering NSR, a view affirmed by the Sixth Circuit, actual increases resulting from a construction project do suffice to trigger NSR liability.  This is an important way in which the new claims differ from the original Monroe Unit 2 claims, for which there was no post-project actual pollution increase.

C.      **DTE's Attempts to Obscure Its Pollution Increases**

Despite projected and actual pollution increases, DTE did not obtain NSR permits for the projects at issue.  Instead, the company submitted misleading information to state regulators to hide the increases.  Two examples are provided below.  These are just examples; there are similar factual scenarios for the other new claims.  The examples below both relate to DTE's selection of the baseline period for projects.  Notably, the Sixth Circuit explicitly flagged selection of an improper baseline as an example of a situation where EPA enforcement would be appropriate.  *DTE Energy*, 711 F.3d at 650 ("EPA must be able to prevent construction if an operator, for example, uses an improper baseline period. . .").

*Using An Impermissible Baseline Period Before The Project*

In Fall 2007, DTE performed a major project at Belle River Unit 2 that involved replacing significant portions of the boiler. Att. 3 (September 19, 2007 Letter, W. Rugenstein to W. Presson) at 4. In notifying state regulators of the project, DTE correctly explained that the rules required a comparison of "baseline actual emissions" and "projected actual emissions." *Id*. at 1 (citing 40 C.F.R. § 52.21(a)(2(iv)(c) and (b)(48)). However, DTE failed to note that the definition of baseline emissions requires that the baseline be selected from "within the 5-year period immediately preceding when the owner or operator begins actual construction of the project." 40 C.F.R. § 52.21 (b)(48)(i).[3] Rather than use a baseline from the five-year-period required by the regulations, DTE selected a baseline from January 2000 to December 2001 – a period that began more than seven years before the project.

*Using An Impermissible Baseline Period After The Project*

In Spring 2007, DTE performed a major project at Trenton Channel Unit 9 that included replacing the economizer, one of the major components of the boiler. Att. 4 ((March 6, 2007 Letter, W. Rugenstein to L. Fiedler) at 4. In notifying State regulators of the project, DTE reported that it expected pollution to increase, but claimed that those projected increases were not related to the work. *Id*. at 2. In providing notice to the State, DTE used the calendar years 2005 and 2006 as the baseline period for its emissions calculations. *Id*. at 5. DTE proceeded with the project, and pollution actually did increase. Comparing the baseline DTE used before the project with DTE's reported emissions after the project, pollution increased by 443 tons of $SO_2$ and 138 tons of $NO_X$ per year. Att. 4 at 5; Att. 5 (February 26, 2010 Letter, K. Guertin to T. Seidel) at 2-3, 5.

---

[3] A period outside the preceding five years may only be used with the agreement of EPA or the state regulating agency. 40 C.F.R. § 52.21 (b)(48)(i).

Rather than acknowledge the increase and either (a) get an NSR permit or (b) explain to the State regulators why DTE believed no permit was required, DTE decided to hide the increase. When DTE reported its 2009 pollution totals to the State, it *changed its baseline period* to select a period with higher pollution that avoided showing an increase. Ex. 5 (2009 Trenton Channel Power Plant Emissions Report) at 2-3, 5. For its new baseline period, DTE selected separate periods for $SO_2$ and $NO_X$, but both covered time periods *after* the project. Thus instead of reporting a comparison of pollution before and after the project, DTE presented a comparison of pollution immediately after the project to pollution later in time. Such a comparison has no basis in the NSR rules, which specifically require the baseline to be within the five years *before* a project. 40 C.F.R. § 52.21(b)(48)(i). If the baseline period comes *after* the project begins, there is no longer the comparison of pre-construction and post-construction pollution required by the law.

## ARGUMENT

### I.      Legal Standard For Amending Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). The Supreme Court has held that the "freely given" standard of Rule 15(a) should be applied by district courts so that claims are resolved on the merits rather than on technicalities of pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

The *Foman* Court established that "where the underlying facts would support a claim, leave to amend should be granted" unless certain factors, now called the "*Foman* factors," compelled denial of the motion. The *Foman* factors are: "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Foman*, 371 U.S. at 182.  In applying the factors, a court "must find at least some significant showing of prejudice to the opponent" to deny a motion to amend a complaint. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore*, 790 F.2d at 562); *see also Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) ("guidelines are founded on the hornbook proposition that piecemeal litigation should be discouraged").

