IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| and ) | 2:10-cv-13101-BAF-RSW |
| ) | |
| SIERRA CLUB ) | |
| ) | Judge Bernard A. Friedman |
| Plaintiff-Intervenor, ) | Magistrate Judge R. Steven Whalen |
| ) | |
| v. ) | |
| ) | |
| DTE ENERGY COMPANY, and ) | |
| DETROIT EDISON COMPANY ) | |
| ) | |
| Defendants. ) | |
| ) | |

## REPLY BRIEF IN SUPPORT OF UNITED STATES' MOTION
## FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

The United States and DTE agree on the key point: the United States should be permitted to amend its complaint.[1]  However, DTE misconstrues the United States' request.  The United States has not asked the Court to delay ruling on DTE's motion for summary judgment (Dkt. No. 166).  The Court is free to rule or not rule on the motion for summary judgment as it sees fit.  However, if the motion is denied or not ruled upon, the United States does not believe that a separate trial

---

[1] The United States also does not oppose Plaintiff-Intervenor Sierra Club's Motion for Leave to Amend Its Complaint (Dkt. No. 186).

- 1 -

on the original Monroe Unit 2 claims should go forward. Instead, those claims should be tried with the claims in the Amended Complaint to avoid piecemeal litigation. DTE apparently agrees, and does not oppose the amendment of the complaint. *See* DTE's Opposition (Dkt. No. 187) at 2. However, in describing the claims in the Amended Complaint, DTE misstates the applicable law and pertinent facts.

## I.     The Case Should Not Be Tried in Separate Trials

The United States leaves it to the Court's sound judgment to decide when and if it will rule on DTE's motion for summary judgment (Dkt. No. 166). Deciding that motion will not resolve the new claims in the Amended Complaint. If the Court denies or defers DTE's motion for summary judgment, the United States respectfully requests that the claims against Monroe Unit 2 be tried along with the claims in the Amended Complaint. A separate trial on Monroe Unit 2 would require the Parties to litigate overlapping legal and factual questions in two separate trials. *Accord* Dkt. No. 187 at 2 (outlining the various "efficiencies" of litigating the proposed additional claims alongside the existing claim). Further, witnesses would be required to testify twice, as opposed to merely expanding the scope of their testimony. Judicial economy is best served by having one trial regarding both the existing claim regarding Monroe Unit 2 (assuming summary judgment is denied) and the additional claims in the Amended Complaint.

## II. DTE Inaccurately Describes the Claims in the United States' Amended Complaint

Though DTE apparently agrees that the proposed additional claims should be litigated alongside the existing Monroe 2 claim in the event the Court denies or does not rule upon DTE's latest motion for summary judgment, the Company mischaracterizes those additional claims. For each of the new claims in the Amended Complaint, the United States alleges that "[t]hese physical changes and/or changes in the method of operation should have been expected to and/or actually did *result* in a significant net emissions increase." Dkt. No. 184-2 ¶¶ 65, 70, 80, 85, 90, 100, 105 (emphasis added). Therefore, the United States has plainly alleged that the projects at issue *caused* a significant net emissions increase, directly contrary to DTE's claims that the United States "takes its misunderstanding of NSR to the next level" by stating that any actual emissions increased triggered PSD liability. Dkt. No. 187 at 5.

In fact, the United States' Amended Complaint includes two distinct bases of liability, each of which clearly alleges a causal link between the modification and the significant net emissions increase: (1) the project should have been *expected to result* in an emissions increase, and (2) that the project *did result* in an emissions increase. *See* Dkt. No. 184-2 ¶¶ 65, 70, 80, 85, 90, 100, 105. The Sixth Circuit confirmed both of these PSD triggers in its recent opinion. *United States v. DTE Energy Co*, 711 F.3d 643, 647 (6th Cir. 2013) ("If the projected emissions

- 3 -

increase is greater, then the operator's inquiry is over and it must seek a permit from EPA or the relevant stage [sic] agency."); *id.* at 651("If post-construction emissions are [significantly] higher than preconstruction emissions, and the increase does not fall under the demand growth exclusion, the operator faces large fines and will have to undertake another project at the source to install modern pollution-control technology."). Furthermore, the United States' statements in support of its motion to amend mirror the allegations in the Amended Complaint, and directly address the so-called "causation" element for each basis of liability. *See* Dkt. No. 184 at 11 ("DTE should have anticipated that the construction projects would result in increased pollution"); 12 ("if pollution actually does increase after the project as a result of the work, the source must obtain a permit at that time"); 13 ("actual increases resulting from a construction project do suffice to trigger NSR liability").[2]

Of course, highlighting the fact that the new claims are *in fact* followed by post-project emissions increases is prudent since DTE has claimed throughout this

