# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | Case No. 2:10-cv-13101-BAF-RSW |
| SIERRA CLUB ) | Honorable Bernard A. Friedman |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | Magistrate Judge R. Steven Whalen |
| v. ) | |
| ) | |
| ) | |
| DTE ENERGY COMPANY, and ) | |
| DETROIT EDISON COMPANY ) | |
| ) | |
| Defendants. ) | |

**SIERRA CLUB'S REPLY IN SUPPORT OF ITS MOTION**
**<u>FOR LEAVE TO FILE ITS FIRST AMENDED COMPLAINT</u>**

Sierra Club seeks to amend its complaint to allege five New Source Review ("NSR") violations at four of DTE Energy Company and Detroit Edison Company's (collectively, "Defendants" or "DTE") power plants.  DTE largely consents as to the four of those claims that are also raised by the Government,[1] but seeks to exclude the fifth, regarding River Rouge Unit 3 (the "River Rouge claim"), because it has not been raised by the Government.  However, absent a showing of undue delay or prejudice (or a handful of other factors that DTE has not alleged), leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a)(2).  In the interest of judicial economy, because DTE has failed to demonstrate undue delay or prejudice, and because denial would substantially impair Sierra Club's interests, the Court should grant Sierra Club's motion to amend its complaint so that all of the NSR claims raised by the parties can be heard in a single proceeding.

## I.    Granting Sierra Club's Motion Would Advance Judicial Efficiency

DTE acknowledges that Sierra Club could bring its River Rouge claim in a separate proceeding. Defendants' Response ("*Defs. Resp.*"), ECF 189 at 2. The

---

[1] DTE does not oppose Sierra Club's motion to add these four NSR claims so long as such amendment does not delay a ruling on DTE's pending summary judgment motion regarding NSR violations at Monroe Unit 2.  Sierra Club has no objection to the Court deciding that summary judgment motion, after holding oral argument, while litigation on its other claims proceeds.  However, as Sierra Club has explained in its response to DTE's summary judgment motion, that motion should be denied.  If the Court agrees, the legal and factual similarities between the Monroe Unit 2 claim and the rest of the NSR claims presented by Sierra Club and the Government counsel in favor of deciding all of those claims along the same track, rather than holding a hearing on the Monroe Unit 2 claim in advance of the other claims.

question at issue, therefore, is whether judicial efficiency would best be served by resolving all of the raised claims at the same time, rather than in a piecemeal manner. Given the common questions of law and the potential significant factual overlap between the River Rouge claim and the other NSR claims in this proceeding, judicial efficiency favors granting Sierra Club's motion. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) ("piecemeal litigation should be discouraged"); *see also Grubbs v. Norris*, 870 F.2d 343, 347 (6th Cir. 1989) (granting amendment based on "[c]oncerns of judicial economy and swift resolution of disputes").

Defendants readily admit that the River Rouge claim shares with the Government's claims common questions of law as to the proper application of the 2002 NSR rules. *Defs. Resp.* at 8-9. For example, these claims raise questions as to whether Defendants' boilerplate invocation of the demand growth exclusion satisfied DTE's burden of substantiating and documenting its exclusion of projected and/or actual post-project emissions increases to avoid the need for NSR pre-construction permits.[2] In developing the evidentiary basis for answering this question in the

---

[2] DTE's suggestion (*Defs. Resp. to Govt.*, ECF 187 at 5) that the Plaintiffs bear the burden of demonstrating that the demand growth exclusion should not apply is unfounded. As the Sixth Circuit made clear in remanding this proceeding, if a utility projects a post-project emissions increase that exceeds the significance threshold (as DTE did here) then the utility "must seek a permit from EPA or the relevant state agency and install expensive modern pollution-control technology." *United States v. DTE Energy Co.*, 711 F.3d 643, 647 (6th Cir. 2013). Under the applicable regulations, DTE could avoid such a result only if the increased emissions are due to demand growth and unrelated to the project. 40 C.F.R. § 52.21(b)(41)(ii)(c). As recounted in

2

negative, Plaintiffs' expert witnesses will testify regarding Defendants' use of the demand growth exclusion, as well as other shared legal questions, such as whether the multi-million dollar projects that DTE carried out qualify as major modifications as opposed to merely routine maintenance.

Sierra Club also expects that there will be significant overlap in fact witnesses, particularly with respect to 30(b)(6) witnesses and any corporate employees or officers who oversee DTE's environmental compliance strategy, maintenance programs, accounting programs, and emissions projections, among others. For example, Sierra Club anticipates factual testimony regarding DTE's boilerplate invocation of the demand growth exclusion across its power plants to help demonstrate that DTE's emissions' projections do not satisfy the requirements of the applicable regulations.

Finally, as Defendants acknowledge in their response to the United States' motion to amend, "this Court is uniquely qualified to resolve legal challenges involving the new claims—no other district court has engaged the 2002 rules in the way this Court has." *Defendants' Response to Government's Motion to Amend* ("*Defs. Resp. to Govt.*"), ECF 187 at 11. In keeping with the principle that "piecemeal litigation should be discouraged" as both "antagonistic to the goal of public policy" and "prejudicial to

---

previous briefing in this proceeding, it is the entity invoking the demand growth exclusion that bears the burden of substantiating and documenting the alleged applicability of such exclusion. *See Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment On the Legal Standards at Issue in This Case*, ECF 155 at 8-10.

the rights of individual litigants," *Troxel Mfg.*, 489 F.2d at 970, and given this Court's familiarity with the issues at stake, the Court should grant Sierra Club's motion.

