UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

UNITED STATES OF AMERICA,

      Plaintiff,

Civil Action No. 10-cv-13101
HON. BERNARD A. FRIEDMAN

and

NATURAL RESOURCES DEFENSE
COUNCIL, INC. AND SIERRA CLUB

      Intervenor-Plaintiffs,

      v.

DTE ENERGY COMPANY and
DETROIT EDISON COMPANY,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff United States of America (the "government") commenced this action pursuant to Sections 113(b) and 167 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(b) and 7477. The complaint alleges that defendants Detroit Edison Company and DTE Energy Company (collectively "defendants") violated the CAA and the State Implementation Plan adopted by the State of Michigan and approved by the Environmental Protection Agency ("EPA"). Before the Court is defendants' renewed motion for summary judgment [docket entry 166]. The government and plaintiff-intervenor Sierra Club filed responses [docket entries 178 and 179]. Defendants filed a reply [docket entry 183]. The Court will rule on defendants' motion without

-1-

oral argument pursuant to E.D. Mich. LR 7.1(f)(2).

At the outset, the Court incorporates its earlier summary of the underlying facts and description of the regulatory scheme at issue by reference to the opinion and order dated August 23, 2011 [docket entry 160].

This case is on remand from the Sixth Circuit Court of Appeals with instructions to evaluate whether defendants adhered to EPA's regulations governing preconstruction emission projections prior to renovating an electric utility steam generating unit ("Unit 2") at their Monroe, Michigan power plant without first obtaining a New Source Review ("NSR") permit from the Michigan Department of Environmental Quality ("MDEQ"). United States v. DTE Energy Co., 711 F.3d 643, 652 (6th Cir. 2013). The Court concludes that they have.

In its opinion, the Sixth Circuit held that "[a] preconstruction projection is subject to an enforcement action by EPA to ensure that the projection is made pursuant to the requirements of the regulations." Id. This does not mean that EPA possesses unfettered authority to challenge the methodology and factual assumptions defendants' used to predict their post-project emissions. The Sixth Circuit merely requires that, "at a basic level," the source operator "has to make projections according to the requirements for such projections contained in the regulations." Id. at 649. A source operator, for example, may not simply commence construction on a project without having made any emissions projection. Nor may a source operator act contrary to the regulations by relying on an "improper baseline period or use[ ] the wrong number to determine whether a projected emissions increase is significant." Id. at 650. EPA is only entitled to conduct a surface review of a source operator's preconstruction projections to determine whether they comport with the letter of the law. Anything beyond this cursory

examination would allow EPA to "second-guess" a source operator's calculations; an avenue which the Sixth Circuit explicitly foreclosed to regulators. Id. at 644 (stating that "the regulations allow operators to undertake projects without having EPA second-guess their projections . . .").

In this case, EPA claims that defendants improperly applied the demand growth exclusion when they "expected pollution from . . . Unit 2 to go up by thousands of tons each year after the overhaul," and then discounted this entire emissions increase by attributing it to additional consumer demand. Pl.'s Resp. at 15. In other words, EPA does not contend that defendants violated any of the agency's regulations when they computed the preconstruction emission projections from Unit 2. Rather, EPA takes defendants to task over *the extent* to which they relied upon the demand growth exclusion to justify their projections. (Emphasis added). This is exactly what the Sixth Circuit envisioned when it precluded EPA from second-guessing "the making of [preconstruction emission] projections." DTE, 711 F.3d at 649. Moreover, EPA does not point to any regulation requiring source operators to demonstrate the propriety of their demand growth exclusion calculations. And without adequate proof that defendants violated the regulations governing preconstruction emission projections, the instant action cannot withstand summary judgment.

Even assuming that EPA's reviewing authority is as broad as the agency claims, the Court is bewildered by the prospect of what, if anything, the agency stands to gain by pursuing this litigation. Insofar as the government asserts that defendants misapplied the demand growth exclusion, this contention is belied by the fact that defendants have demonstrated, and the government concedes, that the actual post-project emissions from Unit 2 never increased. Pl.'s

Mot. to Amend Comp. at 5. Therefore, since its own preconstruction emission projections are now verifiably inaccurate, the government is unable to show that the renovations to Unit 2 constituted a major modification.

This determination, however, does not permanently bar EPA from commencing an enforcement action against defendants on account of the Unit 2 renovations. As the Sixth Circuit noted in its ruling, MDEQ retains "the authority to request emissions information from [the operator] at any time to determine the status of . . . post-change emissions," 67 Fed. Reg. 80,186, 80,204 (Dec. 31, 2002), and "EPA can bring an enforcement action whenever emissions increase, so long as the increase is traceable to the construction." DTE, 711 F.3d at 651 (citing 40 C.F.R. § 52.21(a)(2)(iv)(b)). Until that time, any EPA enforcement action related to the Unit 2 renovations would be premature. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

Dated: March 3, 2014  \_s/ Bernard A. Friedman\_\_\_\_
    Detroit, Michigan  BERNARD A. FRIEDMAN
                                      SENIOR UNITED STATES DISTRICT JUDGE