DTE330

| | |
|---|---|
| **From:** | Joe Maalouf ██████████ |
| **Sent:** | Thursday, June 18, 2020 4:53 PM |
| **To:** | ENRD, PUBCOMMENT-EES (ENRD) |
| **Cc:** | Nicholas Schroeck |
| **Subject:** | Joe Maalouf - Comment Re Consent Decree With DTE |
| **Attachments:** | Joe Maalouf - Comment Letter Outline.pdf |

Dear Assistant Attorney General, Environment and Natural Resources Division,

On behalf of the ██████████████████████████████████████████████████, please accept this public comment regarding the consent decree between *United States and Sierra Club* v. *DTE Energy Company and Detroit Edison Company,* D.J. Ref. No. 90-5-2-1-09949.

Thank you for your consideration,

Joe Maalouf
██████████

1



### Comment Re Consent Decree With DTE

Michigan communities deserve more for the damage caused by DTE's coal-fired plants. Yet this consent decree not only settles for less, but also sends the wrong message to industrial polluters – that it's better to ask for forgiveness than to ask for permission.

*Overview*

Under the Clean Air Act, utility companies seeking to modify a source of air pollution must make projections of how the modification will affect future emissions.[1] If the projections indicate a major modification, then the company needs a permit under the New Source Review program before going ahead.[2] The projections do not have to include emissions related to growth in demand.[3]

In 2010, DTE notified the Michigan Department of Environmental Quality that it will be undergoing a $65 million-dollar modification of their coal-fired facility in Monroe.[4] DTE characterized the project as routine maintenance and that the projected increase in emissions will be attributable to demand growth.[5]

The very next day, DTE began construction without a permit.[6] EPA subsequently sued the company on that basis, finding its projections questionable and arguing that a permit was in fact required.[7] Four of DTE's other coal-fired plants were also brought into the lawsuit for the same reason.[8]

DTE unsuccessfully sought summary judgment three times in federal court. The company argued that the EPA has no authority to require a permit based solely on a review of their projected emissions.[9] Instead, it insisted that the agency must wait and see if the modifications result in actual increases in emissions.[10] The Sixth Circuit ruled against DTE's argument twice, and the Supreme Court denied DTE's petition for review.[11]

---

[1] 42 U.S.C. § 7475, 7503
[2] *Id*.
[3] 40 C.F.R. § 52.21(b)(41)(a) and (c)
[4] *United States v. DTE Energy*, 845 F.3d 735, 737 (6th Cir. 2017)
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] Notice of violation from EPA to DTE Energy, U.S. EPA (Mar. 7 2013), at 1. https://archive.epa.gov/region5/swdetroit/web/pdf/r5-053176.pdf
[9] *United States v. DTE Energy*, 2015 WL 995207 (C.A.6), at 8 (Respondent's Brief)
[10] *Id*.
[11] *DTE Energy Co. v. U.S.*, 138 S. Ct. 555 (2017)

*The consent decree settles for less*

By all outward appearances, the EPA has the upper hand at this stage of the litigation. Yet the agency is not only seeking to settle with DTE in the proposed consent decree, but to do so for a civil penalty and mitigation project that together amount to just under $7.5 million dollars.[12] Michigan communities deserve more for DTE's actions.

To most people, $7.5 million dollars seems like a lot of money. But companies like DTE are not like most people. In each of the last three years, DTE made over $1 billion dollars in profits.[13] That means that from a monetary standpoint, the consent decree in question only imposes obligations amounting to less than 1% of what the company keeps after expenses – hardly much of a deterrent.

Moreover, the EPA could have secured a fairer remedy had it successfully tried the case. Section 113(b) of the Clean Air Act, in tandem with the Federal Civil Penalties Inflation Adjustment Act, authorizes the EPA to seek as much as $37 500 a day in civil penalties for each of DTE's violations.[14] Assuming at least five violations (one for each coal-fired facility) over a six-month period, the EPA would have secured just over $33 million dollars in civil penalties.

The decision to settle is made even more questionable given the EPA's relatively strong position in the litigation, as evidenced by both the agency's success in Circuit Court as well as the Supreme Court's denial of DTE's petition for review. By settling the case, the EPA is settling for less.

*The consent decree sends the wrong message*

By entering into this consent decree, the EPA also signals to industry that when it comes to making major modifications to polluting facilities, it's better to ask for forgiveness than to ask for permission – a message that goes against any pretense of protecting the environment.

After many years of litigation, the Sixth Circuit ruled that it is within the EPA's discretion to require a permit under the New Source Review program based on its own assessment of a company's emission projections.[15] Yet the agency is now deciding not to use its hard-won discretion because of an EPA policy memorandum issued in December of 2017.

The memorandum characterizes the Sixth Circuit decision as having "created uncertainty" and proceeds to reassure industry that the EPA will in fact not conduct its own assessment of a company's projections for purposes of New Source Review.[16]

---

[12] Consent Decree, *United States v. DTE Energy* (No. 266-1, E.D. Mich., May 14, 2020), at 27, 70.
[13] Macrotrends, "DTE Energy Net Income 2006-2020" (June 16, 2020), https://www.macrotrends.net/stocks/charts/DTE/dte-energy/net-income
[14] 42 U.S.C § 7413(b)
[15] United States v. DTE Energy, 845 F.3d 735, (6th Cir. 2017)
[16] Memorandum from E. Scott Pruitt, Administrator, U.S. EPA, to Regional Administrators, U.S. EPA (Dec. 7, 2017), https://www.epa.gov/sites/production/files/2017-12/documents/policy_memo.12.7.17.pdf.

Not only does EPA's policy memorandum have no binding legal authority, it also carries dangerous environmental implications. By choosing not to oversee the preconstruction projections of industrial polluters, the EPA gives companies the green light to build first and fix environmental problems later – when the damage is already done.

Meanwhile, the Sixth Circuit has authorized the EPA to be proactive and prevent questionable projections from becoming a problem in the first place. By not exercising the authority awarded to them, the EPA sends the wrong message to industrial polluters – that it's better to ask for forgiveness than to ask for permission.

*Concluding Remarks*

Over the last century, DTE profited from its coal-fired plants at the expense of Michigan's natural resources and public health. But the EPA has a chance to hold the company accountable by changing the terms of this consent decree as follows:

1) **Increase the civil penalty** to adequately reflect the damage caused by coal-fired facilities and to effectively deter large corporations like DTE from circumventing their legal obligations in the future, pursuant to EPA's own Stationary Source Penalty Policy.

2) **Require more environmental mitigation** to fully and properly compensate specific Michigan communities that were most affected by DTE's coal-fired facilities.

3) **Extend record-keeping** under Section XV (Information Collection and Retention) to cover the full timeline of DTE's obligations under the consent decree.

4) **Increase periodic reporting** under Section IX (Periodic Reporting) from semiannually to quarterly, to better prevent against noncompliance.

Thank you for the opportunity to comment and for considering our views.

Sincerely,

/s/Joe Maalouf                              /s/Nicholas J. Schroeck

Joe Maalouf                                 Nicholas J. Schroeck



3

DTE333