# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>SIERRA CLUB,<br><br>*Intervenor-Plaintiff,*<br><br>v.<br><br>DTE ENERGY COMPANY and<br>DETROIT EDISON COMPANY,<br><br>*Defendants.* | No. 10-cv-13101-BAF-RSW<br><br>Judge Bernard A. Friedman<br><br>Magistrate Judge R. Steven Whalen |

## BRIEF OF RICHARD EPSTEIN AND JEREMY RABKIN
## AS *AMICI CURIAE*
## IN SUPPORT OF PLAINTIFF UNITED STATES OF AMERICA

Andrew F. Fink III (P74182)
FINK & FINK PLLC
320 N. Main St., Ste. 300
Ann Arbor, MI 48104
734-994-1077
Andrew.fink@finkandfink.com

C. Boyden Gray*
Jonathan Berry*
James R. Conde*
T. Elliot Gaiser
   *Counsel of Record*
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
gaiser@boydengrayassociates.com

*Not admitted to this Court.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF *AMICUS CURIAE* ............................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT ................................................................................................................. 2

I.    The Clean Air Act's Citizen Suit Provisions Are Unconstitutional. ................. 2

    A.    The Executive Power Belongs to the President Alone. ........................... 2

    B.    The Executive Power Includes the Law Enforcement Power. ................ 3

    C.    The Clean Air Act's Citizen Suit Provisions Unconstitutionally Vest the Law Enforcement Power in Private Persons. ................................... 5

    D.    Citizen Suits Undermine Constitutional Principles. .............................. 7

II.    Arguments to the Contrary Are Unpersuasive. ................................................ 10

    A.    Congress's Power to Create Private Rights Does Not Justify Citizen Suits. .................................................................................................... 10

    B.    *Qui Tam* Litigation Does Not Justify Citizen Suits. ............................ 11

CONCLUSION ............................................................................................................ 13


# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ................................................................................................ 5, 7, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) .................................................................................................. 6, 9

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................................................................... 5

*In re Aiken Cty.*,
   725 F.3d 255 (D.C. Cir. 2013) .................................................................................. 5, 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. at 555 (1992) ................................................................................................ 11

*N. Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*,
   200 F. Supp. 2d 551, 556 (E.D.N.C. 2001) ................................................................ 10

*Riley v. St. Luke's Episcopal Hosp.*,
   252 F.3d 749 (5th Cir. 2001) ...................................................................................... 12

*Seila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020) ........................................................................................ passim

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ........................................................................................... 4, 10

*Thole v. U. S. Bank N.A*,
   140 S. Ct. 1615, 1623 (2020) ...................................................................................... 10

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ................................................................................................... 12

**STATUTES**

28 U.S.C. § 506 ................................................................................................................... 2

31 U.S.C. § 3730 ......................................................................................................... 12, 13

42 U.S.C. § 2000e–2(a)(1) ................................................................................................ 11

42 U.S.C. § 7604............................................................................................................... 6

42 U.S.C. § 7605............................................................................................................... 2

**REGULATIONS**

40 C.F.R. § 19.4................................................................................................................ 6

**OTHER AUTHORITIES**

Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*,
    102 Mich. L. Rev. 689 (2004) ................................................................................. 4, 11

Competitive Enterprise Institute, Ten Thousand Commandments (2020)................. 8

Department of Justice Manual § 5-3.100......................................................................... 2

EPA, *COVID-19 Implications for EPA's Enforcement and Compliance Assurance
    Program* (Mar. 26, 2020)........................................................................................... 10

Federalist No. 33............................................................................................................... 3

Federalist No. 70............................................................................................................... 8

Jonathan H. Adler, *Stand or Deliver, Citizen Suits, Standing, and Environmental
    Protection*,
    12 Duke Envt'l L. & Pol'y F. 39 (2001) ...................................................................... 9

Michael S. Greve, *The Private Enforcement of Environmental Law*,
    65 Tulane L. Rev. 339 (1990) ...................................................................................... 9

Saikrishna B. Prakash, *The Essential Meaning of Executive Power*,
    2003 U. Ill. L. Rev. 701 (2003) .................................................................................... 4

Saikrishna Prakash, *The Chief Prosecutor*,
    73 Geo. Wash. L. Rev. 1701 (2005) .......................................................................... 13

William Blackstone, Commentaries on the Laws of England,
    (1st ed. 1765–69) .................................................................................................. 4, 10

