## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

and

SIERRA CLUB,

      Intervenor-Plaintiff,

      v.

DTE ENERGY COMPANY AND
DETROIT EDISON COMPANY,

      Defendants.

Civil Action No.
2:10-cv-13101-BAF-RSW

Judge Bernard A. Friedman

Magistrate Judge R. Steven Whalen

## SIERRA CLUB'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENTER AGREEMENT BETWEEN SIERRA CLUB AND DTE OR, IN THE ALTERNATIVE, NOTICE OF THAT AGREEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... ii

KEY AUTHORITIES ............................................................ vi

INTRODUCTION .................................................................1

ARGUMENT .......................................................................2

I.   JUDICIAL REVIEW OF SIERRA CLUB'S AND DTE'S PRIVATE
     SETTLMENT AGREEMENT IS NOT REQUIRED. ...........................2

II.  IF THE COURT DECIDES JUDICIAL APPROVAL IS
     NECESSARY, IT SHOULD GRANT SIERRA CLUB'S MOTION TO
     ENTER...................................................................................3

         A.   US Enforcement Discretion Does Not Bar the Agreement......4

         B.   The Agreement Satisfies All Requirements for Settlement. ....6

         C.   The Mitigation Relief Complies with the Clean Air Act. ........8

         D.   The Miscellaneous Receipts Act (MRA) Does Not Apply to
              the Relief Set Forth in the Agreement....................................10

III. ARTICLE III STANDING REQUIREMENTS ARE SATISFIED IN
     THIS PROCEEDING. ..........................................................11

IV.  NEITHER THE AGREEMENT NOR THE CLEAN AIR ACT'S
     CITIZEN SUIT PROVISION RAISES CONSTITUTIONAL ISSUES.
     .......................................................................................15

CONCLUSION ...................................................................19

## Table of Authorities

**Page(s)**

**Cases**

*In re Aiken Cty.*,
725 F.3d 255 (D.C. Cir. 2013) ................................................................ 17

*AINS, Inc. v. United States*,
56 Fed. Cl. 522 (2003), *aff'd* 365 F.3d 1333 (Fed. Cir. 2004) ............. 10

*Atl. States Legal Found., Inc. v. Buffalo Envelope*,
823 F. Supp. 1065 (W.D.N.Y. 1993) ...................................................... 18

*Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*,
583 F.3d 948 (6th Cir. 2009) ................................................................... 3

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &
Human Res.*,
532 U.S. 598 (2001) ................................................................................. 3

*Buckley v. Valeo*,
424 U.S. 1 (1976) ........................................................................... 16, 18

*Capitol Records, Inc. v. Alaujan*,
626 F. Supp. 2d 152 (D. Mass. 2009) ............................................. 15, 18

*Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*,
652 F. Supp. 620 (D. Md. 1987) ............................................................ 17

*Citizens for Responsibility & Ethics in Wash. v. Am. Action Network*,
410 F. Supp. 3d 1 (D.D.C. 2019) ........................................................... 15

*Davis v. Passman*,
442 U.S. 228 (1979) ............................................................................... 18

*Del. Valley Toxics Coal. v. Kurz-Hastings, Inc.*,
813 F. Supp. 1132 (E.D. Pa. 1993) ....................................................... 18

*Dep't of Transp. v. Ass'n of Am. R.R*,
135 S. Ct. 1225 (2015) ........................................................................... 19

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
   824 F.3d 507, 529 n.18 (5th Cir. 2016) ................................................................6

*Goethel v. Pritzker*,
   No. 15-CV-497-JL, 2016 WL 4076831 (D.N.H. July 29, 2016),
   *aff'd sub nom. Goethel v. U.S. Dep't of Commerce*, 854 F.3d 106
   (1st Cir. 2017) ..............................................................................................10, 11

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
   484 U.S. 49 (1987)........................................................................................5, 6

*Heckler v. Chaney*,
   470 U.S. 821 (1985).........................................................................................17

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020)................................................................................12, 13

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of
   Cleveland*,
   478 U.S. 501 (1986)...............................................................................7, 8, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................13

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
   453 U.S. 1 (1981)............................................................................................18

*In re: Motor Fuel Temperature Sales Practices Litig.*,
   872 F.3d 1094 (10th Cir. 2017) .........................................................................12

*N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*,
   200 F. Supp. 2d 551 (E.D.N.C. 2001) ..........................................................16, 17

*Nat. Res. Def. Council, Inc. v. Outboard Marine Corp.*,
   692 F. Supp. 801 (N.D. Ill. 1988)......................................................................17

