# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>and<br><br>SIERRA CLUB,<br>    Intervenor-Plaintiff,<br><br>v.<br><br>DTE ENERGY COMPANY and<br>DETROIT EDISON COMPANY,<br>    Defendants. | Civil Action No.<br>2:10-cv-13101-BAF-RSW<br><br>Judge Bernard A. Friedman<br><br>Magistrate Judge R. Steven Whalen |

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

**THE UNITED STATES' PROPOSED SUR-REPLY IN OPPOSITION TO SIERRA CLUB'S MOTION TO ENTER AGREEMENT BETWEEN SIERRA CLUB AND DTE OR, IN THE ALTERNATIVE, NOTICE OF THAT AGREEMENT**

Of Counsel:

SUSAN PARKER BODINE
*Assistant Administrator*
Office of Enforcement and
   Compliance Assurance

U.S. Environmental
Protection Agency

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
BRUCE S. GELBER
*Deputy Assistant Attorney General*
PATRICIA McKENNA
*Assistant Section Chief,*
   *Environmental Enforcement Section*
MICHAEL B. BUSCHBACHER
*Counsel to the Assistant Attorney General*

Environment & Natural Resources Div.
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 305-2075
michael.buschbacher@usdoj.gov

i

I.  **Sierra Club's New and Unsupported Arguments Should be Rejected.**

Sierra Club's Reply begins with three untimely and unexplained arguments. It contends (1) that that entry of the consent decree "fully resolve[s] [this] case," (2) that Sierra Club "is amenable to simply withdrawing its motion and dismissing its action without entry of the [side] Agreement," and (3) that this dispute "is moot because DTE has made clear its commitment to the terms of the [side] Agreement regardless of the outcome." Dkt. 289 at 1. Such "undeveloped argument[s]…raised for the first time in a reply brief" are improper and should be disregarded. *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 2016 WL 8257782, at *3 n.2 (E.D. Mich. Mar. 11, 2016); *see also Shannon v. State Farm Ins. Co.*, 2016 WL 3031383, at *4 (E.D. Mich. May 27, 2016); *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017).

In any event, the requirement that Sierra Club and DTE submit their side agreement to the Court for judicial review is baked into the consent decree, which sets forth a detailed process for resolving the parties' dispute regarding the legality of Sierra Club's side agreement; this process explicitly preserves the U.S.'s right to object. Dkt. 282 ¶ 121. Sierra Club should not be permitted to violate that agreement by withdrawing its motion. As this Court noted at its recent status hearing, "the Court has to decide th[e] issue[s]" raised in the U.S.'s response before Sierra Club's claims may be dismissed. Dkt. No. 388 at 8:7-9.

1

DTE's non-binding promise that it will perform its end of the proposed side agreement even if this Court determines that the relief violates the CAA does not change that conclusion. Mere promises cannot moot a case unless it is "absolutely clear" that the party will not go back on its word. *See United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968); *Sherwood v. Tennessee Valley Auth.*, 842 F.3d 400, 406 (6th Cir. 2016). And nothing in the record provides any basis for such certainty; on the contrary, the "commitment" appears to be a "made-for-litigation" tactic to avoid review, in violation of mootness principles and Sierra Club and DTE's contractual agreement with the U.S. that it be given the opportunity to litigate its objections before Sierra Club's claims can be resolved. *See* Dkt. 282 ¶ 121; *see also id.* ¶ 105 (Court retains jurisdiction to enforce compliance with consent decree); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (Under the All Writs Act, courts may enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.").

## II. This Court Should Deny Sierra Club's Motion to Enter.

1. *Judicial Review is Required.* Sierra Club contends—without any discussion of the text, structure, or purposes of the Act—that the CAA's judicial review requirements are a statutory Maginot Line that it can end run by renaming an

agreement a "private settlement" and foreswearing federal enforcement.[1] That "private settlement agreements" exist, as Sierra Club notes, does not imply that they are allowed in "private attorney general" actions under a law designed to benefit the public as a whole and requiring judicial review of citizen settlements.

2.  *U.S. Enforcement Discretion Prohibits the Side Deal.* Binding Sixth Circuit precedent holds that citizen plaintiffs may not "obtain relief on 'more stringent terms than those worked out by the [government].'" *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004). Rather, the CAA "permit[s] citizens to act [only] where the [government] has 'failed' to do so, not where [it] has acted but has not acted aggressively enough in the citizens' view." *Id.*

While it has not filed an "objection" to the U.S.'s Consent Decree, Sierra Club plainly disagrees with the U.S. here and believes that more aggressive enforcement is warranted. Hence, there *is* a "conflict," and—under *Ellis*—the U.S.'s determination of the appropriate ceiling for relief must prevail. Tellingly, Sierra Club does not attempt to distinguish *Ellis*, except to imply that its reading of *Gwaltney* was too broad. Reply at 5-6. But *Ellis*'s interpretation is binding law, and it (correctly) read *Gwaltney* as recognizing a fundamental principle that citizen plaintiffs cannot obtain relief the government "chose to forgo."

---

[1] Even if citizen plaintiffs *could* evade review by entering into private settlements, Sierra Club has not done so here. *See* Resp. at 6-7. Nor is it correct that a "consent judgment" requires ongoing federal enforcement or jurisdiction. *Id.* at 6 n.2.

