# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and<br><br>SIERRA CLUB,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>DTE ENERGY COMPANY AND DETROIT EDISON COMPANY,<br><br>Defendants. | Civil Action No. 2:10-cv-13101-BAF-RSW<br><br>Judge Bernard A. Friedman<br><br>Magistrate Judge R. Steven Whalen |

**SIERRA CLUB'S PROPOSED RESPONSE TO THE UNITED STATES' SUR-REPLY BRIEF**

## INTRODUCTION

Apparently realizing the weakness of its objection to the Agreement between DTE Energy and Sierra Club, the US filed a Sur-Reply to Sierra Club's Reply Brief in support of that Agreement. Dkt. 291. Sur-replies are typically appropriate only to address new arguments or evidence first presented in a reply brief. While the US has identified a few portions of Sierra Club's Reply that arguably fits within that category, the Sur-Reply does not overcome any of those arguments or evidence. In addition, the bulk of the US's Sur-Reply addresses statutory and Constitutional challenges that the US first raised in its objection to the Agreement and that, therefore, are not proper subjects for sur-reply. Regardless, the additional arguments offered by the US on those points are meritless and fail to bolster the US's flailing objection to the Agreement.

### I. The Sur-Reply Fails to Undermine What the US Contends Are "Three New Arguments" in Sierra Club's Reply Brief.

In its Reply Brief, Sierra Club identified three pathways the Court could take to dispose of this case if it decides it need not enter or approve the Agreement. Namely, the Court could find that entry of the Consent Decree resolves this case, the US objection is moot, or Sierra Club should withdraw its Motion for Entry and its action be dismissed. Reply at 1. While the US portrays these as "undeveloped" arguments that are waived, no further development was needed because Sierra Club was merely identifying options for how the Court could proceed. Nor do

those options interfere with the right to object to the Agreement that the US "baked into the consent decree," Sur-Reply at 1, as the US has already filed its objection.

**II. The Sur-Reply Fails to Substantiate the US's Misguided Challenge to Sierra Club's Article III Standing.**

The US also responds to the four standing declarations that Sierra Club submitted with its Reply. The US concedes that the declarations demonstrate that Sierra Club satisfies the injury-in-fact and causation prongs of Article III standing. Sur-Reply at 6. And the US does not contest that the declarations (and US expert affidavits from earlier in this proceeding) establish that the injury-in-fact caused by the illegal DTE air pollution would be redressed by the pollution controls and other relief that Sierra Club sought in this litigation. SC Reply at 13-15.

Instead, the US persists in asserting that redressability must be established for each mitigation project in the Agreement. Sur-Reply at 6. The Sur-Reply, however, again fails to identify any support for the novel assertion that standing is based on relief negotiated in settlement, rather than relief sought in litigation. And, contrary to the US's suggestion otherwise (Sur-Reply at 6), *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094 (10th Cir. 2017), is directly on point. The court there stated that it knew of no authority to support the "assertion that the district court lacked Article III authority to approve the settlement agreements because [ ] those settlement agreements don't actually redress the plaintiffs' alleged injuries," and noted that the party objecting to the agreement had

failed to provide any. *Id*. at 1114. Such lack of authority is also found here and dooms the US's standing challenge.

### III. The US's Statutory and Constitutional Challenges to the Agreement are Improper Topics for Sur-Reply, and Meritless.

The US also presents sur-reply on five issues – the purported necessity of judicial review, US enforcement discretion, 42 U.S.C. § 7604(g), the Miscellaneous Receipts Act ("MRA"), and "Constitutional avoidance" – that it first introduced into this matter in its objection. Sur-Reply at 2-5, 6-7. These issues do not qualify as new arguments or new evidence for which sur-reply might be appropriate. Instead, the US attempts to mask its effort to get the last word by claiming that further briefing "may assist the Court in ruling" on the matter. US Mot. for Leave at 4. But the arguments in the Sur-Reply are meritless and only further illustrate why the US's objection to the Agreement should be rejected.

**A. Judicial Review is Not Required**. As Sierra Club previously explained, the Court need not review or enter the Agreement because it is not a consent judgment but, instead, a private settlement for which no federal enforcement or continuing court jurisdiction is sought. SC Motion at 9-10. The US asserts that private settlements are not allowed in Clean Air Act proceedings, Sur-Reply at 2-3, but provides no authority to support such assertion. The US also speculates that "consent judgments" are different than "consent decrees" and, therefore, do not require ongoing federal enforcement or jurisdiction. Sur-Reply at 3 n. 1, *citing*

Objection at 6 n. 2. But the US again provides no authority to support such speculation and, in reality, the two terms are "generally used interchangeably." *Montez v. Hickenlooper*, 640 F.3d 1126, 1131 n. 1 (10th Cir. 2011).

