UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

and                                                         Civil Action No. 10-CV-13101

SIERRA CLUB,                                 HON. BERNARD A. FRIEDMAN

    Plaintiff-Intervenor,

vs.

DTE ENERGY COMPANY and
DETROIT EDISON COMPANY,

    Defendants.
_____/

**OPINION AND ORDER GRANTING INTERVENOR'S
MOTION FOR VOLUNTARY DISMISSAL**

This matter is presently before the Court on the motion of plaintiff-intervenor "to enter agreement between Sierra Club and DTE or, in the alternative, notice of that agreement" [docket entry 267]. Plaintiff and DTE have responded. Sierra Club and plaintiff have filed a reply and sur-reply, respectively. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide the motion without oral argument. For the reasons stated below, the Court shall grant the motion and dismiss Sierra Club's complaint, as Sierra Club requests.

The present dispute arises from a Clean Air Act ("CAA") enforcement action brought by the United States against DTE on August 5, 2010. The government alleged that defendants had violated two provisions of the CAA – the Prevention of Significant Deterioration provision and the New Source Review provision – by carrying out major modifications at Unit 2 of its Monroe Power Plant in Monroe, Michigan, without obtaining permits, installing the requisite pollution-reducing technologies, or achieving the "lowest achievable emissions rate." Compl. ¶¶ 1-2. The complaint

further alleged that

> [a]s a result of Defendant's operation of Monroe Unit 2 following the unlawful modification, large amounts of $SO_2$, $NO_x$, and related pollution are and will be released into the atmosphere . . . . These pollutants cause harm to human health and the environment once emitted into the air, including premature death, heart attacks, and respiratory problems.

Compl. ¶ 3. In November 2010, this Court allowed Sierra Club to intervene as a private attorney general pursuant to Fed. R. Civ. P. 24 and 42 U.S.C. § 7604(b)(1)(B) and upon consideration of the stipulation between DTE and Sierra Club in which those parties recognized Sierra Club's right to request relief distinct from that pursued by the government. In 2014, both Sierra Club and the United States filed amended complaints, both of which included substantially similar allegations regarding modified units at two additional facilities operated by DTE – the Belle River Power Plant in East China, Michigan, and the Trenton Channel Power Plant in Trenton, Michigan. The United States explained that "[b]ased on data reported by Defendants to [the Environmental Protection Agency], each of the Modified Units is one of the largest sources of air pollution in the state of Michigan." Pl.'s Am. Compl. ¶ 55.

After years of litigation and two appeals, this proceeding was stayed on February 2, 2018, pending settlement negotiations. These negotiations ultimately produced the consent decree that was lodged with this Court on May 14, 2020, and entered on July 22, 2020 [docket entry 282]. The United States, DTE, and Sierra Club all took part in the negotiations and all agreed to the terms of the proposed consent decree. In the United States' Notice of Lodging, the requirements of the decree were summarized as follows:

> Under the proposed Consent Decree, DTE would be required to reduce the emissions at each of its coal-fired electric units. The decree also requires DTE to pay a civil penalty of $1.8 million and perform an environmental mitigation project that replaces municipal buses with

lower emissions buses.

Pl.'s Not. Lodg. at 1 [docket entry 266].  The consent decree also recognizes DTE's and Sierra Club's intent to submit a separate proposed agreement ("the Separate Agreement") between the two parties that would resolve all of Sierra Club's actual and potential claims against defendants in relation to prior power plant modifications.[1]  Consent Decree ¶ 121.  However, the United States reserved the right to oppose any motions concerning, or the Court's approval of, the Separate Agreement.  *Id.*

Pursuant to ¶ 121 of the consent decree, Sierra Club submitted the Separate Agreement for entry on May 22, 2020, by filing the instant motion.  Sierra Club summarizes the main provisions of the Separate Agreement as follows:

> DTE commits to: (1) funding at least $2 million in community based environmental projects in Ecorse, River Rouge, and the 48217 zip code,[2] (2) carrying out a project to improve energy efficiency and reduce energy use at a public recreation center in the 48217 zip code, (3) satisfying the $5.5 million bus replacement projects required under the proposed Consent Decree through the provision of electric buses and related electrification infrastructure in Ecorse, River Rouge, the 48217 zip code, and/or other non-attainment or environmental justice areas in Wayne County, and (4) retiring certain power plants.

Sierra Club's Mot. at 4.  The stated goal of the Separate Agreement is to "achieve further air quality and public health benefits for communities in Southeast Michigan," *id.* at 7, which were "especially hard hit by air pollution from DTE's power plants and other industrial sources for decades."  *Id.* at 12. In its motion, Sierra Club also asserts that the terms of the Separate Agreement "plainly advance the Clean Air Act's goal of 'protect[ing] and enhanc[ing] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population.'" *Id.* (citations

---

[1]Sierra Club filed its own amended complaint in this matter in May 2014.  *See* docket entry 214.

[2]The 48217 ZIP code is an area of southwest Detroit that borders the city of River Rouge.

omitted).

In their response to this motion, defendants state that, beyond resolving the claims in this case, they entered the agreement to "foster improved relations with Sierra Club and to provide benefits to a valued local community." Defs.' Resp. at 1-2. The response further states that "DTE intends to abide by its commitments whether this Agreement is entered as a federal Consent Decree or stands as an independent contractual agreement under state law." *Id*. at 2.