The Sixth Circuit generally construes Rule 15 liberally.  *See Moore*, 790 F.2d at 562 ("In light of the authority in this Circuit . . .  indicating a requirement of at least some significant showing of prejudice to the opponent and manifesting liberality in allowing amendments to a complaint, we conclude that the denial of plaintiff's motion here to amend was an abuse of discretion"); *Tefft*, 689 F.2d at 639 (holding that cases "should be tried on their merits rather than the technicalities of pleadings").

## II.     Granting Leave To Amend The Complaint Is Appropriate Here

### A.     Amending the Complaint Now Will Result in the Most Efficient Resolution of the Claims between the Parties

Now that the case is back before the Court and the United States is prepared to bring its additional claims, the most efficient way to proceed is to amend the complaint, conduct whatever additional discovery is necessary, and resolve all the United States' claims together.  The Sixth Circuit has described Rule 15(a) and *Foman* as "founded on the hornbook proposition that piecemeal litigation should be discouraged, not only because it is antagonistic to the goals of public policy, but also because it is prejudicial to the rights of individual litigants."  *Troxel Mfg.*, 489 F.2d at 970.

There is no reason here to separate the new claims from the existing Monroe Unit 2 claims.  First, even if the motion for leave to amend is denied, the Government could still bring the new claims in a separate action.  For many of the claims, the statute of limitations has not yet run.  For the remainder, because NSR is a continuing violation under Sixth Circuit precedent, each day is a new violation of the law.  *See Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 419 (6th Cir. 2007).  In either case, the new claims could be brought in a separate complaint.  Thus the only question is whether it is best to resolve all the claims together or in a piecemeal fashion.

Second, there will be overlap between the original claims and the new claims.  Some of the documents and testimony relevant to the original claims will also be relevant to the new claims.  Separating the claims into two trials would be inefficient for the Court and the Parties.

**B.     None of the *Foman* Factors Support Denying Leave to Amend the Complaint**

Of the *Foman* factors, "notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted."  *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).  None of the factors support denying leave to amend in this case.

**1.     The Amended Complaint does not prejudice DTE**

The "party opposing a motion to amend must make some significant showing of prejudice to prevail."  *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). There is no significant prejudice here.  Adding the new claims will require additional discovery, and that discovery may be inconvenient to DTE.  However, such inconveniences do not rise to the level of prejudice that would warrant denial of a leave to amend.  *See Johnson v. Ventra Group, Inc.*, No. 96-1463, 1997 WL 468332, at *3 (6th Cir. Aug. 13,

1997) (allowing party to amend complaint even though the amendment would require an extension of time for additional discovery where discovery had been closed and where the other party would need to defend against additional causes of action).

Moreover, whatever inconvenience to DTE would be the same if the motion for leave to amend was denied and the United States' new claims were brought in a separate action. Indeed, merging the existing Monroe Unit 2 claims with the new claims will streamline the litigation as compared to having the two cases proceed on separate tracks, minimizing the overall burden on DTE and the Court. Reopening discovery and then hearing the merits of all the claims together will provide the most efficient way to resolve the dispute between the Parties on NSR applicability.

There is some Sixth Circuit precedent upholding findings of prejudice sufficient to deny an amended complaint where allowing the new complaint would require reopening discovery. *See, e.g.*, *Moore*, 790 F.2d at 560. Importantly, however, other Sixth Circuit cases find that reopening discovery does not compel denying a motion to amend. *See, e.g., See Johnson*, 1997 WL 468332, at *3. The circumstances here show there is no prejudice. First, under the facts of *Moore*, the amended charge "was not contemplated by the original complaint." Here the United States made clear from the outset of the case that additional claims were possible. Second, discovery on the Monroe Unit 2 claims was expedited at the suggestion of the Court, a proposal agreed to by the Parties with the knowledge that other claims would likely follow. Finally, there is no schedule yet for the resolution of the original claim, and the Parties and the Court can set a schedule that includes sufficient time for discovery for both sides. This avoids the potential prejudice of amending after the close of discovery – that the defending party would not have time to prepare its defense. *See Estes v. Kentucky Utils. Co.*, 636 F.2d 1131, 1134 (6th Cir.

- 10 -

1980) (citation omitted) ("[P]rejudice is demonstrated when a party has insufficient time to conduct discovery on a new issue raised in an untimely manner.  Allowance of the amendment would then force that party to go to trial without adequate preparation on the new issue.").

### 2.   DTE has had ample notice of the claims in the Amended Complaint

As described above, DTE was on notice that EPA had additional NSR claims from July of 2009, and the United States has made clear from the outset of the litigation that it might seek to amend the complaint and bring further claims.  This clear notice to DTE made before the litigation commenced mitigates any potential prejudice.

### 3.   There is no undue delay in the United States' Amended Complaint

There is no undue delay here.  These claims were not brought in the initial complaint because the United States sought to require DTE to begin the process of installing controls at Monroe Unit 2.  As described above, the United States was open with DTE and the Court from the beginning of this litigation that further claims would likely follow.  Now that the controls at Monroe Unit 2 are nearly complete and the original claims are back before this Court after appeal, the time is ripe for adding the remaining claims.

The Sixth Circuit has established that "delay alone, regardless of its length is not enough to bar" amendment of a complaint.  *Duggins.*, 195 F.3d at 834 (*quoting Moore*, 790 F.2d at 560).  Instead, the opposing party must show an intent to harass or "at least some significant showing of prejudice . . . ."  *Moore*, 790 F.2d at 561-62.  This Court then "'weigh[s] the cause shown for the delay against the resulting prejudice to the opposing party.'"  *Belle v. Ross Prods. Div.*, No. 2:01-CV-677, 2003 WL 133242, at *3 (S.D. Ohio Jan. 3, 2003) (*citing Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973)).  There is no prejudice or intent to harass here.  The United States was open about its plans from the beginning, and the delay in bringing the

- 11 -

additional claims was the result of a plan devised by the Court and the Parties with the knowledge that additional claims would likely follow.  Amending the complaint now to resolve all claims together is the most efficient way to proceed.

### 4.    The Amended Complaint is not futile

The claims in the Amended Complaint are not futile.  Each claim is well grounded in the law and in the facts developed so far.  The Sixth Circuit has made clear that there are two ways to trigger NSR:

1. A source triggers if it should project an increase before the project.  *DTE Energy*, 711 F.3d at 647 (regulations require source to get permit and install modern pollution-control technology where projected emissions are greater than baseline emissions);

2. A source triggers if actual pollution shows an increase after the project.  *Id*. at 651.

In either case, EPA can enforce and require the source to obtain a permit and install pollution controls if necessary.  *Id*. at 647, 651, 652.  We expect that the facts will show that the new claims trigger NSR under both the pre-construction and actual pollution tests.

Notably, the new claims in the Amended Complaint would succeed even under DTE's (incorrect) view of NSR.  DTE has long argued that whether pollution actually increases after the project should control liability.  For the new claims, we anticipate that the facts will show actual increases in pollution.  For liability based on pre-construction projections, DTE can no longer argue that no such liability exists after the Sixth Circuit decision.  The decision states clearly that an operator who fails to follow the pre-construction requirements "is subject to an enforcement proceeding."  *Id*. at 649.  Faced with a clear statement of EPA's enforcement authority, DTE now tries to argue that EPA's authority is limited to certain kinds of deviations from the rules.  *See, e.g.*, ECF 183 at 2.  This claim too is incorrect, but the additional claims meet even DTE's unduly restrictive standard.  DTE says that liability based on a source's faulty pre-construction

analysis is limited to situations such as using an improper baseline.  ECF 183 at 2.  Here, the

facts will show that DTE indeed relied upon improper baselines.  The new claims thus are not

susceptible to the DTE summary judgment motion that is currently before the Court.

## CONCLUSION

The United States respectfully seeks leave to add claims related to six additional projects

in the Amended Complaint.  Amending the complaint and proceeding to resolution on the new

claims and the original Monroe Unit 2 claim at the same time is the most efficient way to resolve

the issues between the United States and DTE.

Respectfully Submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division

Dated: September 3, 2013      _s/ Thomas A. Benson_____
THOMAS A. BENSON (MA Bar # 660308)
KRISTIN M. FURRIE
OF COUNSEL:      ELIAS L. QUINN
SABRINA ARGENTIERI      Environmental Enforcement Section
MARK PALERMO      U.S. Department of Justice
SUSAN PROUT      P.O. Box 7611
Associate Regional Counsel      Washington, D.C. 20044-7611
U.S. EPA Region 5      (202) 514-5261
Chicago, IL      thomas.benson@usdoj.gov
77 W. Jackson Blvd.

APPLE CHAPMAN      BARBARA McQUADE
Associate Director      United States Attorney
Air Enforcement Division      Eastern District of Michigan
U.S. EPA
1200 Pennsylvania Ave. NW      ELLEN CHRISTENSEN
Washington D.C. 20460      Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading and supporting materials were served via ECF on counsel of record.


_s/ Thomas A. Benson_
Counsel for the United States