---

[2] DTE also implies that it is the United States' burden to prove that the demand growth exception does not apply. ECF No. 187 at 5. As the United States has explained before, this argument is incorrect. U.S. SJ Brief, ECF No. 155 at 11-14 (discussing, *inter alia*, *NLRB v. Ky. River Comm. Care, Inc.* ("*KRCC*"), 532 U.S. 706, 711 (2001) which dictates that the party asserting the protections of a regulatory exclusion bears the burden of proof); *see also* ECF No. 117-2, *United States v. Cinergy Corp.*, Final Jury Instruction 23 ("The burden is on Defendants to prove by a preponderance of the evidence that the demand growth exclusion applies to an emissions increase."). However, the resolution of this issue is immaterial to the motion at issue.

case that NSR enforcement actions cannot proceed unless and until post-project emissions data shows emissions have increased. *See*, *e.g.*, DTE Summary Judgment Briefs, Dkt. Nos. 107 at 2, 166 at 7. That argument is plainly contrary to the statute, 42 U.S.C. § 7477, and the Sixth Circuit already held as much. DTE, 711 F.3d at 650. But even setting aside the language of the Clean Air Act and binding precedent, DTE's go-to argument is of no help against the additional claims, since post-project data squarely reveals emissions *have* increased.

DTE further tries to muddy the issues by asserting that the United States is simply "complain[ing]" about the fact that the Company changed its baselines when evaluating NSR compliance for some of its projects. Dkt. No. 187 at 8. Not so. The United States has alleged in its proposed Amended Complaint that DTE illegally performed major modifications to its facilities which should have been expected to—and later *did*—result in increases in harmful pollution. Dkt. No. 184-2 ¶¶ 65, 70, 80, 85, 90, 100, 105. Furthermore, in the process of evaluating those projects, DTE often used baseline periods that are plainly prohibited by the regulations. *See* Dkt. 184 at 15 (citing 40 C.F.R. § 52.21(b)(48)(i)). NSR requires a comparison of pre- and post-project emissions to assess whether an emissions increase will or has occurred. But in some of DTE's notifications to the State permitting authority, the Company compared a post-project baseline to other post-project data—an assessment that renders its NSR evaluation entirely meaningless

and is squarely against NSR requirements. *See* 40 C.F.R. § 52.21(b)(48)(i) (requiring the use of pre-project baselines for analysis); *accord DTE*, 711 F.3d at 650 (EPA "must" be able to bring an enforcement action where an operator "uses an improper baseline period."). Of course, DTE fails to address the substance of these allegations because the Company would be forced to admit that it did not properly calculate and report its post-project emissions. Tellingly, DTE did not address the United States' allegation that, had DTE used the correct baseline, it would have calculated a significant emissions increase. Dkt. No. 184 at 14.

In sum, DTE's response to the substance of the United States' claims in the Amended Complaint attempts to ignore the clear holding of the Sixth Circuit that "EPA's enforcement powers *must* . . . extend to ensuring that operators follow the requirements in making [PSD] projections" and that if a project causes an actual emissions increase, "the operator faces large fines and will have to undertake another project at the source to install modern pollution-control technology." *DTE*, 711 F.3d at 650-51 (emphasis added).

### III. Conclusion

For the foregoing reasons, the Court should grant United States' Motion for Leave to Amended Complaint its Complaint. The United States and DTE agree that amendment is appropriate, and that the best course for this litigation is to try all claims together. The remainder of the briefing before the Court simply

addresses issues of law and fact that will need to be addressed after the amended complaint is approved.

          Respectfully Submitted,

          ROBERT G. DREHER
          Acting Assistant Attorney General
          Environment & Natural Resources Division

Dated: October 25, 2013          *s/ Kristin M. Furrie*_____
          THOMAS A. BENSON (MA Bar # 660308)
          KRISTIN M. FURRIE

OF COUNSEL:          ELIAS L. QUINN
SABRINA ARGENTIERI          Environmental Enforcement Section
MARK PALERMO          U.S. Department of Justice
SUSAN PROUT          P.O. Box 7611
Associate Regional Counsel          Washington, D.C. 20044-7611
U.S. EPA Region 5          (202) 514-5261
Chicago, IL          thomas.benson@usdoj.gov
77 W. Jackson Blvd.

APPLE CHAPMAN          BARBARA McQUADE
Associate Director          United States Attorney
Air Enforcement Division          Eastern District of Michigan
U.S. EPA
1200 Pennsylvania Ave. NW          ELLEN CHRISTENSEN
Washington D.C. 20460          Assistant United States Attorney
          211 W. Fort St., Suite 2001
          Detroit, MI 48226

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading and supporting materials were served via ECF on counsel of record.

*s/ Kristin M. Furrie*
Counsel for the United States