## II. Granting Sierra Club's Motion Will Not Result in Undue Delay or Prejudice to DTE

DTE offers little support for its contention that granting Sierra Club's motion would result in undue delay or prejudice to DTE. *Defs. Resp.* at 1, 10. Although DTE argues that adding the River Rouge claim could require additional discovery, motions practice, and trial time, *id.* at 9, this Court has made clear that "prejudice is not established merely because 'additional discovery will be conducted, the number of motions increased, and the issues for trial enlarged.'" *US v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 268 (E.D. Mich.1997); *see also Morse v. McWhorter*, 290 F.3d 795, 800-01 (6th Cir. 2002) (inconvenience from another round of motion practice "does not rise to the level of prejudice that would warrant denial of leave to amend"); *In re Cardizem CD Antitrust Litig.*, 99-MD-1278, 2000 WL 33180833 (E.D. Mich. Sept. 21, 2000) ("Numerous courts have rejected similar arguments, observing that 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'") (internal citation omitted). Sierra Club anticipates that any discovery beyond that required for the other new claims can follow the same discovery schedule and should not result in more than a *de minimis* delay. Any such delay would be far shorter, of course, than the time that would be

4

required to conduct discovery, depose or re-depose witnesses, and hold a separate trial for the River Rouge claim as a standalone action.

Nor can DTE demonstrate that prejudice is somehow generated by Sierra Club's status as an intervenor-plaintiff.[3]  Defendants contend, without support of case law, that "special focus" should apply to an intervenor's motion to amend. *Defs. Resp.* at 5. In doing so, DTE appears to conflate the standard for intervention with the liberal standard for amending a complaint. *See id.* at 5-9. However, the fact that an intervenor asserts a claim different from those brought by the Government is not sufficient to establish prejudice. *See, e.g.*, *Marsten Apartments*, 175 F.R.D. at 268 (allowing intervenors to assert state law claims not asserted by federal government plaintiff); *see also Safari Club Int'l v. Demientieff*, 227 F.R.D. 300, 302 (D. Alaska 2005) (granting motion to amend because "Defendants will have to answer intervenors' challenge … whether it is raised in this action or in a new case. . . ."); *Galusha v. New York State Dep't of Envtl. Conservation*, 92 F. Supp. 2d 66, 70 (N.D.N.Y. 1999).  Given that the River Rouge claim is against the original party and raises the same legal issues and overlapping factual issues as the Government's original and amended complaints, DTE would suffer no prejudice if this claim were tried in the present proceeding.

---

[3] Sierra Club does not read Defendants' response as challenging Sierra Club's right to intervene. To the extent that the Court interprets DTE's brief differently, Sierra Club has fully briefed this issue in its Motion to Intervene, ECF 34, and so will not re-argue the issue here.

5

DTE's suggestion that it is prejudiced by a lack of notice of the River Rouge claim, *Defs. Resp.* at 7, is without basis because the Clean Air Act provision pursuant to which NSR suits such as this one can be pursued, section 304(a)(3), does not require notice of intent to sue. *See, e.g.*, *Vill. of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 963 (7th Cir. 1994); *U.S. v. American Electric Power Service Corp.*, 137 F.Supp. 2d 1060, 1064-65 (S.D. Ohio 2001); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 963 F. Supp. 395, 406-07 (D.N.J. 1997), *aff'd*, 140 F.3d 478 (3d Cir. 1998).

## III.   Denial of Sierra Club's Motion Would Substantially Impair Its Interests

Contrary to DTE's assertion, *Defs. Resp.* at 6, exclusion of the River Rouge claim would substantially impair Sierra Club's interests. The legal standards adopted by the Court in this proceeding would likely represent binding precedent in any subsequent action regarding the River Rouge claim.  Hearing all of the claims, including the River Rouge claim, in a single proceeding is important because it could help determine how those legal claims are resolved.  In particular, DTE contends that Sierra Club and the Government are improperly "second-guessing" its emissions predictions. *Defs. Resp. to Govt.* at 4.  One of the reasons that DTE's argument fails is that the available evidence suggests that Defendants have a pattern of simply assuming, without substantiation or documentation, the applicability of the demand growth exclusion every time DTE found a projected or actual post-project emissions increase.  Sierra Club's ability to show that the River Rouge claim is part of that

6

pattern would be hindered, however, if that claim is piecemealed into a separate proceeding.  As such, Sierra Club would be prejudiced by any exclusion of its River Rouge claim.

## IV.   Conclusion

For the foregoing reasons and those set forth in the initial motion, the Court should grant Sierra Club's Motion for Leave to File Its First Amended Complaint in total so that so that all of the NSR claims raised by the parties can be heard in a single proceeding.

Respectfully submitted,


s/Shannon Fisk
Shannon Fisk - IL Bar # 6269746
Earthjustice
1617 John F. Kennedy Blvd. Suite 1675
Philadelphia, PA 19103
(215) 717-4522
sfisk@earthjustice.org

Nicholas J. Schroeck - MI Bar # P70888
Great Lakes Environmental Law Center
440 Burroughs St. Box 70
Detroit, MI 48202
(313) 820-7797
nschroeck@wayne.edu

Laurie Williams – NY Bar # 4951117
Sierra Club
50 F Street, NW, Eighth Floor
Washington, DC  20001
(202) 548-4597
Laurie.williams@sierraclub.org


*Counsel for Plaintiff-Intervenor Sierra Club*            Dated: October 25, 2013

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading, Sierra Club's Reply In Support Of Its Motion For Leave To File Its First Amended Complaint, was served via ECF on counsel of record.

<u>s/ Shannon Fisk</u>
*Counsel for Plaintiff-Intervenor Sierra Club*

8