## INTEREST OF *AMICUS CURIAE*[1]

Professor Richard Epstein is the Laurence A. Tisch Professor of Law at NYU School of Law, the Peter and Kirsten Bedford Senior Lecturer at the Hoover Institution, and the James Parker Hall Distinguished Service Professor Emeritus and Senior Lecturer at the University of Chicago. Jeremy A. Rabkin is a law professor at George Mason University's Antonin Scalia Law School. *Amici* are recognized constitutional law experts with no pecuniary interest in the outcome of this case. They write this brief to defend the Constitution's structure and ideals.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The United States of America, plaintiff-intervenor Sierra Club, and the defendant energy companies ("DTE"), seek entry of a consent decree to resolve DTE's alleged violation of the Clean Air Act. Dkt. No. 266-1. But Sierra Club remains unsatisfied with the remedial burdens that the decree places on DTE. Accordingly, Sierra Club conditions its acceptance of the release of its identical Clean Air Act claim on the acceptance of a separate side agreement that it negotiated with DTE. *Id.* ¶ 121; Dkt. No. 267-1 ¶ 14. This side deal would impose additional burdens on DTE and generate supposedly desirable public health benefits that were nowhere examined during the litigation.

---

[1] *Amicus curiae* certifies that (1) this brief was authored entirely by counsel for *amicus curiae* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from *amicus curiae* and its counsel, no other person contributed money to fund preparing or submitting this brief.

Sierra Club's side deal is an unconstitutional attempt to undercut and second-guess the prosecutorial discretion of the President and his lawfully appointed agent, the Attorney General. 42 U.S.C. § 7605.[2] Under the Constitution, all executive power is "vested in a President," who must "take Care that the Laws be faithfully executed." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (quoting Art. II, § 1, cl. 1; *id.*, § 3). The power to prosecute or decline to prosecute public offenses—such as Clean Air Act violations—is a core executive power entrusted exclusively to the President's care. Congress may not vest any part of that law enforcement power in private persons, including the Sierra Club, who have not been properly appointed to public office and who therefore remain outside of the President's control and supervision. This purported side deal would allow Sierra Club to unlawfully exercise executive power. To avoid this constitutional collision, the Court must reject Sierra Club's separate settlement agreement and dismiss Sierra Club's complaint "with prejudice," as the consent decree contemplates. *See* Dkt. No. 266-1 ¶ 121.

## ARGUMENT

I. **THE CLEAN AIR ACT'S CITIZEN SUIT PROVISIONS ARE UNCONSTITUTIONAL.**

   A. **The Executive Power Belongs to the President Alone.**

The Constitution's Vesting Clause provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1,

---

[2] The Attorney General has subdelegated this responsibility to a lawfully appointed Assistant Attorney General. *See* 28 U.S.C. § 506; Department of Justice Manual § 5-3.100. That Assistant Attorney General is counsel to the United States in this case.

2

cl.1. The Vesting Clause makes clear that "the entire 'executive Power' belongs to the President alone." *Seila Law*, 140 S. Ct. at 2197. Article II in turn assigns to the President, and only the President, the power to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

Recognizing the importance of the unitary executive to the Framers' constitutional design, the Supreme Court has jealously guarded the President's sole "executive Power" against erosion or encroachment.[3] While the President may rely on subordinate officers of his choosing to carry out the execution of the law, the Supreme Court has held that "[t]hese lesser officers must remain accountable to the President, whose authority they wield." *Seila Law*, 140 S. Ct. at 2197. Statutes that vest executive power outside of the President's control are thus "acts of usurpation," and they "deserve to be treated as such." Federalist No. 33.

### B. The Executive Power Includes the Law Enforcement Power.

The "executive Power," as understood in 1789 and today, includes the core law enforcement power to prosecute all public offenses, whether civil or criminal.

In England, it was principally the Crown's duty to vindicate public rights by prosecuting public offenses. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas J., concurring) (citing Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich. L. Rev. 689, 695–700 (2004)). The king, Blackstone recognized, was the "proper person to prosecute for all public offenses

---

[3] The Supreme Court has only allowed two narrow exceptions for regulatory commissions with no significant law enforcement authority and independent counsels who qualify as inferior officers. *See Seila Law*, 140 S. Ct. at 2192.

3

and breaches of the peace." 1 William Blackstone, Commentaries on the Laws of England *259 (1st ed. 1765–69). Since the law enforcement power was principally vested in the king, it was recognized by Blackstone as a power "with regard to the execution of the laws." *Id.* During the colonial era and under the Articles of Confederation, it was similarly understood that the "executive authority's essential function consisted of law enforcement[.]" Saikrishna B. Prakash, *The Essential Meaning of Executive Power*, 2003 U. Ill. L. Rev. 701, 735 (2003).

Early historical practice confirms that the President wields the entire federal law enforcement power. "[D]uring the Washington administration, prominent officials across all three branches recognized the president's role as chief law enforcement executive." *Id.* at 800. Indeed, Washington personally "ordered his federal prosecutors to cease prosecutions, and to commence them." *Id.* at 802 (footnotes omitted). Thus, while Congress could create district attorneys to "prosecute potential lawbreakers," under the Constitution, the "president is the chief of these law enforcement officers." *Id.* at 737.

Consistent with historical practice, federal courts have recognized that the "Presidential power of prosecutorial discretion is rooted in Article II." *In re Aiken Cty.*, 725 F.3d 255, 262 (D.C. Cir. 2013) (Kavanaugh, J.). "The President may decline to prosecute . . . because of the President's own constitutional concerns about a law *or* because of policy objections to the law, among other reasons." *Id.* at 263. This discretion is not limited to proceedings labeled "criminal": "the Executive may decline to seek *civil* penalties or sanctions (including penalties or sanctions in

4

administrative proceedings) on behalf of the Federal Government in the same way. Because they are to some extent analogous to criminal prosecution decisions and stem from similar Article II roots, such civil enforcement decisions brought by the Federal Government are presumptively an exclusive Executive power." *Id.* at 263 n.9; *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). Or as the Supreme Court recognized in *Buckley v. Valeo*, "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.' " 424 U.S. 1, 138 (1976).

### C. The Clean Air Act's Citizen Suit Provisions Unconstitutionally Vest the Law Enforcement Power in Private Persons.

The Clean Air Act vests enormous law enforcement power in private persons outside of the President's control without regard to these bedrock constitutional principles. Accordingly, the Act's citizen suit provisions purport to allow "any person" to "commence a civil action on his own behalf . . . against any person . . .who is alleged to have violated . . . or to be in violation of" numerous Clean Air Act requirements. 42 U.S.C. § 7604(a)(1), (a)(3), (f). If EPA "has commenced and is diligently prosecuting a civil action," *id.* § 7604(b)(1)(B), these private parties can still exert control over the conduct of the litigation because they "may intervene as a matter of right" when the EPA has begun litigation. *Id.* Pursuant to statute, these intervenors may act as private attorneys general and seek enormous civil

5

penalties—over $100,000 per day of violation—even over the objections of executive officials. *Id.* § 7413(b); 40 C.F.R. § 19.4.

Such "enforcement authority" that "includes the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court" is "a quintessentially executive power." *Seila Law*, 140 S. Ct. at 2200. Vesting these extensive executive powers in "any person" raises "fundamental [Article II] questions." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 197 (2000) (Kennedy, J., concurring). Indeed, the Clean Air Act "turns over to private citizens the function of enforcing the law." *Id.* at 209 (Scalia, J., dissenting). The Act "allows public authorities to avoid private enforcement only by accepting private direction as to when enforcement should be undertaken." *Id.* at 210. "Elected officials are entirely deprived of their discretion to decide that a given violation should not be the object of suit at all, or that the enforcement decision should be postponed." *Id.* Even as intervenors, private parties play a primary role in civil enforcement litigation, depriving federal officers of exclusive enforcement discretion and forcing them to negotiate not only with the defendant in the lawsuit but also with a congressionally blessed private co-prosecutor. The Clean Air Act thus vests core law enforcement power in private persons who are not subject to the President's control and supervision, in violation of Article II's Vesting and Take Care Clauses. *Seila Law*, 140 S. Ct. at 2198. As explained *infra* at 11–12, the *sole* issue here is the private enforcement of public rights; this is not a case involving a private right of action to obtain relief for private injuries.

6

Such citizen suits also violate the Appointments Clause. Private citizens are not properly appointed federal officers under Article II, so their exercise of independent law enforcement power does not satisfy the requirements of the Appointments Clause. This conclusion is dictated by *Buckley*. In *Buckley*, the Supreme Court held that the Appointments Clause applied to a statute creating a Federal Election Commission because the statute included provisions "vesting in the Commission primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights[.]" *Id.* at 140. As the Supreme Court ruled, "[s]uch functions may be discharged only by persons who are 'Officers of the United States' within the language of that section." *Id.* The Clean Air Act's citizen suit provisions similarly vest "responsibility for conducting civil litigation for vindicating public rights" in private persons who are not federal officers. Citizen suits are thus unconstitutional under a straightforward application of *Buckley*.

### D. Citizen Suits Undermine Constitutional Principles.

By undermining the unitary executive, citizen suits seriously undermine the constitutional framework and the ideals it protects. The decision to vest all executive power in a single President is a product of careful "reflection and choice." Federalist No. 1. As Alexander Hamilton explained during the ratification debates, the Framers deemed a single-headed executive "essential to 'the steady administration of the laws,' 'the protection of property,' and 'the security of liberty.'" *Seila Law*, 140 S. Ct. at 2203 (quoting Federalist No. 70). Citizen-suit provisions erode these principles.

7

1. ***The protection of property and the security of liberty.*** By vesting law enforcement powers outside of the executive, citizen suits undermine an important structural protection for liberty and property. As then-Judge Kavanaugh eloquently explained:

> One of the greatest *unilateral* powers a President possesses under the Constitution, at least in the domestic sphere, is the power to protect individual liberty by essentially under-enforcing federal statutes regulating private behavior. . . . After enacting a statute, Congress may not mandate the prosecution of violators of that statute. Instead, the President's prosecutorial discretion and pardon powers operate as an independent protection for individual citizens against the enforcement of oppressive laws that Congress may have passed (and still further protection comes from later review by an independent jury and Judiciary in those prosecutions brought by the Executive).

*In re Aiken*, 725 F.3d at 264.

By vesting the ability to enforce punitive laws with any person, citizen suits undermine the President's ability to underenforce oppressive laws, of which there are many. *See* Competitive Enterprise Institute, Ten Thousand Commandments 49, Figure 14 (2020) (Code of Federal Regulations had 185,984 pages in 2019). "Tens of thousands of facilities are subject to federal environmental regulations nationwide. On any given day, a substantial portion of these facilities violates the technical requirements imposed by environmental regulations." Jonathan H. Adler*, Stand or Deliver, Citizen Suits, Standing, and Environmental Protection*, 12 Duke Envt'l L. & Pol'y F. 39, 43 (2001). Punishing regulatory violations to the full extent of the law is unlikely to be socially optimal. Indeed, in many cases, citizen suits have "no tangible environmental benefit." *Id.* at 50.

8

Citizen suits also empower factions, who can wield executive power to harass their competitors. For that reason, citizen suits are "often used to achieve settlements requiring the defendant to support environmental projects of the plaintiffs' choosing," raising conflicts of interest. *Laidlaw*, 528 U.S. at 210 (Scalia, J.) (citing Michael S. Greve, *The Private Enforcement of Environmental Law*, 65 Tulane L. Rev. 339, 355–59 (1990)).

While underenforcement of environmental laws may be unpopular with some voters, the President is "the most democratic and politically accountable official in Government." *Seila Law*, 140 S. Ct. at 2203. To the extent the President's priorities are unpopular, it is not necessary to wait for him to be voted out of office or impeached. Art. I, § 2, cl. 5. He also faces political opposition from those who favor stronger enforcement. In addition, the President could also face these pressures if he is attacked for *excessive* enforcement of environmental laws. But no private group faces such insistent pressures. The Sierra Club, for example, is not troubled if its action provokes strong opposition from large segments of the nation. So long as it can bolster its political base and increase its financial support, it will pursue enforcement actions that are tailored to its own constituency rather than the public.

**2. *The steady administration of the laws.*** Citizen suits also make it impossible for the President to administer the enforcement of the Clean Air Act consistently. The United States may decide that some circumstances justify nonenforcement across the board. *See, e.g.*, EPA, *COVID-19 Implications for EPA's Enforcement and Compliance Assurance Program* (Mar. 26, 2020). But that

9

judgment can be undermined by private interest groups if given the power to initiate litigation, which the government cannot limit unless it chooses to intervene in lawsuits that should never have been brought in the first place. In all scenarios, private citizen suits necessarily skew toward more vigorous public enforcement—a matter over which the executive, either up or down, should have exclusive control.

II. **ARGUMENTS TO THE CONTRARY ARE UNPERSUASIVE.**

   A. **Congress's Power to Create Private Rights Does Not Justify Citizen Suits.**

Lower courts that have upheld citizen suit provisions against an Article II challenge have said that Congress has inherent authority "to create a private right of action under a statute, so as to encourage private enforcement of the duties set forth under the statute." *N. Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 556 (E.D.N.C. 2001). This reasoning sweeps too broadly.

Rights of action may be "divided into private rights and public rights." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1623 (2020) (Thomas, J., concurring). " 'Private rights' are rights 'belonging to individuals, considered as individuals.' " *Spokeo*, 136 S. Ct. at 1551 (Thomas J., concurring) (quoting 3 Blackstone, *supra* at *2). Public rights, by contrast, are rights "that involve duties owed 'to the whole community, considered as a community, in its social aggregate capacity.' " *Spokeo*, 136 S. Ct. at 1551 (quoting 4 Blackstone*, supra* at *5). As relevant here, public rights include the right to "general compliance with regulatory law," like the Clean Air Act. *Id.* (quoting Woolhandler & Nelson, *supra* at 693).

10

It is critical to note that only the enforcement of public rights involves an exercise of "executive Power." Thus, Congress may create new personal rights enforceable by private parties, like the right to be free of race or sex discrimination in employment. 42 U.S.C. § 2000e–2(a)(1). On the other hand, Congress may not vest "responsibility for conducting civil litigation in the courts of the United States *for vindicating public rights*" in private persons. *Buckley*, 424 U.S. at 140 (emphasis added).

But because citizen suits purport to allow private litigants to remedy violations of public rights, ordinary Article III standing principles are routinely stretched to their outer limits in settlement agreements. Indeed, nothing in the side settlement here demonstrates Sierra Club has met the requirements for citizen standing under *Lujan v. Defenders of Wildlife*, 504 U.S. at 555, 560–61 (1992).

### B. *Qui Tam* Litigation Does Not Justify Citizen Suits.

Advocates of citizen suits often defend their constitutionality by reference to *qui tam* suits. This inapt comparison cannot save citizen suits.

The constitutionally of *qui tam* suits under Article II is open to question.[4] But even presuming their constitutionality, *qui tam* suits, at least under the False

---

[4] *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000) ("[W]e express no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the 'take Care' Clause of § 3."). *See also Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 751 (5th Cir. 2001) (en banc) (holding that *qui tam* suits do not violate Article II); *id.* at 767–768 (Smith, J., dissenting) (arguing that *qui tam* suits violate Article II).

Claims Act, are distinguishable, because the United States retains significant supervision and control over *qui tam* litigation.

Under the False Claims Act, a private person (known as a relator) may bring suit "for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). The relator's complaint must be filed under seal and served upon the United States. *Id.* § 3730(b)(2). The government then has 60 days, subject to extension, to decide whether to intervene and take over the suit. *Id.* § 3730(b)(2) and (3). If the United States intervenes in the suit, "the action shall be conducted by the Government." *Id.* § 3730(b)(4)(A). In that circumstance, the government "shall have the primary responsibility for prosecuting the action." *Id.* § 3730(c)(1). If it has intervened, the government may file its own complaint or may amend the relator's complaint to add or alter claims. *Id.* § 3731(c). Even if the government declines to intervene, it may overrule a relator's proposed dismissal or settlement of an action, or even dismiss or settle the action over the relator's objection. *Id.* § 3730(b)(1), (c)(2)(A), (c)(2)(B). Because the "president exercises ultimate control over ultimate control over these actions" *qui tam* suits "may not be constitutionally problematic at all." Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 1701, 1708 (2005).

None of this supervision is present in citizen suits. Even if the government intervenes in these actions, it does not gain control over the litigation or settlement, nor may the President or his subordinate officers unilaterally dismiss the citizen suit. Such suits thus usurp core executive power.

12

## CONCLUSION

For the foregoing reasons, the Court must reject Sierra Club's separate settlement agreement and dismiss Sierra Club's complaint with prejudice.

July 30, 2020

Andrew F. Fink III
FINK & FINK PLLC
320 N. Main St., Ste. 300
Ann Arbor, MI 48104
734-994-1077
Andrew.fink@finkandfink.com

Respectfully submitted,

<u>/s/ T. Elliot Gaiser</u>
C. Boyden Gray*
Jonathan Berry*
James R. Conde*
T. Elliot Gaiser
   *Counsel of Record*
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
gaiser@boydengrayassociates.com

*\*Not admitted to this Court.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

<div style="text-align:right">

*s/T. Elliot Gaiser*
T. Elliot Gaiser
D.C. Bar ID: 198293
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
gaiser@boydengrayassociates.com

</div>