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) .......................................................................7

*Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals
   Inc.*,
   913 F.2d 64 (3d Cir. 1990) ................................................................................9

iii

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. ___, No. 19-7, 2020 WL 3492641 (2020) ....................................16, 18

*Sierra Club v. Elec. Controls Design, Inc.*,
    909 F.2d 1350 (9th Cir. 1990) ...............................................................2, 8, 9, 11

*Sierra Club v. Franklin Cty. Power of Ill., LLC*,
    No. 05-CV-4095-JPG, 2006 WL 8455938 (S.D. Ill. 2006) ..............................16

*Sierra Club v. U.S. EPA*,
    793 F.3d 656 (6th Cir. 2015) ..............................................................................13

*United States v. Akzo Coatings of Am., Inc.*,
    949 F.2d 1409 (6th Cir. 1991) ..........................................................................7, 8

*United States v. Charles George Trucking, Inc.*,
    34 F.3d 1081 (1st Cir. 1994)..................................................................................8

*United States v. Jones & Laughlin Steel Corp.*,
    804 F.2d 348 (1986)..............................................................................................12

*US v. Am. Elec. Power Serv. Corp.*,
    137 F. Supp. 2d 1060 (S.D. Ohio 2001) ............................................................16

**Statutes**

31 U.S.C. § 3302 ........................................................................................................10

42 U.S.C. ......................................................................................................................3

42 U.S.C. § 7401(b)(1).................................................................................................8

42 U.S.C. § 7604 ..........................................................................................................9

42 U.S.C. § 7604(a) .........................................................................................8, 10, 18

42 U.S.C. § 7604(b)(1)(B) .........................................................................................18

42 U.S.C. § 7604(c)(3)..................................................................................................3

42 U.S.C. § 7604(g) .........................................................................................9, 10, 19

**Rules**

Fed. R. Civ. P. 41(a)(2) ................................................................................3

**Constitutional Provisions**

U.S. Const. Art. II, § 1, cl. 1 ..........................................................15, 16, 19

U.S. Const. Art. III, § 2, cl. 1 ............................................ 11, 12, 13, 14, 15, 18, 19

# KEY AUTHORITIES

1. *Davis v. Passman*, 442 U.S. 228 (1979)

2. *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094 (10th Cir. 2017)

3. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020)

4. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986)

5. *Sierra Club v. Elec. Controls Design, Inc.*, 909 F.2d 1350 (9th Cir. 1990)

6. *Sierra Club v. U.S. EPA*, 793 F.3d 656 (6th Cir. 2015)

7. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991)

8. *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.,* 200 F. Supp. 2d 551 (E.D.N.C. 2001)

## INTRODUCTION

In objecting to the Agreement between DTE Energy and Sierra Club, the US attempts to create a mountain out of a molehill. Sierra Club filed the Agreement solely to comply with the terms of the US-endorsed Consent Decree. Under well-established precedent, however, the Agreement qualifies as a private settlement that the Court need not enter or approve in order to resolve this case. In addition, the Court could find that the entry of the Consent Decree serves as a final judgment, ECF No. 282 at ¶ 126, fully resolving the case, or that the US's objection is moot because DTE has made clear its commitment to the terms of the Agreement regardless of the outcome here. Sierra Club is also amenable to simply withdrawing its motion and dismissing its action without entry of the Agreement.

The US nevertheless persists with a misguided objection that ignores the distinction between what a court can order at trial versus what private parties can agree to in settlement, misconstrues standing requirements, and conjures up Constitutional issues where there are none. All the while, the US ignores that the Agreement, which provides additional air quality and public health benefits to Southeast Michigan communities that have been heavily impacted by the pollution at issue in this case, advances the goals of the Clean Air Act. As such, if the Court decides judicial approval of the Agreement is needed, it should grant that approval.

# ARGUMENT

## I.   JUDICIAL REVIEW OF SIERRA CLUB'S AND DTE'S PRIVATE SETTLMENT AGREEMENT IS NOT REQUIRED.

The US wrongly argues that the Agreement must undergo judicial review even though neither DTE nor Sierra Club is asking the Court to enforce, or otherwise maintain jurisdiction over, the private contract reflected therein.

Broadly proclaiming it has "every" court to consider the matter on its side, the US cites to two unpublished district court orders to claim that the Agreement is a "consent judgment" subject to judicial review. US Br. at 5-6. Yet neither order addresses the meaning of "consent judgment" in any depth. One provides no reasoning, just a bare statement. US Br. Ex. 2. The second retains jurisdiction out of concern that the settlement awarded excessive attorney's fees and violated previous court orders. US Br. Ex. 1 at 3-4. Those concerns are not at issue here: the Agreement does not grant attorney's fees or any financial benefit to Sierra Club.[1]

Attempting to buttress a thin argument, the US next resorts to *Black's Law Dictionary* for a circular argument that fails. While a "consent judgment," is "[a] settlement that becomes a court judgment when the judge sanctions it," US Br. at 6, citing *Judgment* (2) (11th ed. 2019), the US ignores that the Court need not

---

[1] The US's remaining case addresses a proposed consent decree and so the need for judicial review was never in question. *Sierra Club v. Elec. Controls Design, Inc.*, 909 F.2d 1350 (9th Cir. 1990).

2

"sanction" the Agreement because it does not contemplate (and its parties do not seek) federal enforceability or continuing federal court jurisdiction. These are crucial substantive differences that distinguish the Agreement from a consent judgment, and not, as the US suggests, mere semantics. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 n.7 (2001) ("Private settlements do not entail the judicial approval and oversight involved in consent decrees."). Because the Agreement is not a consent judgment, the 42 U.S.C. § 7604(c)(3) requirement relied on by the US to object does not apply.

Finally, although the US cites Fed. R. Civ. P. 41(a)(2) to argue that dismissal here must be by court order, "the purpose of Rule 41(a)(2) is to protect the nonmovant [typically a defendant] . . . from unfair treatment." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009). The US can suffer no "legal prejudice" from the Agreement—and therefore has no grounds to object under Rule 41(a)(2)—when such agreement in no way implicates the rights of the US and when the US has <u>already</u> submitted, and the Court has already signed, a Consent Decree resolving the US's own claims in their entirety.

## II.    IF THE COURT DECIDES JUDICIAL APPROVAL IS NECESSARY, IT SHOULD GRANT SIERRA CLUB'S MOTION TO ENTER.

The US raises a host of meritless objections to the Agreement. None bar the Agreement's entry. First, the US complains that the Agreement threatens to "override" the government's enforcement discretion, ignoring that the Agreement

3

is consistent with and supplemental to the US-approved Consent Decree and thus no threat to the US's preferred relief. Second, by fundamentally failing to distinguish settlements from court orders after a finding of liability, the US misconstrues the law to assert a bar on the scope of settlement that does not exist.

### A.    US Enforcement Discretion Does Not Bar the Agreement.

The US contends that the Agreement interferes with its broad enforcement discretion because the Agreement represents "second-guessing" that threatens to "hijack" or "veto" the government's preferred relief and "compel a consent decree on [its] own terms." *See* US Br. at 8-9. However, the US has not identified any conflict between the Consent Decree and the Agreement.

In fact, the Agreement is <u>entirely</u> consistent with the Consent Decree. The Consent Decree requires that DTE reduce emissions at each of its coal-fired power plants, pay a civil penalty of $1.8 million, and perform an environmental mitigation project that replaces municipal or school buses with "lower-emitting vehicles." US Br. at 1-2; ECF No. 282 at ¶¶ 7-39 & App. A. The Agreement, in turn, requires that DTE follow through on its long-announced plans to retire (rather than *retrofit, refuel, repower, or retire*, as provided in the Consent Decree)[2] three coal plants and use electric (rather than simply *lower-emitting*)[3] buses in the

---

[2] *Compare* ECF No. 267-1 at ¶ 4, *with* ECF No. 282 at ¶¶ 7, 43.
[3] *Compare* ECF No. 267-1 at App. A ¶ 2, *with* ECF No. 282 at App. A ¶ 2.

Consent Decree's mitigation project. Without altering the Consent Decree's $1.8 million civil penalty, the Agreement further improves air quality in communities hard hit by DTE's emissions by requiring that DTE (1) carry out an energy efficiency / energy use reduction project at a community center and (2) fund at least $2 million in environmental mitigation projects in such communities. ECF No. 267-1 at App. A. In short, nothing in the Agreement conflicts with the Consent Decree or hinders the US's ability to obtain its desired relief.

The US attempts to legitimize its dislike of a settlement that advances the goals of the Clean Air Act by cherry-picking provocative language from inapposite cases animated by concerns irrelevant here. Three of the US's five cases in support concern intervenors objecting to US consent decrees. US Br. at 8-9 (*citing US v. Lexington-Fayette Urban Cty. Gov't*; *EPA v. Cty. of Green Forest, Ark.*; and *US v. District of Columbia*). But Sierra Club does not object to the Consent Decree—it is a party to it. The US's two remaining cases address a concern first raised in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*:

> Suppose . . . that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit, months or years later, in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably.

484 U.S. 49, 60-61 (1987); *see* US Br. at 9 (citing to discussions of *Gwaltney* in

5

*Ellis v. Gallatin Steel Co.* and *Oppose Pollution, Inc. v. Heritage Grp.*). Because DTE has already agreed to the Consent Decree and the Agreement, there is no threat that the Agreement would discourage DTE from agreeing to the US's terms, or that Sierra Club could later sue DTE on the claims at issue here.[4] The US's mere—and inexplicable—dislike of additional air quality and public health benefits is not an appropriate basis upon which to reject the Agreement.

**B.    The Agreement Satisfies All Requirements for Settlement.**

The US also claims that the Agreement is barred by statutory limits on a court's ability to fashion relief. However, the Agreement fits squarely within the bounds of permissible settlement under Supreme Court precedent and no statute bars its entry. As even the US concedes, US Br. at 10, courts have long held that settlements may contain broader relief than a court could have awarded at trial. As the Supreme Court has held:

> [I]n addition to the law which forms the basis of the claim, the parties' consent animates the legal force of a consent decree. Therefore, a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial.

---

[4] *See also Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 529 n.18 (5th Cir. 2016) (rejecting party's reliance on *Gwaltney* for claim that allowing citizens to seek relief the government "chose to forgo" would curtail enforcement discretion because quote came from a discussion finding a bar on suit for wholly past violations, that bar was superseded by the 1990 Clean Air Act Amendments, and thus the claim "appears to no longer apply in [Clean Air Act] citizen suits").

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478

U.S. 501, 525 (1986) (citations omitted); *see also Pelzer v. Vassalle*, 655 F. App'x

352, 362 (6th Cir. 2016). Per *Local No. 93*,

> a consent decree must spring from and serve to resolve a dispute within
> the court's subject-matter jurisdiction. . . . [C]onsistent with this
> requirement, the consent decree must "com[e] within the general scope
> of the case made by the pleadings," and must further the objectives of
> the law upon which the complaint was based.

478 U.S. at 525 (citations omitted). Public policy favors voluntary settlement and

courts should approve settlements so long as they are fair, reasonable, adequate,

and consistent with the statute under which a case was brought. *United States v.*

*Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435-36 (6th Cir. 1991).

The Agreement would easily meet these standards even if it were a consent

decree and not a private settlement. It is fair, reasonable, adequate, and consistent

with the Clean Air Act. *See* Sierra Club Mem. at 10-12.[5] The Agreement "spring[s]

from and serve[s] to resolve" Sierra Club's claims under the Clean Air Act, a

matter firmly within the court's subject matter jurisdiction. ECF No. 267-1 at ¶ 14.

The Agreement comes within the general scope of the pleadings by providing

additional air quality and public health benefits to communities heavily impacted

by the air pollution at issue in this proceeding[6] and addressed by the Consent

---

[5] The US appears to concede as much. Aside from concerns regarding Clean Air
Act consistency (see Section II.C), the US does not address the *Akzo* standard.
[6] *See, e.g.*, Leonard Decl. at ¶¶ 17-20 (Ex. 1).

7

Decree.[7] The Agreement thus also furthers the objective of the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).[8] Finally, as explained below and contrary to the US's protestations, the Agreement complies with all applicable laws. *Cf. Local No. 93*, 478 U.S. at 526. The Agreement therefore satisfies the *Local No. 93* and *Akzo* criteria and thus faces no bar to entry.

### C.    The Mitigation Relief Complies with the Clean Air Act.

The US's claim that the Agreement violates the Clean Air Act because its mitigation relief is not legally permissible confuses settlements with court awards following a finding of liability. The US notes that 42 U.S.C. § 7604(a) authorizes district courts to enforce emission standards and limitations and apply civil penalties, while § 7604(g) provides that a court may direct no more than $100,000 of such penalties to mitigation projects. Neither provision, however, speaks to— much less limits—the relief parties may compromise for in settlement. *Cf. Local*

---

[7] *Cf. United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1090 (1st Cir. 1994) ("though not expressly set out in the pleadings," claims nevertheless "[fell] within their general scope"); *Elec. Controls Design*, 909 F.2d at 1352, 1355 (payments to private organizations "to maintain and protect water quality in Oregon" fell within scope of pleadings).

[8] Moreover, the Agreement does not provide any pecuniary benefit to Sierra Club, which will not receive attorney's fees or private payouts, will not have a seat on the committee selecting community environmental projects, and cannot directly benefit from the projects selected by the committee. *See* ECF 267-1 at A-1 – A-2.

*No. 93*, 478 U.S. at 526 ("[I]nasmuch as the limits placed by § [7604] on the remedial authority of a federal court—whatever these may be—are not implicated by voluntary agreements, there is no conflict with or violation of § [7604] when a federal court enters a consent decree that provides such relief."). The US's related contention that the Agreement would deprive § 7604(g) of meaningful effect, US Br. at 11, fails because while not applicable to settlements, § 7604(g) continues to apply to penalties assessed by courts under subsection (a).[9]

The US nevertheless claims that mitigation relief—even when set forth in settlements—qualifies as a penalty subject to § 7604(g). US Br. at 14. Incredibly, to support this argument the US points to the Supreme Court's purported definition of "penalty" as any "'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" US Br. at 14 (*quoting Kokesh v. SEC*, 137 S. Ct. 1635, 1642 (2017)). Yet the mitigation relief in the Agreement is not <u>imposed by any government</u>; DTE has voluntarily committed to it. The US likewise fails to support its false dichotomy between penalties

---

[9] The US also suggests that two cases finding that non-penalty payments need not be paid to the Treasury have been superseded by the enactment of § 7604(g). US Br. at 16. Not so. By its own terms, § 7604(g) only applies to "penalties received under subsection (a)." § 7604(g) does not address either what qualifies as a penalty or where non-penalty payments agreed to in settlement may go. Moreover, because both cases agree that penalties—if that is what the payments actually are—must be paid to the Treasury, they are fully consistent with § 7604(g). *See Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 81-82 (3d Cir. 1990); *Elec. Controls Design, Inc.*, 909 F.2d at 1354.

9

(subject to § 7604(g)) and private damages (which courts may not award under

§ 7604(a)). US Br. at 16. Other than quoting language from an overturned 1989

District of Oregon opinion, the US provides no explanation for classifying the

Agreement mitigation projects—which will ameliorate the very same harms that

lie at the heart of this court action, *see* Leonard Decl. at ¶¶ 17-20—as either

penalties or court-awarded damages when they are plainly neither.

### D. The Miscellaneous Receipts Act (MRA) Does Not Apply to the Relief Set Forth in the Agreement.

The US's claim that the Agreement violates the MRA (31 U.S.C. § 3302)

likewise fails. "All the [MRA] literally requires is that miscellaneous money

received by government officials be deposited in the general Treasury." *AINS, Inc.*

*v. United States*, 56 Fed. Cl. 522, 539 (2003), *aff'd* 365 F.3d 1333 (Fed. Cir. 2004).

Because the Agreement does not provide for the receipt of money by government

officials, the MRA does not apply. *Cf. Goethel v. Pritzker*, No. 15-CV-497-JL,

2016 WL 4076831, at *7 (D.N.H. July 29, 2016), *aff'd sub nom. Goethel v. U.S.*

*Dep't of Commerce*, 854 F.3d 106 (1st Cir. 2017) (Industry funding requirement in

agreement that "does not provide for—and is not alleged to provide for—the

receipt of money by government officials . . . does not run afoul of the [MRA].").

Nor does the fact that the Agreement was forged during the course of a federal

lawsuit magically render all relief therein "public money."[10]

Ultimately, the US's MRA theory suffers from the same fatal flaw as much of the rest of its argument. Because the Agreement is a settlement and not a court award following a finding of liability, statutory limits on what a court can award do not apply here. As such, DTE and Sierra Club were free to pursue alternative bases for settlement, including the (non-penalty) mitigation projects described therein. And since the mitigation projects of the Agreement neither contemplate nor necessitate federal involvement, the MRA does not apply.[11]

## III.   ARTICLE III STANDING REQUIREMENTS ARE SATISFIED IN THIS PROCEEDING.

The US next asserts that the Court cannot approve the Agreement because the Sierra Club purportedly "lacks standing to obtain the additional relief" set forth therein. US Br. at 19-22. The US's standing objection fails.

First, the US's objection is based on the contention that Sierra Club "must show that it has standing to obtain *all* forms of relief sought in its proposed agreement." *Id.* at 20. The US asserts that the Sierra Club cannot do so because the

---

[10] *Compare* US Br. at 17, *with Goethel*, 2016 WL 4076831, at *7 (dismissing "semantic argument" that payments at issue were "'money for the government' because monitoring is a 'government program'").

[11] *See Elec. Controls Design, Inc.*, 909 F.2d at 1355 ("While it is clear that a court cannot order a defendant in a citizens' suit to make payments to an organization other than the U.S. treasury, this prohibition does not extend to a settlement agreement whereby the defendant does not admit liability and the court is not ordering non-consensual monetary relief.").

provisions in the Agreement purportedly would not redress the harms that Sierra Club members suffer from the DTE air pollution at issue here. *Id.* at 21-22. The US, however, identifies no support for its novel claim that standing is based on whether the relief provided in a settlement, as opposed to the relief sought in the litigation being settled, would redress the plaintiff's injuries.[12] The only case the US cites for this proposition—*United States v. Jones & Laughlin Steel Corp.*—has nothing to do with standing or redressability. The only relevant case we located declined to find that relief in a settlement could "retroactively dissolve the plaintiff's Article III standing to bring—and thus a federal court's jurisdiction to hear—that plaintiff's claims in the first place." *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1114 (10th Cir. 2017) ("[W]e know of no authority that would support this argument. And [defendant] cites none.").

Second, the US's standing objection fails because Article III requirements are satisfied here. Supreme Court precedent provides that "at least one party must demonstrate Article III standing for each claim for relief." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). Here, the claims raised by Sierra Club were also raised by the US, and the relief sought in the litigation by both parties was identical. There is no dispute that the

---

[12] Even if redressability were tied to settlement relief, the Agreement would alleviate air quality and public health harms from DTE air pollution experienced by Sierra Club members in impacted communities. *See* Leonard Decl. at ¶¶ 17-20.

US had standing to pursue this litigation. As such, the Court need not inquire into Sierra Club's independent Article III standing. *Id.* (court did not need to inquire into intervenor's standing to pursue appeal where US had standing to invoke appellate jurisdiction and sought same relief as intervenor).

Regardless, Sierra Club satisfies the injury-in-fact, causation, and redressability prongs of Article III standing. *Sierra Club v. U.S. EPA*, 793 F.3d 656, 661-62 (6th Cir. 2015). Injury-in-fact is demonstrated in the attached declarations from four Sierra Club members[13] recounting how air pollution from Monroe and other DTE plants leads them to avoid outdoor running, biking, or walking on bad air quality days, hinders their ability to care for their garden, and causes breathing difficulties especially at night.[14] *Id.* at 663 (asserted aesthetic and recreational injuries from reduced outdoor activity and potential physical injury from respiratory symptoms were cognizable). Such injuries are "fairly traceable" to pollution from Monroe and other DTE plants that impacts the areas where each standing declarant lives,[15] and would be redressed by cessation of illegal air

---

[13] Because this proceeding has not progressed to the summary judgment or trial stage, there has not previously been an occasion necessitating that Sierra Club aver or prove facts in support of its standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As such, if this Court decides that it must inquire into Sierra Club's standing, consideration of the attached declarations is appropriate.

[14] Barker Decl. at ¶¶ 9-10 (Ex. 2); Morris Decl. at ¶¶ 11-12 (Ex. 3); Leonard Decl. at ¶ 14; Lindberg Decl. at ¶¶ 12-15 (Ex. 4).

[15] Barker Decl. at ¶¶ 1, 9; Morris Decl. at ¶¶ 1,9; Leonard Decl. at ¶¶ 13-15; Lindberg Decl. at ¶¶ 9-10.

pollution, installation of pollution controls, and other emission reductions.[16]

The US's suggestion, Br. at 20-21, that Sierra Club could not establish Article III standing is further undermined by the US's 2010 motion for a preliminary injunction. ECF No. 8. As the US explained, unpermitted pollution from Monroe Unit 2 "harm[ed] the health of people downwind of the plant [and] caus[ed] premature death, heart attacks, and respiratory problems, among other health effects." ECF No. 8 at 26. Based on the "scientific consensus" that air pollution harms human health, *id.*, the US's motion was supported by the expert declaration of epidemiologist Dr. Joel Schwartz, who found that unpermitted pollution from Monroe caused 90 premature deaths per year. ECF No. 8-23 at ¶¶ 8, 120. The US also submitted an expert declaration from air quality modeler Michael Chinkin, who found that excess air pollution from Monroe Unit 2 would have significant air quality impacts throughout Monroe and Wayne Counties, which is where each of Sierra Club's standing declarants live. ECF No. 8-2 at ¶ 18 and Figures 13-14. Mr. Chinkin also found that excess emissions from other DTE plants, including Trenton Channel and Belle River, would combined have similar significant impacts to those counties. *Id.* at ¶ 19 and Figure 17. Finally, the US contended that these harms could be redressed by either shutting Monroe Unit 2

---

[16] Barker Decl. at ¶ 11; Morris Decl. at ¶ 12; Leonard Decl. at ¶ 16-17; Lindberg Decl. at ¶18.

down until it complied with the Clean Air Act, or by DTE reducing emissions from other coal plants until modern pollution controls were installed on Monroe. ECF No. 8 at 29-30. In short, the US's motion and supporting declarations demonstrate that the air pollution at issue in this proceeding causes injury to individuals, is fairly traceable to Monroe and other DTE coal units, and would be redressed through reducing emissions from those units. As such, the US's 2010 motion further bolsters the Sierra Club's demonstration that it has Article III standing.

## IV.   NEITHER THE AGREEMENT NOR THE CLEAN AIR ACT'S CITIZEN SUIT PROVISION RAISES CONSTITUTIONAL ISSUES.

Citing to dissents and concurrences from a few Justices suggesting (without deciding) that citizen suit provisions may conflict with the separation of powers doctrine, the US theorizes that approval of the Agreement would unnecessarily "raise Constitutional issues" under Article II that should be avoided. US Br. at 22-25. Amici take this theory a step further by contending that the Clean Air Act citizen suit provision itself is unconstitutional. Amici Br. at 2, 5-7. The US and Amici, however, both fail to identify any cases in which a citizen suit, much less settlement of such a suit, has been found to interfere with the separation of powers or Article II. They also neglect to mention the multitude of decisions rejecting the constitutional challenges to citizen suits that the US and Amici raise here.[17]

---

[17] *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Am. Action Network*, 410 F. Supp. 3d 1, 26-28 (D.D.C. 2019); *Capitol Records, Inc. v. Alaujan*, 626 F.

Ignoring this weight of authority, the US insists that the Agreement conflicts with the President's duty to "take Care that the Laws be faithfully executed," U.S. Const. Art. II, § 1, cl. 1, by "permitting a mere plaintiff-intervenor to override the Executive Branch" by settling a citizen suit for additional relief beyond what the US agreed to. US Br. at 23-24. Amici similarly proclaim that Clean Air Act citizen suits inherently conflict with Executive authority. Amici Br. at 5-7. As the recently entered Consent Decree demonstrates, however, nothing in the Agreement "override[s]" or conflicts with the US's ability to pursue and settle its claims as it sees fit. As such, there is no actual or potential interference with Executive authority from Sierra Club's citizen suit intervention or settlement thereof.

The cases on which the US and Amici rely—*Seila Law LLC v. Consumer Financial Protection Bureau* and *Buckley v. Valeo*—do not demonstrate otherwise. Both deal with the separation of powers between branches of government, finding that Congress had improperly sought to restrict or aggrandize to itself Executive enforcement authority in creating the Consumer Financial Protection Bureau and the Federal Election Commission, respectively. Neither case addresses citizen suits, much less suggests that a private party's pursuit and settlement of a statutory

---

Supp. 2d 152, 154 (D. Mass. 2009); *Sierra Club v. Franklin Cty. Power of Ill., LLC*, No. 05-CV-4095-JPG, 2006 WL 8455938, at *10 (S.D. Ill. 2006); *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 555-56 (E.D.N.C. 2001) (collecting six cases); *US v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060, 1065 (S.D. Ohio 2001).

claim somehow impedes the Executive's enforcement authority.[18]

The US and Amici invite this Court to expand the separation of powers doctrine to restrict private citizens rather than just branches of government. They do not, however, identify any precedent for doing so, nor do they mention that numerous courts have declined such invitation. *See, e.g.*, *N.C. Shellfish Growers*, 200 F. Supp. 2d at 556 ("Defendant mistakenly applies the doctrine of separation of *governmental* powers to private citizens."); *Nat. Res. Def. Council, Inc. v. Outboard Marine Corp.*, 692 F. Supp. 801, 815 (N.D. Ill. 1988) (Separation of powers challenge to citizen suit provision "derails" because of "its exclusive reliance on cases that have interpreted the separation of powers requirement *as between branches of government*."); *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 623 (D. Md. 1987) (rejecting "fundamentally flawed" contention that "Supreme Court cases which address separation of powers vis-a-vis Congress and the Executive, not private persons and the Executive" render citizen suit provisions unconstitutional).[19]

---

[18] Two other cases relied on by the US and/or Amici—*Heckler v. Chaney* and *In re Aiken Cty.*—are even further off base. *Heckler* involved the reviewability of an agency's decision not to take enforcement action. *In re Aiken Cty.* held that the Executive erred by "defying a law enacted by Congress." 725 F.3d 255, 266 (D.C. Cir. 2013). The "eloquent" language quoted by Amici, Br. at 19, was dicta that was not joined by the other judges on that panel. *Aiken Cty.*, 725 F.3d at 261 n.2.

[19] Amici's stated interest, Br. at 8-9, in seeing that our nation's environmental laws are "underenforce[d]" is irrelevant as citizen suits do not dictate when or against whom the Executive decides to enforce the law. In fact, in this proceeding, Sierra

The US and Amici's position is also counter to the fact that "[s]tatutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner." *Davis v. Passman*, 442 U.S. 228, 241 (1979). In establishing the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), including the intervention as a matter of right provision that Sierra Club proceeded under in this case, § 7604(b)(1)(B), Congress was simply taking the "entirely appropriate" step of determining by whom and in what manner various statutory provisions of the Clean Air Act may be enforced. *Davis*, 442 U.S. at 241; *see also Capitol Records, Inc.*, 626 F. Supp. 2d at 154 (relying on *Davis* to reject constitutional challenge to a citizen suit provision); *Atl. States Legal Found., Inc. v. Buffalo Envelope*, 823 F. Supp. 1065, 1073 (W.D.N.Y. 1993) (same); *Del. Valley Toxics Coal. v. Kurz-Hastings, Inc.*, 813 F. Supp. 1132, 1138 (E.D. Pa. 1993) (same). Nothing in *Seila Law* or *Buckley* leads to a different conclusion.[20]

---

Club intervened in an enforcement action that the US had already brought. To the extent that Amici are worried about the ability of private plaintiffs to protect their rights against being harmed by illegal air pollution, that is a matter for Congress which created the citizen suit provisions, not the Courts.

[20] Citing to a single concurring Justice, Amici contend that Congress' authority to create a private right of action extends only to "private rights" of individuals and not to "public rights" of the general population. Amici Br. at 10-11. But the need to ensure that individual private interests are at stake in a citizen suit is met by showing that Article III standing requirements are satisfied. *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16, (1981) ("citizen-suit provisions apply only to persons who can claim some sort of injury"). Amici's

The US's speculation that the Agreement conflicts with the Appropriations Clause and Private Non-Delegation doctrine similarly fails. US Br. at 24-25. The US provides no basis for its novel contention that the mitigation funds in the Agreement somehow count as an "appropriation of government money," *id.* at 24, and, as described in Sections II.C & II.D above, neither the MRA nor 42 U.S.C. § 7604(g) apply here. And with regards to non-delegation, the US cites to only a concurring opinion of one Justice in a case—*Department of Transportation v. Association of American Railroads*—that has nothing to do with citizen suits.[21]

## CONCLUSION

The Agreement, which does not seek federal enforcement or continuing Court jurisdiction, is a private settlement agreement that the Court does not need to enter and approve. If the Court decides otherwise, however, the Court should grant entry and approval for the reasons set forth above and in Sierra Club's opening Memorandum. Alternately, Sierra Club is amenable to simply withdrawing its motion, filed solely to comply with the terms of the US-endorsed Consent Decree.

Respectfully submitted this the 6th day of August 2020,

---

claim otherwise notwithstanding, Br. at 11, Article III standing requirements are satisfied in this proceeding. *See* Section III above.

[21] The US requested the opportunity to submit additional briefing on the Article II issues if the Court determines that such issues cannot be avoided. If that request is granted, Sierra Club respectfully requests the opportunity to reply to such briefing.

Shannon Fisk
Managing Attorney
Earthjustice
1617 John F. Kennedy Blvd.,
Suite 1130
Philadelphia, PA 19103
T: 215-717-4522
C: 215-327-9922
sfisk@earthjustice.org


Nicholas Leonard (P79283)
Great Lakes Environmental Law
Center
4444 Second Avenue
Detroit, MI 48201
313-782-3372
nicholas.leonard@glelc.org

*Counsel for Plaintiff-Intervenor
Sierra Club*

## CERTIFICATE OF SERVICE

I certify that this document was filed through the Court's ECF system on

August 6, 2020, which will cause copies to be sent to all counsel of record.

Shannon Fisk
*Counsel for Plaintiff-Intervenor*
*Sierra Club*