3

3. ***The Side Deal Contravenes the CAA.*** While the there is some flexibility in the relief that can be obtained in a consent judgment, the Court's approval authority comes solely from the statute, and the relief must be consistent with and "must further the objectives of the law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). As the Tenth Circuit has explained,

> a settlement agreement or consent decree designed to enforce statutory directives is not merely a private contract. It implicates the courts, and it is the statute—and "only incidentally the parties"—to which the courts owe their allegiance. The primary function of a settlement agreement or consent decree, like that of a litigated judgment, is to enforce the congressional will as reflected in the statute.

*Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1169 (10th Cir. 2004) (McConnell, J.).[2] Section 304(g)'s objectives are plain: (1) to authorize mitigation projects that will benefit human health and the environment and (2) to put a fairly low cap on such relief, ensuring that most penalty money obtained through citizen suits is paid to the Treasury. These carefully balanced policies are as salient in settlement as they are at final judgment and cannot be squared with the side deal.

Finally, Sierra Club appears to disagree with the U.S.'s argument that "Section 304(g)(2) is the *only* avenue by which a citizen plaintiff can seek mitigation relief in a CAA case." Resp. at 11. But its two-paragraph discussion does

---

[2] *See also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1952) (Frankfurter, J., concurring) ("It is quite impossible…when Congress did specifically address itself to a problem…to find secreted in the interstices of legislation the very grant of power which Congress consciously withheld.").

4

not dispute nor even directly respond to our argument that "equitable mitigation" is not available here. *See id.* at 11-18; 42 U.S.C. § 7604(g)(2).[3] And while citizen plaintiffs are not "the State," they do wield a quasi-governmental enforcement power in their role as "private attorneys general" and can obtain civil penalties both at final judgment and by entering into voluntary settlements.

**4.** *The Side Deal Violates The Miscellaneous Receipts Act (MRA).* The MRA applies both to "official[s] and agent[s] of the United States," 31 U.S.C. § 3302(a), (b), and also to *any* "person having custody or possession of public money," *id.* § 3302(c)(1); *see United States v. Smithfield Foods, Inc.*, 982 F. Supp. 373, 374 & n.1 (E.D. Va. 1997) (Civil penalties in citizen suits must be paid to the U.S. Treasury pursuant to the MRA.). Sierra Club acknowledges that private damages are prohibited by the Act and has effectively conceded that "equitable mitigation" relief is not available. Consistent with Congress's view in Section 304(g), the "mitigation" money Sierra Club seeks is "public money" in the form of a penalty that it would unlawfully redirect for its own ends rather than deposit into the Treasury. *Cf.* 4B Op. O.L.C 684, 688 (1980) ("money available to the United States and directed to another recipient is constructively 'received'").

---

[3] The two vague and open-ended "mitigation" projects sought here would not be allowed even if "equitable mitigation" were available. *See Atl. Salmon of Maine, LLC*, 339 F.3d 23, 31 (1st Cir. 2003); *see also Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943, 1949 (2020) (instructing that relief that exceeds traditional limits of equity becomes a form of unauthorized penalty).

### III. Constitutional Issues Continue to Plague Sierra Club's Request.

**1.** *Standing.* Sierra Club has now presented evidence for the first two prongs of the standing inquiry, but it has not even attempted to show that it is "'likely' …that [its] injur[ies] will be 'redressed by a favorable decision'" authorizing its vague and open-ended "mitigation" relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). These projects are "form[s] of relief," and Sierra Club must therefore demonstrate that it has standing to obtain them. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650-51 (2017). The U.S. is not seeking to "retroactively dissolve [Sierra Club's] standing to bring…[its] claims in the first place." Reply at 12. Rather, our argument here is only that that the Court's remedial power should not be exercised to provide Sierra Club with relief that is not likely to redress its injuries.

**2.** *Constitutional Avoidance.* The U.S. is not here challenging the constitutionality of citizen suits; rather, it is arguing that Sierra Club's attempt to override enforcement decisions wholly within the discretion of the federal government *raises issues* of constitutional law that this Court should avoid. Regardless of how these "[d]ifficult and fundamental questions" might be resolved, the claim that there are no such questions is baseless. *See* Scholars' *Amicus* Br., Dkt. 287. The "weight of authority" Sierra Club cites consists entirely of non-binding district court opinions, none of which concerned a situation where a citizen intervenor

sought relief beyond what the U.S. was willing to agree to. Further, "[i]n blithely deciding that the Appointments Clause and the separation of powers doctrine do not apply to private citizens…these [cases] ignored the fact that Congress created citizen suit authority," delegating federal enforcement authority away from the Executive to unaccountable private parties. Craig, *Will Separation of Powers Challenges "Take Care" of Environmental Citizen Suits?*, 72 U. Colo. L. Rev. 93, 140 (2001). If anything, such delegation to private parties makes things worse. *Cf. Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (giving regulatory power to a private entity is "legislative delegation in its most obnoxious form").

## CONCLUSION

The U.S. respectfully requests that the Court deny Sierra Club's Motion for Entry.

Respectfully submitted,

s/ Michael B. Buschbacher

Of Counsel:

SUSAN PARKER BODINE
*Assistant Administrator*
Office of Enforcement and
   Compliance Assurance

U.S. Environmental
Protection Agency

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
BRUCE S. GELBER
*Deputy Assistant Attorney General*
PATRICIA McKENNA
*Assistant Section Chief,*
   *Environmental Enforcement Section*
MICHAEL B. BUSCHBACHER
*Counsel to the Assistant Attorney General*
Environment & Natural Resources Div.
U.S. Department of Justice