**B. Enforcement Discretion Does Not Bar the Agreement.** The US again fails to identify any conflict between the Consent Decree and the Agreement that would interfere with federal enforcement discretion. Instead, the US contends that under *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004), any difference between the Consent Decree and the Agreement is inherently a conflict because a citizen suit plaintiff purportedly cannot seek relief that the US "chose to forgo." Sur-Reply at 3. But *Ellis* is plainly distinguishable, as it involved a citizen plaintiff seeking injunctive relief in an entirely separate suit months after the US, in its own enforcement action, entered a consent decree that remedied the violations that the citizen plaintiffs had sued over. *Ellis*, 390 F.3d at 477 ("what the Ellises cannot do . . . is wait until the EPA has resolved its own claims . . . then obtain stricter enforcement than the Government negotiated"). By contrast, the present case involves the US and Sierra Club negotiating with DTE in the same case, at the same time, and on the same claims that had not yet been remedied.[1] The US has

[1] The US's insistence that the Sierra Club cannot seek in settlement any relief that the US is not willing to agree to is also inconsistent with the *Ellis* court's recognition that, rather than pursue stricter enforcement in a separate lawsuit three months after the US had settled, the Ellises "could have petitioned the EPA or the court to obtain a modification of the consent decree." *Ellis*, 390 F.3d at 477.

provided no basis to extend *Ellis* to the latter situation especially when, as here, nothing in the Agreement interfered with US settling its suit as it saw fit.

**C. The Agreement Does Not Contravene the Clean Air Act.** The US once again argues that the mitigation projects in the Agreement are foreclosed by 42 U.S.C. § 7604(g), which authorizes a court to direct only $100,000 of any civil penalties that it awards to mitigation. Sur-Reply at 4-5. As we have explained, Reply at 8-9, that argument fails under *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986). Consistent with *Local 93*, courts have rejected the contention that mitigation funding in a settlement is restricted by statutory limits on the relief a court can order after a finding of liability. *See, e.g.*, *Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 81 n. 32 (3d Cir. 1990) ("Of course a party may compromise its claim however it sees fit."); *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1354 (9th Cir. 1990) ("When a defendant agrees before trial to make payments to environmental organizations without admitting liability, the agreement is simply part of an out-of-court settlement which the parties are free to make"); *United States v. Smithfield Foods, Inc.*, 982 F. Supp. 373, 376 n. 5 (E.D. Va. 1997); *see also United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1044 (8th Cir. 1992) (Statutory provision used in determining civil penalties after Clean Water Act violation finding need not be

applied in evaluating penalties negotiated in consent decree); *Ne. Iowa Citizens for Clean Water v. AgriProcessors, Inc.*, 469 F. Supp. 2d 666, 672 (N.D. Iowa 2006) (same). Similarly, 42 U.S.C. § 7604(g) is not applicable to the Agreement.

**D. The Agreement Does Not Violate the MRA**. The US's reliance on the MRA is similarly unfounded. The US cites to *Smithfield Foods*, 982 F.Supp. at 374 n.1, to note that the MRA requires that civil penalties ordered in citizen suits be paid to the U.S. Treasury. Sur-Reply at 5. But *Smithfield Foods* also notes that "of course, monies paid in *settlement* of suits may be used to fund local environmental projects. Parties may compromise claims as they see fit." *Smithfield Foods*, 982 F.Supp. at 376 n. 5, *citing Powell Duffryn* and *Elec. Controls Design*. For the same reason, the US's MRA and 7604(g) arguments fail.

**E. There is no Constitutional Question to Avoid**. In a bit of Orwellian logic, the US purports to encourage the Court to avoid "difficult and fundamental" Constitutional questions by giving credence to Constitutional arguments against citizen suits that no court has accepted. Sur-Reply at 6-7. In its Sur-Reply, the US does not dispute that a plethora of courts have rejected the theory that citizen suits interfere with the separation of powers under Article II. Nor does the US identify any cases in which a citizen suit or settlement of such a suit was found to infringe on such Constitutional doctrine. In short, there is no Constitutional issue here, and the Court should not accept the US's invitation to create one.

In attempting to conjure up a Constitutional issue where there is not one, the US cites the law professors' amicus brief, Dkt. 287, and a law review article. Sur-Reply at 6-7. Neither supports the US's case. The amicus brief simply packages the same never-judicially-accepted and frequently-rejected Article II theories posited by the US into a baseless claim that the citizen suit provision itself is unconstitutional. The law review article, meanwhile, actually undermines the US's main argument, concluding that "the injury-in-fact standing requirement renders environmental citizen suits private causes of action to which the separation of powers doctrine does not apply." Robin Kundis Craig, *Will Separation of Powers Challenges "Take Care" of Environmental Citizen Suits? Article II, Injury-in-Fact, Private "Enforcers," and Lessons from Qui Tam Litigation*, 72 U. Colo. L. Rev. 93, 101 (2001). In short, there is no Constitutional question here for the Court to avoid.

**CONCLUSION**

For the foregoing reasons, and those set forth in Sierra Club's previous briefing, the Court should find that the Agreement need not be entered or approved, or, alternatively, the Court should enter and approve that Agreement.

Respectfully submitted this the 28th day of August 2020,

______________________________
Shannon Fisk
Managing Attorney

Earthjustice
1617 John F. Kennedy Blvd.,
Suite 1130
Philadelphia, PA 19103
T: 215-717-4522
C: 215-327-9922
sfisk@earthjustice.org

Nicholas Leonard (P79283)
Great Lakes Environmental Law
Center
4444 Second Avenue
Detroit, MI 48201
313-782-3372
nicholas.leonard@glelc.org

*Counsel for Plaintiff-Intervenor*
*Sierra Club*

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the Court's ECF system on August 28, 2020, which will cause copies to be sent to all counsel of record.

______________________________
Shannon Fisk
*Counsel for Plaintiff-Intervenor*
*Sierra Club*