The United States opposes the motion on the grounds that the Separate Agreement is, in effect, a second consent decree or judgment and thus erodes "government enforcement primacy," "conflict[s] with the statutory scheme," is "contrary to sound environmental enforcement policy," and potentially interferes with constitutionally mandated separation of powers. Pl.'s Resp. at 1, 7, 18, 22-25.

This motion presents two distinct issues: First, whether the Separate Agreement is a private settlement between Sierra Club and DTE, as opposed to a consent decree entered and enforced by the Court. Second, if the Separate Agreement is deemed to be a consent decree, the Court must decide whether the terms of the CAA and the Constitution permit entry of such an agreement. Upon review of the parties' arguments and relevant case law, the Court believes that only the first issue need be addressed.

The Sixth Circuit has described the difference between consent decrees and private settlement agreements as follows:

> A consent decree is essentially a settlement agreement subject to continued judicial policing. Consent decrees typically have two key attributes that make them different from private settlements. First, when a court enters a consent decree, it retains jurisdiction to enforce the decree. In contrast, the parties to a private settlement typically must bring another suit (for breach of contract) to enforce it. Second, a consent decree puts the power and prestige of the court behind the

4

>> compromise struck by the parties. The same is not true of a dismissal order that does not incorporate the parties' terms.

*Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015) (internal quotation marks and citations omitted). *See also Ne. Ohio Coalition for Homeless v. Sec'y of Ohio*, 695 F.3d 563, 572 (6th Cir. 2012) ("It is true that a consent decree is a settlement agreement subject to continued judicial policing.") (internal quotation marks omitted). In the present case, the consent decree and Separate Agreement reflect these distinctions in the express terms of each agreement. The consent decree provides that "the Court shall retain jurisdiction of this case . . . to enforce compliance with the terms and conditions of this Consent Decree and to take any action necessary or appropriate for the interpretation, construction, execution, or modification of the Consent Decree, or for adjudication of disputes." Consent Decree ¶ 105. In contrast, the Separate Agreement states that "[a] party seeking to resolve a dispute arising over the terms and conditions contained in this Agreement must seek relief from a court of competent jurisdiction located in Wayne County, Michigan. Separate Agreement ¶ 21. As to the former, the Court retains jurisdiction over the matter and, by entering the decree and agreeing to enforce its terms, "puts the power and prestige of the court behind the compromise struck by the parties." As to the latter, the Court does none of the above.

Sierra Club submitted the Separate Agreement to the Court pursuant to the terms of the parties' proposed consent decree, but the Court has no role to play in either approving or disapproving of this private settlement. It is true, as the United States emphasizes, that the CAA does not provide boundless opportunities or remedies for citizen suits, like that which was brought by Sierra Club in the present case. Rather, the Sixth Circuit has held that "Congress authorized citizen suits only when environmental officials '*fail* to exercise their enforcement responsibility'. . . ." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 475 (6th Cir. 2004) (emphasis in original) (quoting *Gwaltney of Smithfield, Ltd.*

*v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60-61 (1987)). However, the issue before the Court is not whether a private attorney general can bring suit in the present matter (the issue in *Gwaltney*), *Gwaltney*, 484 U.S. at 52, nor is it whether a private attorney general can obtain court-mandated relief "for post-consent-decree violations" by defendants (the issue in *Ellis*). *Ellis*, 390 F.3d at 474. Rather, this is an unusual situation where two parties have mutually consented to be legally bound to a private contract, which is only before the Court due to the terms of a collectively agreed upon consent decree.

Further, neither the United States' interests nor any of the terms of the consent decree are eroded or jeopardized as a consequence of the Separate Agreement. In its reply brief, Sierra Club explains that

> the Agreement is <u>entirely</u> consistent with the Consent Decree . . . . The Agreement . . . requires that DTE follow through on its long-announced plans to retire (rather than *retrofit, refuel, repower, or retire*, as provided in the Consent Decree) three coal plants and use electric (rather than simply *lower-emitting*) buses in the Consent Decree's mitigation project. Without altering the Consent Decree's $1.8 million civil penalty, the Agreement further improves air quality in communities hard hit by DTE's emissions by requiring that DTE (1) carry out an energy efficiency/ energy use reduction project at a community center and (2) fund at least $2 million in environmental mitigation projects in such communities.

Sierra Club's Reply at 4-5 (emphasis in original) (citations omitted). In short, the Separate Agreement does nothing to interfere with the consent decree; DTE's obligations under the former do not encroach on, but exceed and complement, its obligations under the latter.

Further, the Court rejects the government's suggestion that DTE's separately negotiated agreement with Sierra Club "conflict[s] with the statutory scheme," is "contrary to sound environmental enforcement policy," and potentially interferes with constitutionally mandated separation of powers. The agreement in this case does none of these things, but accomplishes an enormous environmental benefit that is fully consistent with the goals of the CAA.

As the Separate Agreement between DTE and the Sierra Club is a private settlement agreement and not a consent decree, the Court shall not incorporate the terms of the agreement into the consent decree, nor shall it enter the agreement.  Rather, the Court shall, based on this agreement and on Sierra Club's request, dismiss Sierra Club's amended complaint pursuant to Fed. R. Civ. P. 41(a)(2). Accordingly,

IT IS ORDERED that Sierra Club's amended complaint is hereby voluntarily dismissed, the intervenor and defendants having resolved that matter privately.

Dated:  December 3, 2020
       Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE